UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAYLA JEAN AYERS, | : | CASE NO. 5:20-cv-1654 |
| | : | |
| Petitioner, | : | JUDGE SARA LIOI |
| | : | |
| v. | : | Magistrate Judge Carmen E. Henderson |
| | : | |
| DIRECTOR, OHIO DEPARTMENT | : | RESPONDENT'S ANSWER / RETURN |
| OF REHABILITATION & | : | OF WRIT |
| CORRECTION, | : | |
| | : | |
| Respondent. | : | |

Habeas Petitioner Kayla Jean Ayers is challenging her February 1, 2013 convictions and sentences rendered in Stark County Common Pleas Court Case No. 2012CR1567, *State v. Kayla Jean Ayers.* **(Sentencing Entry, Exhibit 20)** Ayers filed this action seeking a writ of habeas corpus under 28 U.S.C. §2254 and Respondent Ohio Department of Rehabilitation & Correction Director denies each of Ayers' allegations and now shows cause why the Court should deny and dismiss Ayers' habeas petition with prejudice.

Respectfully submitted,

Dave Yost
Ohio Attorney General

s/Maura O'Neill Jaite
Maura O'Neill Jaite (#0058524)
Senior Assistant Attorney General
Ohio Attorney General's Office
Criminal Justice Section
150 E. Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7233 / (866) 485-4071 (fax)
maura.jaite@ohioattorneygeneral.gov
*Respondent's Attorney*

## I.      STATEMENT OF FACTS

In habeas corpus review, state court factual findings  "shall be presumed to be correct" and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial record. *Mitzel*, 267 F.3d at 530.

In this case, the state appellate court made these reasonable factual findings on direct appeal:

> [*P2]  On October 3, 2012, the Massillon Fire Department responded to a fire at Appellant's residence. The fire was extinguished in the basement of the home.
>
> [*P3]  Appellant's defense centered upon the allegation her young son started the fire. Appellant's son did not appear to have any smoke exposure or soot on his person. Appellant cut her hand while allegedly attempting to get her son out of the residence. Appellant appeared to have smoke exposure and tested positive for soot residue on her person.
>
> [*P4]  Inspector Reginald Winters of the Massillon Fire Department testified he ruled out an electrical shortage as the cause of the fire. Winters determined a mattress was the point of origination for the fire, and there were two distinct start points at separate ends of the mattress. Winters' report concluded the fire was not an accident.
>
> [*P5]  During an interview with investigators Appellant claimed her three-year old son started the fire while playing with a cigarette lighter. She seemed lethargic and unable to answer the questions posed. She stated she was in the basement folding clothes when she noticed her son by the bed playing with a lighter. Shortly thereafter she noticed a fire on the bed, grabbed a blanket and started fanning the flame. She ran and retrieved a glass of water, but tripped, breaking the glass, falling and cutting her hand. She stated she could not find the phone to call the fire department.

[*P6]  At the time of the fire, Appellant lived with her father and his family. Her father had previously discussed finances with her, and the fact she had not been contributing to the household financial situation. Their relationship eventually deteriorated and Jeff Ayers, Appellant's father, told Appellant to leave and care for her own family. Appellant refused to leave. Jeff Ayers testified at trial when he decided to leave, Appellant threatened to burn the house down.

[*P7]  Additionally, a neighbor of Appellant, Jason Pandrea, testified he heard Appellant threaten her father with burning the house down if he ever left.

[*P8]  Karen Ball testified at trial she knew Appellant through a church relationship. She visited the residence on the night of the fire to pick up the children for a church activity. She knocked on the door, but received no answer. She heard someone inside the residence say, "Shhh." Ball noticed Appellant's purse on the deck of the residence, which led her to believe Appellant was inside. At approximately 8:00 p.m. the night of the fire, Ball returned to the residence and witnessed some flickering in the window. When Appellant exited the house, she told Ball her son had started the fire.

[*P9]  Investigator Winters prepared a draft report. He concluded the fire originated on the first floor of the residence. Winters maintains this was a typographical error, and should have read the fire originated in the basement of the residence. Additionally, the report contained several other errors not to be included in the final copy. Winters stated in his testimony at trial the report including the alleged errors was not the final report.

*State v. Ayers*, 5th Dist. Stark No. 2013CA00034, 2013-Ohio-5402. **(Opinion, Exhibit 26)**

## II.    PROCEDURAL HISTORY

### A.    Trial Court Proceedings

On November 6, 2012, a Stark County, Ohio grand jury indicted Ayers on one second-degree felony O.R.C. 2909.02(A)(2) Aggravated Arson charge and one first-degree misdemeanor O.R.C. 2919.22(A) Endangering Children charge. **(Indictment, Exhibit 1)** The offenses were prosecuted in Stark County Common Pleas Court Case

No. 2012CR1567, *State v. Kayla Jean Ayers,* and Ayers had legal representation throughout the trial court proceedings. **(Entry, Exhibit 2)**

Prior to trial, through counsel, Ayers filed a discovery demand **(Discovery Demand, Exhibit 3)** and a request for a bill of particulars. **(Request, Exhibit 4)** The State filed a bill of particulars **(Bill of Particulars, Exhibit 5)** and a discovery response **(Response, Exhibit 6)**, Ayers' trial attorney signed a discovery receipts **(Receipt, Exhibit 7)(Receipt, Exhibit 8)**, the State filed supplemental discovery responses **(Response, Exhibit 9)(Response, Exhibit 10)**, Ayers' trial attorney signed a discovery receipt **(Receipt, Exhibit 11)**, and the State filed another supplemental discovery response **(Response, Exhibit 12)**, and Ayers' trial counsel signed another discovery receipt. **(Receipt, Exhibit 13)** When Ayers' trial attorney changed, the State filed and served more supplemental discovery. **(Response, Exhibit 14)**

Through counsel, Ayers filed a motion in limine to exclude prior bad acts evidence , more specifically, evidence of "bad parenting" and evidence of "involvement of [the] children with the Department of Job and Family Services." **(Motion, Exhibit 15) (Motion, Exhibit 16)**

The trial court ordered a psychological examination to determine whether Ayers was competent to stand trial **(Order, Exhibit 16)**, the psychological examiner reported that the competency examination could not be completed because Ayers refused to participate in the evaluation **(Letter, Exhibit 17)**, and the trial court found that Ayers was found competent to stand trial. **(Transcript, Vol. 1 pp. 10-11)**

The State filed a motion in limine to exclude testimony relating to "a subsequent fire out of state that Ayers alleged was started by her three-year-old son." **(Motion,**

**Exhibit 18)** Ayers' new trial attorney filed another motion in limine to exclude prior bad acts evidence, more specifically, evidence of "prior involvement of the Department of Job and Family Services involving parenting rights, lice infestation, and having a dirty home" and evidence of Ayers' mental health and medication use. **(Motion, Exhibit 19)** The trial court ruled that the State could only elicit testimony about Ayers' statements to the police in which she stated that she was doing laundry in the basement due to lice when the fire started, and the trial court sustained the State's motion in limine, with Ayers' trial attorney's consent. **(Transcript, Vol. 1, pp. 6-10)**

The case proceeded to trial, and after trial, a jury found Ayers guilty of the Aggravated Arson and Endangering Children charges. **(Sentencing Entry, Exhibit 20)** The trial court sentenced Ayers to 7 years in prison for the Aggravated Arson conviction, and 180 concurrent days in prison for the Endangering Children conviction, resulting in an aggregate 7-year prison sentence, and the trial court journalized Ayers' sentencing entry on February 1, 2013. **(Sentencing Entry, Exhibit 20)**

**B.**    **Transcripts & Docket Reports**

In compliance with Habeas Rule 5, the Warden has filed the relevant transcripts for pre-trial rulings **(Tr. Vol. 1 pp. 1-14)**, jury trial **(Tr. Vol. 1 pp. 14-491)**, and sentencing hearing. **(Tr. Vol. 1 pp. 491-498)**

The Warden has also filed the publicly available electronic docket reports for Case No. 2012CR1567 **(Docket, Exhibit 56)**, Case No. 2013CA00034 **(Docket, Exhibit 57)**, Case No. 2021CA00134 **(Docket, Exhibit 58)**, and Case No. 2022-0886. **(Docket, Exhibit 59)**

**C.**    **Direct Appeal**

On February 20, 2013, through new appellate new counsel, Ayers timely filed an appeal notice in the state appellate court **(Notice, Exhibit 21)**, and she raised these claims on direct appeal:

1.    The appellant's convictions for one count of Aggravated Arson in violation of R.C. 2909.02 and one count of Endangering Children in violation of R.C. 2919.22 were against the manifest weight and sufficiency of the evidence.

2.    The appellant was denied effective assistance of counsel due to trial counsel's failure to review the appropriate discovery materials in preparation for trial.

**(Brief, Exhibit 22)** The State filed an Appellee's brief **(Brief, Exhibit 23)**, and on December 9, 2013, under Case No. 2013CA00034, the state appellate court overruled Ayers' error assignments and affirmed her convictions and sentences. *State v. Ayers*, 5th Dist. Stark No. 2013CA00034, 2013-Ohio-5402. **(Opinion, Exhibit 24)**

Ayers did not timely file an appeal in the Ohio Supreme Court and her filing deadline expired January 23, 2014.  *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i); Ohio S.Ct.Prac.R. 3.03(A)(1).

Ayers also did not timely file an Ohio App.R. 26(B) application to reopen her direct appeal due to ineffective assistance of appellate counsel and her filing deadline expired Monday, March 10, 2014.

**D.**    **Post-Conviction Relief**

1.    Motion to Appoint Counsel

While her appeal was pending, on June 27, 2013, Ayers filed a *pro se* motion to appoint counsel for post-conviction relief proceedings in the trial court **(Motion, Exhibit**

**25)**, the trial court denied them motion on June 28, 2013 **(Entry, Exhibit 26)**, Ayers did not timely appeal that order, and her appellate filing deadline expired Monday, July 29, 2013. *See* Ohio App.R. 4(A)(1); Ohio App.R. 14(A).

  2.  <u>Motion for Community Service Hours Credit</u>

  On May 28, 2015, Ayers filed a *pro se* motion for community service hours credit toward payment of fines and court costs **(Motion, Exhibit 27)**, the trial court denied the motion on May 29, 2015 **(Entry, Exhibit 28)**, Ayers did not timely appeal that order, and her appellate filing deadline expired Monday, June 29, 2015. *See* Ohio App.R. 4(A)(1); Ohio App.R. 14(A).

  3.  <u>Motion for Modification of Sentence (1)</u>

  On October 19, 2015, Ayers filed a *pro se* motion for modification of sentence **(Motion, Exhibit 29)**, the trial court denied the motion on October 20, 2015 **(Entry, Exhibit 30)**, Ayers did not timely appeal that order, and her appellate filing deadline expired November 19, 2015. *See* Ohio App.R. 4(A)(1); Ohio App.R. 14(A).

  4.  <u>Motion for Modification of Sentence (2)</u>

  On October 27, 2015, Ayers file another *pro se* motion for modification of sentence **(Motion, Exhibit 31)**, the trial court denied the motion on October 27, 2015 **(Entry, Exhibit 32)**, Ayers did not timely appeal that order, and her appellate filing deadline expired Friday, November 27, 2015. *See* Ohio App.R. 4(A)(1); Ohio App.R. 14(A).

  5.  <u>Motion for Judicial Release</u>

  On February 12, 2018, Ayers, filed a *pro se* motion for judicial release in the trial court **(Motion, Exhibit 33)** and the trial court denied Ayers' motion the same day.

**(Judgment Entry, Exhibit 34)** Ayers did not timely file an appeal in the state appellate court and her filing deadline expired March 29, 2018. *See* Ohio App.R. 4(A)(1); Ohio App.R. 14(A).

6. Post-Conviction Relief Petition & Motion for New Trial

On April 13, 2020, through her current habeas counsel, Ayers filed a petition for post-conviction relief in the trial court and raised these claims:

1. Ineffective assistance of counsel Sixth Amendment to the United States Constitution.

   Defense counsel failed to consult with an expert witness regarding the origin of the fire.

   Defense counsel failed to challenge false and unsupported testimony offered by the State's expert.

   Defense counsel failed to object to testimony that should have been barred under Ohio Crim.R. 16(K).

2. Prosecutorial misconduct Fifth and Fourteenth Amendment to the U.S. Constitution.

   The State committed misconduct and deprived Petitioner of a fair trial by, in violation of Crim.R. 16(K), failing to disclose the complete expert opinions of Massillon Fire Inspector Reginald Winters, and by knowingly soliciting previously undisclosed "expert" opinions from Inspector Winters. This misconduct was a fundamental defect in the trial and was inconsistent with rudimentary demands of fair procedure.

   In addition, the State knew or should have known that Reginald Winters's testimony regarding the origin of the fire was false, unsupported, and/or unqualified. The State committed misconduct by soliciting this testimony and leaving it uncorrected on the record.

3. Right to compulsory process Sixth Amendment to the U.S. Constitution.

The State's failure to disclose the conclusions of its expert prior to trial, in violation of Ohio Crim.R. 16(K) and as described in Count Two, *supra,* deprived Petitioner of the right to compel facts and witnesses in support of her defense. This violation amounts to a fundamental defect which inherently resulted in a complete miscarriage of justice and was inconsistent with rudimentary demands of fair procedure.

4.     Actual innocence Fifth, Eighth, and Fourteenth Amendment to the U.S. Constitution.

Newly-discovered evidence demonstrates that Petitioner is actually innocent of the charges for which she was convicted. Specifically, Inspector Winters' testimony regarding the origin of the fire is false, and the fire was, in fact, accidental.

5.     Conviction obtained by fundamentally unreliable evidence Fifth and Fourteenth Amendments to the U.S. Constitution.

Specifically, the testimony of Reginald Winters regarding the origin of the fire was incorrect, unsupported, and/or fundamentally unreliable in key respects. The probative value of Winters' testimony, if any, was greatly outweighed by the prejudice to Petitioner from its admission. Its role in Petitioner's conviction is a fundamental defect which inherently results in a miscarriage of justice.

6.     Ohio Constitution Article I, Sections 9,10, & 16.

Petitioner's conviction was obtained in violation of her right to effective assistance of counsel and right to compulsory process, as guaranteed by Article I, Section 10 of the Ohio Constitution.

Petitioner's conviction, based on evidence now known to be false, unsupported, and/ or misleading is a violation of her right against cruel and unusual punishment and her right to due process of law, as guaranteed by Article I, Sections 9 and 16 of the Ohio Constitution.

**(Petition, Exhibit 35)**

Ayers also filed a motion for leave to file a motion for new trial pursuant to Ohio Crim.R. 33 **(Motion, Exhibit 36)** and Exhibits **(Exhibit 37)**, and then filed an amended petition for post-conviction relief. **(Petition, Exhibit 38)**

The State filed a motion to dismiss Ayers' post-conviction relief petition because it was not timely filed **(Motion to Dismiss, Exhibit 39)**, and an oppositional reply to Ayer's motion for leave to file a motion for a new trial. **(Reply, Exhibit 40)**

Ayers filed a response to the State's motion to dismiss **(Response, Exhibit 41)**, and a reply in support of his motion for leave to file a motion for a new trial. **(Reply, Exhibit 42)** The State filed a supplemental response to Ayers' petition for post-conviction relief and motion for leave to file a motion for new trial **(Supplemental Response, Exhibit 43)**, and Ayers filed a motion for leave to file a supplemental reply to the State's response **(Motion, Exhibit 44)** and a proposed reply. **(Proposed Reply, Exhibit 45)**

The trial court determined that Ayers' petition for post-conviction relief was untimely, that *res judicata* barred Ayers' claims, and that Ayers' lacked merit, the trial court denied Ayers' petition for post-conviction relief, and journalized its order on November 2, 2021. **(Judgment Entry, Exhibit 46)** In the same order, the trial court determined Ayers did not show by clear and convincing evidence that she was prevented from filing a motion for a new trial or discovery the evidence she was trying to present 8 years after her conviction, and the trial court also denied Ayers' motion for a new trial. **(Judgment Entry, Exhibit 46)**

On November 29, 2021, through current habeas counsel, Ayers timely filed an appeal notice in the state appellate court **(Notice, Exhibit 47)**, and raised these error assignments on collateral appeal:

1.   THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL.

2.   THE TRIAL COURT ERRED BY DENYING APPELLANT'S FIRST AMENDED PETITION FOR POSTCONVICTION RELIEF.

3.   THE TRIAL COURT ERRED BY FAILING TO HOLD AN EVIDENTIARY HEARING.

**(Appellant's Brief, Exhibit 48)** The State filed a brief in response **(Appellee's Brief, Exhibit 49)**, Ayers filed a reply brief **(Reply Brief, Exhibit 50)**, and on June 6, 2022, under Case No. 2021CA00134, the state appellate court overruled Ayers' error assignments and affirmed the trial court judgment. *State v. Ayers*, 5th Dist. Stark No. 2021CA00134, 2022-Ohio-1910. **(Entry, Exhibit 51)**

On July 19, 2022, through current habeas counsel, Ayers timely filed an appeal notice in the Ohio Supreme Court **(Notice, Exhibit 52)**, and raised these error assignments on collateral appeal:

1.   A court cannot reject a Crim.R. 33 motion for a new trial that has not been filed.

2.   The "no reasonable fact-finder" standard of R.C. 2953.23 does not apply to new trial motions under Crim.R. 33.

3.   Where trial counsel fails to consult an independent expert and fails to object to the State's inadmissible and prejudicial expert testimony, that counsel's ineffectiveness undermines all confidence in the jury's verdict and deprives the defendant of her Sixth Amendment right to a fair trial.

4.  When newly discovered evidence outside of the trial record demonstrates constitutional defects during the trial process, res judicata will not bar those constitutional claims in a collateral post-conviction proceeding or a new trial motion under Crim.R. 33.

5.  State misconduct in adducing unreported expert conclusions at trial, along with reliance on unscientific and unsupported expert testimony to convicted a defendant with colorable claim of actual innocence, robs that defendant of her right to compulsory process and due process of law under the Sixth and Fourteenth Amendments, and subjects her to cruel and unusual punishment within the meaning of the Eighth Amendment.

**(Memorandum, Exhibit 53)** The State filed a memorandum in response **(Memorandum, Exhibit 54)**, and on September 27, 2022, under Case No. 2022-0886, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *State v. Ayers,* 167 Ohio St.3d 1528, 2022-Ohio-3322, 195 N.E.3d 167. **(Entry, Exhibit 55)**

Ayers did not timely file a petition for certiorari in the United States Supreme Court and his filing deadline expired December 26, 2022. *See* Sup. Ct. R. 13.3.

**E.    Federal Habeas Corpus**

On July 27, 2020, through counsel, Ayers filed her initial 28 U.S.C. §2254 habeas petition. **(Petition, Doc. No. 1 PageID #16)** After proceedings were stayed for Ayers to exhaust her state court remedies, Ayers filed an amended habeas petition and raised these relief grounds:

**GROUND ONE:** Ineffective assistance of trial counsel in violation of the Sixth Amendment.

**Supporting Facts:** Defense Counsel failed to consult with an expert witness regarding the origin of the fire. Defense Counsel failed to challenge false and unsupported testimony offered by the

State's expert. Defense Counsel failed to object to testimony that should have been barred under Ohio Crim.R. 16(K).

**GROUND TWO:** Prosecutorial misconduct in violation of the Fifth and Fourteenth Amendments.

**Supporting Facts**: The State deprived Petitioner of a fair trial, by in violation of Ohio Crim. R. 16(K), failing to disclose the complete expert opinions of Massillon Fire Inspector Reginald Winters, and by knowingly soliciting previously undisclosed "expert" opinions from Inspector Winters. The State should have known that Reginald Winters' testimony regarding the origin of the fire was false, unsupported, and/or unqualified. The State committed misconduct by soliciting this testimony and leaving it uncorrected on the record. The State's misconduct prejudiced Petitioner, and deprived Petitioner of a fundamentally unfair trial.

**GROUND THREE:** Conviction obtained by fundamentally unreliable evidence in violation of the Fifth and Fourteenth Amendments.

**Supporting Facts**: Petitioner's conviction was obtained using evidence now known to be false, unsupported, and/or fundamentally unreliable. Specifically, the testimony of Reginald Winters regarding the origin of the fire was incorrect, unsupported, and/or fundamentally unreliable in key respects. The probative value of Winters' testimony, if any, was greatly outweighed by the prejudice to Petitioner from its admission. Its role in Petitioner's conviction is a fundamental defect which inherently results in a miscarriage of justice.

**GROUND FOUR:** Actual innocence in violation of Fifth, Eighth, and Fourteenth Amendments.

**Supporting Facts**: Newly-discovered evidence demonstrates that Petitioner is actually innocent of the charges for which she was convicted. Specifically, Inspector Winters' testimony regarding the origin of the fire is false, and the fire was, in fact, accidental. A truly persuasive demonstration of "actual innocence" made after trial renders the conviction unconstitutional. *Herrera v. Collins*, 506 U.S. 390, 418, (1993). As a result, Petitioner's conviction and the ongoing effects of her conviction are inconsistent with the U.S. Constitution's guarantee of due process of law.

**(Amended Petition, Doc. No. 14 PageID 93-101)(Brief, Doc. No. 14-1 PageID 102-136)**

## III.    TERRITORIAL JURISDICTION & VENUE

A §2254 habeas petition may be filed in the district court for the district where the petitioner is in custody, or the district court for the district where the petitioner was convicted and sentenced. 28 U.S.C. §2241(d). Ayers is challenging criminal convictions and sentences from Stark County, Ohio, which is within the Eastern Division of the United States District Court for the Northern District of Ohio's territorial jurisdiction, so this Court has jurisdiction under 28 U.S.C. §2241(d). Additionally, the Eastern Division at Akron is the proper venue for Stark County pursuant to LR 3.8(a).

## IV.    CUSTODY

Custody for habeas purposes is determined at the time a habeas petition is filed. *Maleng v. Cook*, 490 U.S. 488, 490 (1989). In this case, Ayers was released from prison on August 22, 2019 and placed on 3-years post-release control. While on post-release control, Ayers filed her initial habeas petition July 27, 2020, but Ayers' post-release control sentence subsequently expired and ODRC granted Ayers final release from her post-release control sentence on September 2, 2020.

The Supreme Court has "been willing to presume that a wrongful criminal conviction has continuing collateral consequences," so if a petitioner's entire sentence expires while a habeas petition is pending, a habeas court can maintain jurisdiction if the petitioner is alleging a wrongful conviction, and the habeas petition is not moot. *Spencer v. Kemna*, 523, U.S. 1, 7-8 (1998).

Because the claims in Ayers' initial habeas petition **(Petition, Doc. No. 1 Page ID 2-16)** and amended habeas petition **(Amended Petition, Doc. No. 14 Page ID 93-101)** allege that her conviction was wrongful, this Court has continued jurisdiction over Ayers' habeas claims.

## V.    STATUTE OF LIMITATIONS

Ayers did not timely file her federal habeas petition within the 28 U.S.C. 2244(d) statute of limitations.  Statutory tolling, equitable tolling, and actual innocence do not extend Ayers' AEDPA statute of limitations to make her petition timely, and Ayers' habeas petition is time-barred.  Consequently, the Court should deny and dismiss Ayers' habeas petition with prejudice.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations period and the limitations period begins to run from the latest of the four events enumerated in 28 U.S.C. §2244(d)(1) which states:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)    the date on which the factual predicate of the claim or

claims presented could have been discovered through the exercise of due diligence.

"On direct review, the time for filing petitions for certiorari and proceedings in the United States Supreme Court do not count toward the limitations period. On collateral review they do." *Lopez v. Wilson*, 426 F.3d 339, 346 (6th Cir. 2005).

### 28 U.S.C. §2244(d)(1)(D) Does Not Apply

The "petitioner bears the burden of proving that she exercised due diligence, in order for the statute of limitations to begin running from the date she discovered the factual predicate of her claim, pursuant to 28 U.S.C. §2244(d)(1)(D)." *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006), *citing Lott v. Coyle*, 261 F.3d 594, 605-606 (6th Cir. 2001).

In this case, Ayers has not met her burden to establish that she is entitled to a later start date of the statute of limitations under §2244(d)(1)(D). The federal constitutional claims in Ayers' federal habeas petition are all based on the trial court record and were immediately discoverable. Accordingly, in collateral post-conviction relief proceedings, the state trial court reasonably determined that Ayers did not show by clear and convincing evidence that she was unavoidably prevented from "discovering the evidence she was [] trying to present 8 years after her conviction." **(Judgment Entry, Exhibit 46)**

Likewise, in this case, Ayers has not established that the factual predicates for her habeas claims were not immediately discoverable and that she used due diligence to discover the factual predicates.

In her amended habeas petition, Ayers alleges there is "newly discovered evidence" **(Amended Petition, Doc. No. 14 PageID 98)**, and she admits in her

supporting brief that she did not pursue and discover the purported evidence until July 29, 2019 **(Brief, Doc. No. 14-1 PageID 111-112, 132-135)**, which is over 6 years after her conviction.  Ayers has not provided adequate excuse for the undue delay.  *Pro se* status and pro se status are not extraordinary circumstances that excuse a lack of due diligence. *See Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 464 (6th Cir. 2012)

Any argument that Ayers' claims were not discoverable until the state courts denied her collateral post-conviction relief petitions, motions, and appeals lacks merit, because errors in post-conviction proceedings "are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007), *citing Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986).

Since Ayers' factual predicates are not new and they were, or could have been discovered through due diligence, those claims are clearly governed by 28 U.S.C. § 2244(d)(1)(A) and the date Ayers' convictions were finalized.

### AEDPA Statute of Limitation Calculation

Since Ayers has not established that she is entitled to a later statute of limitations start date, her petition is governed by 28 U.S.C. §2244(d)(1)(A) and the date her convictions were finalized.  A conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. §2244(d)(1)(A).

In this case, the state appellate court affirmed Ayers' convictions and sentences on December 9, 2013 **(Opinion, Exhibit 24)**, Ayers did not timely file an appeal in the Ohio Supreme Court and her filing deadline expired on Thursday, January 23, 2014.  *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i); Ohio S.Ct.Prac.R. 3.03(A)(1).

Consequently, Ayers' convictions became final on January 23, 2014, the one-year statute of limitations for filing a federal habeas corpus claim began running the day after her default on January 24, 2014, and expired one year later on Monday, January 26, 2015. *See* 28 U.S.C. § 2244(d)(1). Since Ayers filed her habeas corpus petition on July 27, 2020 **(Petition, Doc. No. 1 PageID 16)**, over 5 ½ years after the statute of limitations expired, Ayers' petition is time-barred unless statutory tolling, equitable tolling, or actual innocence extends the expiration date.

A. <u>**Statutory tolling**</u>

Under 28 U.S.C. § 2244(d)(2), a properly filed application for state post-conviction or other collateral relief with respect to the pertinent judgment or claim tolls the running of the limitations period until the day the state supreme court decides the case or denies review. *Lawrence v. Florida*, 549 U.S. 327 (2007); *Isham v. Randle*, 226 F.3d 691 (6th Cir. 2000). The tolling provision does not revive the limitations period, it only serves to pause a clock that has not yet expired and once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003); *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001).

Not every filing by a criminal defendant tolls the AEDPA statute of limitations, the application must seek "review" of the "judgment pursuant to which the petitioner is incarcerated" to trigger the applicability of § 2244(d)(2)'s tolling provision. See *Garner v. Gansheimer, No.* 1:09-CV-00874, 2009 U.S. Dist. LEXIS 124861 at *7-10, (N.D. Ohio Nov. 30, 2009)(collecting cases),*R&R adopted* 2010 U.S. Dist. LEXIS 11631 at *11-18, 2010 WL 547482 at *12 (N.D. Ohio Feb. 10, 2010). Consequently, this District Court

has consistently held that collateral post-conviction pleadings that do not *collaterally attack the relevant conviction or sentence* do not statutorily toll the AEDPA statute of limitations under §2244(d)(2).  *See Gotshall v. Bracy*, No. 5:18-cv-01608, 2019 U.S. Dist. LEXIS 207980 at *20 n. 11, 2019 WL 6498875 (N.D. Ohio Oct. 29, 2019), *R&R adopted* 2019 U.S. Dist. LEXIS 208299, 2019 WL 6493977 (N.D. Ohio Dec. 3, 2019); *Colvin v. Sloan*, No. 4:18-cv-0438, 2018 U.S. Dist. LEXIS 223440 at *13, 2018 WL 7825437 (N.D. Ohio Oct. 29, 2018)(collecting cases), *R&R adopted* 2019 U.S. Dist. LEXIS 50611, 2019 WL 1367396 (N.D. Ohio Mar. 26, 2019); *Imburgia v. Bradshaw*, Case No. 1:09-cv-2009, 2009 U.S. Dist. LEXIS 133491 at *6, 2009 WL 6366761 (N.D. Ohio Dec. 9, 2009), *R&R adopted* 2010 U.S. Dist. LEXIS 39574, 2010 WL 1628054, at *3-4 (N.D. Ohio April 22, 2010).

§2244(d)(2) does not make Ayers' habeas petition timely.  Ayers' June 27, 2013 motion to appoint counsel for post-conviction relief proceedings **(Motion, Exhibit 25)** does not statutorily toll Ayers' AEDPA statute of limitations because the pleading did not collaterally attack Ayers' convictions and sentences.  Furthermore, all related proceedings concluded on Monday, July 29, 2013, before Ayer's conviction was finalized on January 24, 2014.

None of Ayers' other collateral post-conviction relief pleadings and collateral appeals statutorily toll Ayers' AEDPA statute of limitations because they were all filed after Ayers' AEDPA statute of limitations expired on January 26, 2015.  Additionally, several of the pleadings do not collaterally attack Ayers' convictions and sentences and they do not toll the AEDPA statute of limitations for that reason.

Since Ayers filed her initial habeas corpus petition on July 27, 2020 **(Petition, Doc. No. 1 PageID 16)**, over 5 ½ years after the AEDPA statute of limitations expired, Ayers' petition is time-barred unless equitable tolling, or actual innocence extends the expiration date.

### C.    Equitable Tolling

The AEDPA statute of limitations is subject to equitable tolling; however, equitable tolling relief is rare and is only allowed sparingly. *Holland v. Florida,* 560 U.S. 2549, 2560, 2562 (2010); *Irwin v. Department of Veteran's Affairs*, 498 U.S. 89, 96 (1990); *Pace*, 544 U.S. at 418; *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004).

The Sixth Circuit explained in *Hall v. Warden*, 662 F.3d 745, 750 (6th Cir. 2011), the two-part test established in *Holland* has replaced the five-factor inquiry test previously developed from *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001) and the United States Supreme Court undoubtedly articulated in *Holland* that in order to establish that a habeas petition is entitled to equitable tolling, a habeas petitioner must demonstrate both that he has been diligent in pursuing his rights and that an extraordinary circumstance caused the untimely filing. Cf. *Pace,* 544 U.S. at 418.

Due diligence and prompt action are required and extraordinary circumstances usually must be something outside the petitioner's control. *Johnson v. United States*, 544 U.S. 295, 308 (2005). Garden-variety excusable neglect claims do not warrant equitable tolling. *Holland,* 560 U.S. at 2560, 2562; *Irwin*, 498 U.S. at 96.

The Supreme Court has never accepted *pro se* representation alone or procedural ignorance as excuse for prolonged inattention when a statute's clear policy calls for promptness. *Johnson*, 544 U.S. at 311. Lack of actual notice, and ignorance of the law,

even for an incarcerated *pro se* petitioner, generally does not excuse late filing. *Allen v. Yukins*, 366 F.3d 396 (6th Cir. 2004); *Fisher v. Johnson*, 174 F.3d 710, 714-15 (5th Cir. 1999).

In this case, Ayers is not entitled to equitable tolling relief because she has not met her burden to establish that she was diligent in pursuing her rights or that extraordinary circumstances outside her control prevented her from timely filing her federal habeas petition. To the contrary, Ayers did not timely file a direct appeal in the Ohio Supreme Court and she did not collaterally attack her convictions and sentences in state court until October 19, 2015 **(Motion, Exhibit 29)**, over 2 ½ years after she was convicted on February 1, 2013. **(Sentencing Entry, Exhibit 20)** Additionally, Ayers did not file any collateral state court pleadings between October 27, 2015 **(Motion, Exhibit 31)** and April 13, 2020 **(Motion, Exhibit 35) (Motion, Exhibit 36)**, which is over 4 1/2 years.

Ayers has failed to demonstrate diligent pursuit and extraordinary circumstances and she is not entitled to equitable tolling. Since Ayers filed her initial habeas corpus petition on July 27, 2020 **(Petition, Doc. No. 1 PageID 16)**, over 5 ½ years after the statute of limitations expired, Ayers' petition is time-barred unless actual innocence tolling extends the expiration date.

**D.    Actual Innocence**

A credible showing of actual innocence can, in some circumstances, relieve the application of the limitations period. *McCrary v. Vasbinder*, 499 F.3d 568, 577 (6th Cir. 2007). However, a claim of actual innocence must be supported by evidence that is both

"new" and "reliable" and the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Schlup v. Delo*, 513 U.S. 298, 321, 324 (1995).

To support a claim of actual innocence, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *Id.* at 327. A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence—that was not presented at trial." *Id.* at 324. The age of the information, the timing of its submission, and the likely credibility of the affiant may be considered in assessing an affidavit's reliability. *House v. Bell*, 547 U.S. 518 (2006); *Schlup*, 513 U.S. at 332.

Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005), *quoting Bousley v. U.S.*, 523 U.S. 614, 623 (1998). A petitioner "must produce evidence of innocence so strong that the court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Allen v. Yukins*, 366 F.3d 396, 405 (6th Cir. 2004).

In this case, Ayers has not proffered new and reliable evidence that is sufficient to meet the demanding *Schlup* standard. More specifically, Ayers has not shown that no reasonable juror would have convicted her due to new and reliable evidence. As detailed below in response to Ayers' relief grounds, this Court must defer to the state appellate court's reasonable finding on collateral appeal that "in light of the evidence produced at Ayers' jury trial that did not depend upon expert testimony, and the entire record in

[Ayers'] case, Ayers has not shown a constitutional error occurred during her jury trial and that no reasonable fact-finder would have found her guilty but for the constitutional error at trial." *State v. Ayers,* 167 Ohio St.3d 1528, 2022-Ohio-3322, 195 N.E.3d 167.

**(Entry, Exhibit 55)**

Because Ayers has not met the *Schlup* actual innocence requirements, actual innocence does not excuse the AEDPA time-bar, and this Court must dismiss Ayers' habeas petition with prejudice as time-barred.

## VI.   EXHAUSTION/ PROCEDURAL DEFAULT/ WAIVER

### A.   Exhaustion

Pursuant to 28 U.S.C. §2254(b)(1)(A), an application for a writ of habeas corpus shall not be granted unless a state criminal defendant has first fairly presented his constitutional claims to the state courts for consideration. *Anderson v. Harless,* 459 U.S. 4 (1982); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A claim is not exhausted unless a habeas petitioner provides the highest state court with a full and fair opportunity to rule on the claim, which requires the petitioner to present the claim to the state courts in a procedurally proper manner in accordance with state court rules. *Wright v. West*, 505 U.S. 277, 288 (1992); *Smith v. State of Ohio Dept. of Rehabilitation and Correction*, 463 F.3d 426, 430 (6th Cir. 2006); *citing Lott v. Coyle*, 261 F.3d 594, 601 (6th Cir. 2004).

If a petitioner fails to fairly present his claims through to the state's highest court or commits some other procedural default relied on to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, a federal habeas petition is subject to dismissal with prejudice on the ground that

petitioner has waived his claims for habeas corpus relief. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

The exhaustion requirement is a matter of comity between the federal government and the states; consequently, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. §2254(b)(2); *Rose v. Lundy,* 455 U.S. 509, 518 (1982). A habeas court does not need to wait for exhaustion to be completed if it determines that a return to state court would be futile. *Lott v. Coyle,* 261 F.3d 594, 608 (6th Cir. 2001); *Buell v. Mitchell,* 274 F.3d 337, 349 (6th Cir. 2001).

### B.    Fair Presentation

Fair presentation also requires the petitioner to present the *same claim under the same theory* to the state courts before raising it on federal review. *Pillette v. Foltz,* 824 F.2d 494, 497 (6th Cir. 1987); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). A petitioner must assert the same factual and legal basis for a claim; it is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. *Picard v. Conner,* 404 U.S. 270 (1971); *Hicks v. Straub,* 377 F.3d 538 (6th Cir. 2004).

For example, "bringing an ineffective assistance of counsel claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. Ohio 2008); *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005). A procedurally defaulted claim is not resurrected for a merits review

simply because it was raised as a basis for ineffective assistance of counsel. *Lott v. Coyle*, 261 F.3d 594, 611-612 (6th Cir. 2001).

Furthermore, federal habeas corpus relief is only available to persons that are in custody in violation of the United States Constitution, laws or treaties. 28 U.S.C. §2254(a); *Barclay v. Florida*, 463 U.S. 939 (1983); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Phillips*, 455 U.S. 209 (1982). To satisfy the fair presentation requirement; the claims must have been presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). A claim must be fairly presented to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation. *Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993); *Riggins v. McMackin*, 935 F.2d 790 (6th Cir. 1991).

To determine whether a claim was fairly presented, it is significant to consider whether the petitioner 1) phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; 2) relied upon federal cases employing the constitutional analysis in question; 3) relied upon state cases employing the federal constitutional analysis in question; or 4) alleged facts well within the mainstream of the pertinent constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004).

**C.  Procedural Default**

The Sixth Circuit uses a four-part analysis to determine whether a state court rested its holding on a procedural default so as to bar federal habeas review. *Maupin v.*

*Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  First, there must be a state procedure in place that the petitioner failed to follow. *Id*.  Second, the state court must have actually denied consideration of the petitioner's claim on the ground of the state procedural default. If the petitioner failed to present the claim at all, this second requirement is satisfied.  *Id*. Third, the state procedural rule must be an "adequate and independent state ground" to preclude habeas review.  *Id*.  Fourth, if these three factors are satisfied, the petitioner can overcome the procedural default by either demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice.  *Id*.; *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

Normally, a federal habeas court will consider default in the state courts to have occurred if the last "reasoned state judgment rejecting a federal claim" makes a plain statement of such state procedural default.  *Ylst v. Nunnemaker,* 501 U.S. 797 (1991).  No such statement is necessary if the relevant issues were not presented at all to the state court(s).  *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989).

When a lower court has denied relief on procedural grounds, a superior court's subsequent denial that is silent as to rationale is presumed to have enforced the same procedural bar because federal courts must assume that state courts enforce their own procedural bars.  *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996).

Consequently, a claim is procedurally defaulted if a petitioner did not appeal the claim to the Ohio Supreme Court on direct review.  *Williams v. Anderson*, 460 F.3d 789, 807 (6th Cir. 2006); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

Likewise, the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata*, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th 2000); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

Time limitations for filing post-conviction actions are also independent of federal law and satisfy the State's interests in timely adjudicating claims and obtaining finality in criminal convictions.  Therefore, Ohio's timeliness requirement for post-conviction petitions is an adequate and independent state law ground for denying federal habeas relief. *See Bird v. Hurst*, 110 F. Appx. 474, 477-78 (6th Cir. 2004)(unpublished); *Bailum v. Warden, Lebanon Correctional Institution*, 832 F.Supp.2d 893, 902 n.3 (S.D. Ohio 2011).

### D.   Cause & Prejudice, Miscarriage of Justice, & Actual Innocence

A prisoner that procedurally defaulted or otherwise failed to properly exhaust federal constitutional issues in state court is only entitled to federal habeas corpus review by demonstrating cause for the default and actual prejudice as a result of the alleged federal violation.  Absent cause and prejudice, federal habeas review is only available if failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478 (1986); *Maupin*, 785 F.2d at 138.

Demonstrating "cause" requires a showing that an external impediment prevented the petitioner from complying with state procedural rules and fairly presenting the federal

claims to the state courts. *Murray,* 477 U.S. at 488. While under some circumstances an ineffective assistance of counsel claim could constitute cause to excuse a procedural default of another claim, the ineffective assistance of counsel claim must not itself be procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000); *Henness v. Bagley,* 644 F.3d 308 (6th Cir. 2011).

Additionally, the Supreme Court has clearly established that a petitioner cannot have a valid ineffective assistance of counsel claim unless there is a Sixth Amendment right to counsel at a particular stage of proceedings and the constitutional right to counsel does not extend beyond the first appeal as of right. *Coleman v. Thompson,* 501 U.S. 722 (1991); *Lopez v. Wilson,* 426 F.3d 339 (2005); *Pennsylvania v. Finley,* 481 U.S. 551 (1987).

In Ohio, the first appeal as of right is to the jurisdictional state appellate court, which as far as the right to counsel extends. The constitutional right to counsel does not extend to Ohio Supreme Court appeals, Ohio App. R. 26(B) proceedings, or other collateral post-conviction relief actions. *Coleman,* 501 U.S. at 752; *State v. Buell,* 70 Ohio St.3d 1211, 1994-Ohio-475, 639 N.E.2d 110; *State v. Mapson,* 41 Ohio App.3d 390, 535 N.E.2d 729 (1987); *State v. Castro,* 67 Ohio App.2d 20, 425 N.E.2d 907 (1979).

Additionally, Supreme Court has never accepted *pro se* representation alone or procedural ignorance as excuse for prolonged inattention when a statute's clear policy calls for promptness. *Johnson v. United States,* 544 U.S. 295, 311 (2005). The Sixth Circuit has followed this rationale and specifically found that *pro se* status before the Ohio Supreme Court, ignorance of law and procedural filing requirements, and time

limits on an inmate's prison law library access are insufficient to establish cause to excuse procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

Unless cause is established, a reviewing district court need not address the prejudice issue. *Smith v. Murray*, 477 U.S. 527 (1986). Demonstrating "prejudice" requires showing a disadvantage "infecting" the trial with constitutional error and a habeas petitioner has the burden to demonstrate a reasonable probability that, but for the error claimed, the result of the proceeding would have been different. *United States v. Frady,* 456 U.S.152, 168 (1982); *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *United States v. Bagley*, 473 U.S. 667, 682 (1985).

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-496; *Schlup v. Delo,* 513 U.S. 298, 327 (1995). While case law in this Circuit establishes that the Supreme Court has never recognized a free-standing or substantive actual innocence claim, a persuasive claim of actual innocence can be used to excuse a procedural default so that a habeas court can reach the merits of an underlying constitutional claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2001). *Also see House v. Bell*, 547 U.S. 518; *Schlup v. Delo*, 513 U.S. 298 (1995).

To establish a valid actual innocence claim that would warrant excusing state court procedural defaults a habeas petitioner must support the claim with new evidence that was not presented at trial and that evidence must be so strong that a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 315. Specifically, a "petitioner must show that it is more likely than not that no reasonable

juror would have convicted him in light of the new evidence." *Id*. at 327; *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005).

## VII.  REVIEW STANDARDS

### A.  Merit Review

In federal habeas proceedings, a state court factual determination must be presumed to be correct and a state inmate has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998); *Marshall v. Lonberger*, 459 U.S. 422, 435 (1983); *Sumner v. Mata*, 449 U.S. 539 (1981), *reaffirmed*, 455 U.S. 591 (1982).

Comity principles also require federal courts to defer to a state's judgment on issues of state law and, more particularly, on issues of state procedural law. *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982); *Murray v. Carrier*, 477 U.S. 478, 491 (1986). Because state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and its rules of practice. *Israfil v. Russell*, 276 F.3d 768 (6th Cir. 2001), citing *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). *Also see Bradshaw v. Richey*, 546 U.S. 74, 75 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991); *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005); *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-736 (6th Cir. 1999).

Federal habeas corpus relief does not lie for errors of state law and a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Lewis v. Jeffers*, 497 U. S. 764, 780 (1990); *Pulley v. Harris*, 564 U. S. 37, 41 (1984). Accordingly, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review.

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)(*per curiam*); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

When a state court has previously adjudicated the merits of a federal constitutional claim, habeas relief can only be granted if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The Supreme Court has adamantly and repeatedly enforced AEDPA's demanding review standards. *Woods v. Etherton*, 578 U.S. 113 (2016)(*per curiam*); *White v. Wheeler*, 577 U.S. 73 (2015)(*per curiam*); *White v. Woodall*, 572 U.S. 415 (2014); *Burt v. Titlow*, 571 U.S. 10 (2013); *Metrish v. Lancaster*, 569 U.S. 351 (2013); *Parker v. Matthews*, 567 U.S. 37 (2012)(*per curiam*).

AEDPA creates a formidable barrier to habeas relief and the AEDPA review standard is intended to be difficult to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); *Felker v. Turpin,* 518 U.S. 651, 664 (1996). Even clear error is not enough to warrant relief. *White v. Woodall*, 572 U.S. 415 (2014).

"Section 2254(d) reflects the review that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal," it goes no further. *Id*. Even a strong case for relief does not mean a state court's contrary conclusion was unreasonable, "a state prisoner must

show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 102-103.

"Under §2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington*, 562 U.S. at 102.  The habeas court must not overlook arguments that would otherwise justify the state court's result or substitute its own judgment. *Id*.

"An unreasonable application of federal law is different from an incorrect application of federal law." *Harrington,* 562 U.S. 86,100 (2011), *quoting Williams*, 529 U.S. at 410; *Gumm v. Mitchell*, 775 F.3d 345, 360 (6th Cir. 2014). "The test requires more than mere error; "a federal habeas court may not issue the writ simply because that court concludes in its own independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Mendoza v. Berghuis*, 544 F.3d 650, 652, (6th Cir. 2008); quoting *Williams*, 529 U.S. at 409. "Indeed, even 'clear error' in the state court's application of federal law is not enough." *Id*., citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101, *citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

When analyzing whether fair minded jurists could disagree, "a habeas court must

determine what arguments or theories supported or, …, could have supported, the state court's decision;" a habeas court cannot "overlook arguments that would otherwise justify the state court's result," or treat "the unreasonableness question as a test of its confidence in the result it would reach under *de novo* review." *Harrington*, 562 U.S. at 102.

The meaning of "unreasonable" depends in part on the specificity of the relevant legal rule. *Yarborough*, *541 U.S.* at 653. "Because AEDPA authorizes a federal court to grant relief only when a state court's application of federal law was unreasonable, it follows that 'the more general the rule' at issue – and thus the greater the potential for reasoned disagreement among fair-minded judges – 'the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Renico v. Lett*, 559 U.S. 766, 768 (2010), *quoting Yarborough,* 541 U.S. at 664; *Gumm v. Mitchell*, 775 F.3d 345, 360 (6th Cir. 2014).

### B.    Ineffective Assistance of Counsel Review Standard

To establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was so far below acceptable standards of representation and that counsel committed such serious error that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner also has the burden to affirmatively prove that counsel's deficient performance prejudiced the defense to such an extent that it rendered the proceeding fundamentally unfair.

To establish prejudice, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  Since a petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the court determines that a petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*.

"The standards created by *Strickland* and §2254(d) are both 'highly deferential,' *Strickland*, 466 U.S. at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105, *citing Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  A reviewing federal habeas court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 10 (2013); *citing Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

"Even [on direct] review, the standard for judging counsel's representation is . . . most deferential[.]" *Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015), *quoting Harrington*, 562 U.S. at 105.  Thus, the question before the state courts is not whether trial counsel "deviated from best practices or most common custom," but whether the "representation amounted to incompetence under prevailing professional norms." *Id.* (internal quotation marks omitted).  On "habeas review the standard is more deferential still.  The question before [the court] is whether any 'fairminded jurist' could agree with the state courts that trial counsel satisfied the reasonableness standard set forth in *Strickland." Davis*, 798 F.3d at 468 (6th Cir. 2015), *quoting Harrington*, 562 U.S. at 101.

"That standard is a general one, governing a great blue-water of attorney conduct: from pre-trial discovery to plea-bargaining, from in-court trial tactics to post-verdict motions, from direct appeals to post-conviction challenges. The Supreme Court has charted only parts of that expanse." *Id.*

Assessing appellate counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003).   The *Strickland* performance standard does not require an attorney to raise every non-frivolous issue on appeal and the process of "winnowing out weaker appellate arguments and focusing on those more likely to prevail is the hallmark of effective appellate advocacy." *Id*., *quoting Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).  Therefore, "it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one

argument on appeal rather than another. In such cases, the petitioner must demonstrate

that the issue not presented was clearly stronger than issues that counsel did present." *Id.*,

*quoting Smith v. Robbins*, 528 U.S. 259, 289 (2002).

## VIII.   ARGUMENT

### Ground One

Ayers' first relief ground is:

> **GROUND ONE:** Ineffective assistance of trial counsel in
> violation of the Sixth Amendment.
>
> **Supporting Facts:** Defense Counsel failed to consult with an
> expert witness regarding the origin of the fire. Defense Counsel
> failed to challenge false and unsupported testimony offered by the
> State's expert. Defense Counsel failed to object to testimony that
> should have been barred under Ohio Crim.R. 16(K).

**(Amended Petition, Doc. No. 14 PageID 95-96)(Brief, Doc. No. 14-1 PageID 116-129)**

Ayers is not entitled to habeas relief on her first relief ground and the Court must

deny and dismiss Ayers' first relief ground with prejudice for several reasons. Ayers did

not properly exhaust an identical Sixth Amendment right to effective trial counsel claim

in state court, Ayers inexcusably procedurally defaulted her Sixth Amendment right to

effective assistance of trial counsel claim, and she forfeited federal habeas review and

relief.

Additionally, the state appellate court reasonably denied Ayers' Sixth

Amendment right to effective trial counsel claim on collateral appeal, that decision is not

contrary to or an unreasonable application of clearly established Supreme Court

precedent pertaining to the Sixth Amendment right to effective trial counsel, including

precedent from *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and its progeny, and

that decision is entitled to AEDPA deference in this proceeding. Consequently, Ayers'
Sixth Amendment right to effective trial counsel claim lacks merit, and the court must
also deny and dismiss Ayers' first relief ground with prejudice on the merits.

### Ayers Did Not Exhaust her Sixth Amendment Claim, She Inexcusably Procedurally Default her First Relief Ground, & Forfeited Habeas Review & Relief

Ayers did not properly exhaust an identical Sixth Amendment right to effective
trial counsel claim in state court, Ayers inexcusably procedurally defaulted her Sixth
Amendment right to effective assistance of trial counsel claim, and she forfeited federal
habeas review and relief.

Ayers did not raise an identical Sixth Amendment right to effective trial counsel
claim on direct appeal to the state appellate court **(Appellant's Brief, Exhibit 22)**, she
did not timely file a direct in the Ohio Supreme Court and her filing deadline expired
January 23, 2014.  *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i); Ohio S.Ct.Prac.R. 3.03(A)(1).

Accordingly, when Ayers raised her Sixth Amendment right to effective trial
counsel claim in collateral post-conviction relief proceedings, the state appellate court
denied Ayers' claim because her post-conviction relief petition was untimely and Ohio's
*res judicata rule* barred her claim.  This Court must presume in habeas review that the
Ohio Supreme Court's subsequent decision **(Entry, Exhibit 55)** that was silent as to
rationale rests on the same procedural ground.  *See Ylst v. Nunnemaker*, 501 U.S. 797
(1991); *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996).

 Failing to raise claims that are discoverable from the record on direct appeal to
the state appellate court and the Ohio Supreme Court are both recognized procedural
defaults that waive and preclude habeas review and relief.  Similarly, an Ohio court's *res*

*judicata* dismissal is also a well-established procedural default that waives federal habeas review and relief.

Ayers has not established cause and actual prejudice, or a fundamental miscarriage of justice and actual innocence to excuse her failure to fairly present and properly exhaust her Sixth Amendment right to effective trial counsel claims in the Ohio courts and to excuse her state court procedural defaults.

Ayers cannot rely on ineffective assistance of counsel to excuse her state court procedural defaults because her Sixth Amendment right to trial and appellate counsel claims are themselves procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011). In addition to procedurally defaulting her ineffective assistance of trial counsel claim, Ayers did not file an Ohio App.R. 26(B) application, and her filing deadline expired Monday, March 10, 2014. *See* Ohio App.R. 26(B)(1).

Ayers also cannot rely on ineffective assistance of counsel as cause for excuse because she did not have a constitutional right to counsel in Ohio Supreme Court, Ohio App. R. 26(B) application, or post-conviction relief proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010); *Sowell v. Collins*, 557 F.Supp.2d 843, 919 (S.D. Ohio 2008); *State v. Buell*, 70 Ohio St.3d 1211, 1994-Ohio-475, 639 N.E.2d 110.

Similarly, the fact that Ayers was incarcerated and acting *pro se* does not constitute cause to excuse her procedural default absent other extraordinary circumstances. *See Bonilla v. Hurley*, 370 F.3d 494 (6th Cir. 2004).

Since Ayers has not established cause, this Court does not have to consider the actual prejudice prong. Even so, Ayers has not established actual prejudice or more specifically, a federal constitutional error and a reasonable probability that, but for the established federal constitutional error, the result of Ayers' criminal trial, sentence, or appeal would have been different.

Likewise, Ayers has not proffered new and reliable evidence that is sufficient to meet the demanding *Schlup v. Delo*, 513 U.S. 298 (1995) actual innocence standard. More specifically, Ayers has not shown that no reasonable juror would have convicted her due to new and reliable evidence, and Ayers has not established actual innocence that would excuse her state court procedural defaults.

Based on the foregoing, the Court must dismiss Ayers' first relief ground with prejudice because Ayers inexcusably procedurally defaulted the claims, and Ayers waived federal habeas review and relief.

### The State Appellate Court's Determinations Are Entitled to AEDPA Deference, and Ayers' Sixth Amendment Claim and First Relief Ground Lack Merit

"Nevertheless, this Court may deny relief on the merits, notwithstanding a failure to exhaust where appropriate. See 28 U.S.C §2254(b)(2)." *Hanna v. Ishee*, 694 F.3d 596, 610 (6th Cir. 2012). Whether this Court is considering if Ayers has established a federal due process violation to excuse her state court procedural defaults, or considering her alleged claims on the merits, the results are the same, and the Court must deny Ayers federal habeas relief.

On direct appeal, the state appellate court reasonably determined:

> [*P29] In the second assignment of error, Appellant maintains she received ineffective assistance of trial counsel due to counsel's

failure to cross-examine Inspector Winters with regard to the errors in his draft report and due to reliance on the draft report in preparation for trial.

[*P30]  To succeed on a claim of ineffectiveness, a defendant must satisfy a twoprong test. Initially, a defendant must show that trial counsel acted incompetently.  *See, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984)*. In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id. at 689*, citing *Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L. Ed. 83 (1955)*.

[*P31]  "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland, 466 U.S. at 689*. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id. at 690*.

[*P32]  Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, 466 U.S. at 694*.

[*P33]  Upon review of the record, we find Appellant has not established the second prong of *Strickland* in that but for the alleged error, the result of the proceeding would have been different. Appellant's defense at trial centered upon her son starting the fire, not where the fire started or developed. Appellant averred she was not where person who started the fire. (*sic*) She did not question how the fire progressed or how it originated. Accordingly, we find Appellant has not demonstrated prejudice as a result of the alleged professional error of trial counsel in use of the draft report in preparation for trial as opposed to the final report.

[*P34]  The second assignment of error is overruled.

*State v. Ayers*, 5th Dist. Stark No. 2013CA00034, 2013-Ohio-5402.  **(Opinion, Exhibit 26)**

On collateral appeal, the state appellate court reasonably determined these facts:

[*P2] Before the fire on the evening of October 3, 2012, Ayers and her family (her boyfriend and their three young children) were living with her father and his family (his girlfriend and her two children) in his Massillon residence. 2T. at 307-312[1]. Her father, Jeff Ayers, eventually discussed finances with Ayers and the fact that she was not contributing much toward the household expenses. Their relationship deteriorated due to the financial situation, and Mr. Ayers told his daughter to leave and care for her own family. Ayers responded by telling her father that she was not leaving and that he should leave. Ayers then threatened to burn the house down. Fearful for himself and his pregnant girlfriend, Mr. Ayers decided to leave and force Ayers to care for her family on her own. When he told his daughter of his decision, Ayers threatened to burn the house down if he were to leave. Id. At the time of this threat, a friend of Mr. Ayers, Jason Pandrea (who was having a sexual relationship with Ayers), overheard Ayers's threat. Mr. Ayers decided to leave the Massillon home nonetheless, and left for West Virginia to seek employment and new living arrangements during the morning of October 3, 2012. 2T. at 307-321; 339.

[*P3] On October 3, 2012, Ayers's boyfriend, Brennan Scott, left for work as usual, picking up his boss on the way. 2T. at 325-376. After work, he picked up Ayers and then went to get their children from day care around 6:30 p.m. 2T. at 327. Scott then took his boss and his boss's children home to Beach City, where Scott stayed for a couple hours socializing. 2T. at 327-328. Two of Ayers's children, the daughters, who were 5 and 4, boarded a church bus to take them to evening services around that time. 2T. at 327. When Brennan Scott returned around eight o'clock that night, he found fire trucks around his house. 2T. at 328.

[*P4] Karen Ball, a regular attendee at this church, arrived at the Ayers residence in order to pick up Ayers and her three children. 2T. at 376-377. Ball knocked on the front door, but no one answered the door. Id. at 378. Instead, she heard the dog barking, and then heard someone say, "Shhh." 2T. at 378-379. Getting no answer, Ball went to the kitchen door. 2T. at 379. Ball was able to see Ayers's purse and a backpack on a chair on the deck. 2T. at

---

[1] For clarity, the transcript from Ayers's jury trial on January 28, 29, and January 30, 2013 will be referred to as, "__T.__," signifying the volume and the page number.

379. Ball talked briefly with a neighbor, which led her to believe that Ayers was inside the home. 2T. at 380-381.

[*P5] While at church, Ball decided to leave the service early to check on Ayers. 2T. at 381. Arriving at the home around eight o'clock, Ball noticed a flickering emanating from a basement window. 2T. at 381-382. Ball knocked on the basement door, but got no answer other than the dog barking. Ball called to Ayers repeatedly, but got no answer. 2T. at 383. She went once again to the kitchen door to knock and call to Ayers. Still getting no answer other than the dog's persistent barking, Ball returned to her car to get her cane, after which she intended to go to a neighbors to ask about Ayers. 2T. at 384. When she got to her car, she heard a thump, turned around, and saw Ayers running to her with her youngest child, three-year-old Bubba (Brennan, Jr.). 2T. at 384-385. Ayers told Ball to call 9-1-1, so the disabled woman went to the neighbors' and had them call 9-1-1. 2T. at 385-386. While waiting for the fire fighters to respond, Ball stayed with Ayers and Bubba. She noticed that Ayers had cut her hand, but that Bubba was fine. 2T. at 386. Ayers also kept bemoaning the fact that she was going to lose her children. 2T. at 389.

[*P6] The neighbor, Jennifer Conley, heard Ayers say that Bubba had started the fire. Conley detected a strong odor of burnt marijuana on Ayers. 2T. at 359-360, 362, 367.

[*P7] Fire fighters from the Massillon Fire Department responded to the 9-1-1 call, and put out the fire inside the home. Once the fire was extinguished (primarily in the basement), the smoke inside the home was ventilated out, which then allowed the fire inspector to investigate the nature and origin of the fire. The fire fighters-paramedics also treated Ayers and her lacerated hand, as well as Bubba. The paramedics noted that Bubba did not have any smoke smell or soot about him; Ayers, however, had soot on her, which indicated that she had been in the basement, which was the obvious source of fire. 1T. at 182-187, 189, 193, 213, 215.

[*P8] Inspector Reginald Winters of the Massillon Fire Department testified he ruled out an electrical shortage as the cause of the fire. Winters determined a mattress was the point of origination for the fire, and there were two distinct start points at separate ends of the mattress. Winters opined that the cause of the fire was incendiary, i.e., an open flame 1T. at 231. Thus, someone used an open flame to light two fires at different ends of the mattress. Winters did not find any evidence that the fire had been started by a cigarette, i.e., he did not find any remnant of a cigarette. 1T. at 239-240. There also did not appear to be any

accelerants used in the fire. 1T. at 248; 2T. at 293-294.

[*P9]  Because mattresses now have fire retardants on them, Inspector Winters testified that the initial flame would have been small, and that a glass of water would have extinguished the flame. The fire retardants cause any flame to burn slowly, not fast, and that a cigarette will take hours to light a mattress on fire. Fanning the fire would have given it oxygen, causing the flame to get bigger. Winters opined that the mattress at the Ayers residence burned between ten and twelve minutes before the fire department arrived. 2T. at 266-268.

[*P10]  Winters testified that Bubba, if he had started the two fires, would have had to light the fire at one end of the mattress, and then crawl to the other end while the mattress was on fire to the other end and light that spot as well. 2T. at 303-305.

[*P11]  In his official report, Inspector Winters reached the following conclusions about the fire:

> After examination of the fire scene it was determined the fire originated in the basement on the bed. After examination of the fire scene, interviewing witnesses, interviewing the insured and using the levels of scientific certainty as discussed in the 2011 edition of NFPA 921; A Guide for Fire and Explosion Investigation, it is my opinion the ignition source for the fire was some type of open flame. The materials first ignited were blankets on the bed. The act or omission that brought the ignition source and the materials first ignited together was the deliberate act of a person or persons. Using these elements of a fire cause, the cause of the fire is incendiary.

2 T. at 300-301.

[*P12]  Winters' report concluded the fire was not an accident. 1T. at 250. Investigator Winters prepared a draft report. In that report, which he referred to as a template, he concluded the fire originated on the first floor of the residence. Winters maintains this was a typographical error, and should have read the fire originated in the basement of the residence. Additionally, the report contained several other errors not to be included in the final copy. Winters stated in his testimony at trial, the report that had included the alleged errors was not the final report. *State v. Ayers, 5th Dist. Stark No. 2013 CA 00034, 2013-Ohio-5402, ¶9.*

[*P13]  Ayers's defense centered upon the allegation her young

son started the fire. Id. at 3. The defense did not present any expert testimony during the jury trial. After the fire, Ayers's son did not appear to have any smoke exposure or soot on his person. Ayers's appeared to have smoke exposure and tested positive for soot residue on her person. *Id. at ¶3*.

[*P14] Winters interviewed Ayers at the hospital where she had been taken due to the cut on her hand. 2T. at 260. At the hospital, Ayers told Winters that she was in the basement folding clothes when she noticed Bubba was over by the mattress playing with a lighter. Id. at 261; *Petition for Post-Conviction Relief*, filed May 18, 2020 at Exhibit F. Ayers did not respond when asked by Winters if she had attempted to take the lighter away from the child. 2T. at 262. She was alerted to the fire when she saw a very small red glow. Id. She grabbed a blanket and began to attempt to smother the fire by beating it with the blanket. Id. When that only fanned the flames, Ayers said she attempted to get water from the washing machine to douse the fire. Id. Ayers pours a glass of water on the flames; however, it failed to extinguish the fire. 2T. at 262-263. She fell and cut her hand while retrieving a second glass of water. Id. Ayers indicated that the child remained in the basement the entire time that she was trying to put out the fire. 2T. at 263.

[*P15] Once he had completed his investigation of the fire scene, Inspector Winters went to the Massillon Police Department to interview Ayers. This interview included Patrolman Curtis Rucker of the Massillon Police Department. 1T. at 198-200. The redacted portion of this interview was admitted into evidence during Ayers's jury trial as State's Exhibit 1. 2T. at 396-397.[2] In the interview, Ayers told the officers that she had been in the basement folding clothes. Ayers noticed Bubba standing next to the mattress. She did not notice anything in his hands. State's Exhibit 1. She shortly afterwards noticed a fire on the bed, so Ayers grabbed a blanket and starting fanning the flame. Unsuccessful in putting out the fire, Ayers claimed that she ran to the washing machine, grabbed a glass of water, and threw it on the flame. Unsuccessful yet again, she ran and got another glass of water, but tripped on her way back to the bed, dropping the glass and breaking it, and then falling on it and cutting her hand. The child remained in the basement with Ayers during the entire ordeal.

[*P16] Winters asked Ayers how she could see her son by the bed while she was folding clothes at the dryer since there was a

---

[2] This Court has reviewed State's Exhibit 1.

chimney, a hot water tank, and a furnace blocking the view from that location. Ayers did not know. When asked why she told another officer that she might have fallen asleep, Ayers seem confused. State's Exhibit 1. Ayers denied ever threatening to burn the house down. She denied ever telling anyone that she had threatened to burn the house down. State's Exhibit 1. Ayers denied having problems with her father. She stated her father only asked her to move out when he was drunk. When Ayers was shown the written statement that her father had given to the police stating that she had threatened to burn the house down, Ayers told the officers that her father was a liar and a terrible alcoholic, who has mistreated her since childhood. State's Exhibit 1; *Petition for Post-Conviction Relief*, filed May 18, 2020 at Exhibit H.

[*P17] By the end of the interview, Ayers told the officers that she must have gone to sit on the bed to smoke a cigarette while she was waiting to change loads of laundry, and that she must have fallen asleep. State's Exhibit 1. Ayers denied that she had been drinking or using drugs, and told the investigators that she was only on Adderall for her ADHD. When offered, Ayers declined a drug test. State's Exhibit 1.

[*P18] Winters spoke with Bubba, and noticed that the boy did not smell of smoke or soot, did not have any burn marks, and had no soot in his nostrils. Winters did ascertain that the boy was able to light a lighter. Winters then returned to the fire scene and found a broken glass in the basement. He also found a blood splatter on the hot water tank and washing machine, and a blood trail that went up the basement steps, then back down, and that there was blood on the wall by the steps. He also found blood in the kitchen and on the kitchen table. 2T. at 270-273.

[*P19] Ayers was indigent. The record contains no evidence that the defense requested the trial court provide funds to consult with an expert witness. Ayers did not testify at trial or offer any evidence in her defense.

[*P20] On November 6, 2012, Ayers was indicted on one count of Aggravated Arson, in violation of *R.C. 2909.02(A)(2)*, a felony of the second degree, and one count of Endangering Children, in violation of *R.C. 2919.22(A)*, a first-degree misdemeanor.

[*P21] The matter proceeded to a jury trial, and on January 30, 2013, Ayers was found guilty by a jury of both offenses. Ayers was sentenced to serve a prison term of seven years on the charge of Aggravated Arson and a concurrent sentence of one hundred

eighty days on the charge of Endangering Children. This Court upheld Ayers's conviction and sentences. *State v. Ayers, 5th Dist. Stark No. 2013 CA 00034, 2013-Ohio-5402*. Ayers has served her prison term in this case.

[*P22]  In June of 2013, Ayers filed a motion for appointment of counsel to represent her in a petition for post-conviction relief pursuant to *R.C. 2953.21* claiming she wanted to obtain "additional evidence that was not presented on my behalf at the time of my trial." The court denied the request to appoint counsel. Ayers did not file a petition for post-conviction relief at that time.

[*P23]  On May 7, 2014, Ayers pro se filed a Motion to Stay Execution and Collection of Court Costs. The trial court overruled the motion by Judgment Entry filed May 8, 2014. [Docket No. 93].

[*P24]  On May 13, 2014, Ayers filed a pro se Motion to Stay Execution and Collection of Court Costs and an Affidavit of Indigency. [Docket No. 95]. The trial court overruled the motion by Judgment Entry filed May 14, 2014. [Docket No. 96].

[*P25]  On May 28, 2015, Ayers filed pro se, "Defendant's Motion for Credit of Community Service Hours Earned Toward Payment of Fines, Court Costs, and/or Restitution," together with an attachment showing Ayers's 179 hours of community service earned in prison. [Docket No. 97]. The trial court overruled the motion by Judgment Entry filed May 29, 2015. [Docket No. 98].

[*P26]  On October 19, 2015, Ayers filed pro se a "Motion for Modification of Sentence," together with a Memorandum in support. [Docket No. 99]. The trial court overruled the motion by Judgment Entry filed October 20, 2015. [Docket No. 100].

[*P27]  On October 27, 2015, Ayers filed pro se a Motion to Reduce or Sentence, together with numerous attachments. [Docket No. 101]. The trial court overruled the motion by Judgment Entry filed October 27, 2015. [Docket No. 102].

[*P28]  On November 9, 2015, Ayers sent a letter to the trial judge requesting a payment plan be established for her court costs. [Docket No. 103]. The trial court overruled the request by Judgment Entry filed November 18, 2015. [Docket No. 104].

[*P29]  On March 4, 2016, Ayers wrote a letter to the judge asking to suspend the collection of her court costs until her release from prison. [Docket No. 105]. The trial court overruled the motion by

Judgment Entry filed March 7, 2016. [Docket No. 106].

[*P30] On December 27, 2016, Ayers's aunt sent a letter to the judge to reduce or waive Ayers's court costs. [Docket No. 107].

[*P31] On January 6, 2017, Ayers sent a letter to the trial judge to reduce or waive Ayers's court costs. [Docket No. 108]. The trial court overruled the motion by Judgment Entry filed January 6, 2017. [Docket No. 109].

[*P32] On February 15, 2017, Ayers sent a letter to the trial judge to reduce or waive Ayers's court costs or establish a payment plan. [Docket No. 110]. The trial court overruled the motion by Judgment Entry filed February 15, 2017. [Docket No. 111].

[*P33] On February 12, 2018, Ayers filed pro se a Motion for Judicial Release, together with attachments and a request for a hearing. [Docket No. 112]. The trial court overruled the motion by Judgment Entry filed February 12, 2018. [Docket No. 113].

[*P34] On April 13, 2020, Ayers, through counsel, filed a Petition for Post-Conviction Relief Pursuant to _R.C. 2953.21-23_. ["PCR"] Ayers also filed a Motion for Leave to File for New Trial Pursuant to _Crim.R 33(B)_ on April 13, 2020. Ayers filed her First Amended Petition for Post-Conviction Relief Pursuant to _R.C. 2953.21-23_ on May 18, 2020.

[*P35] Submitted in support of each motion, Ayers attached an affidavit from John Lentini. Mr. Lentini is one of the foremost forensic arson experts in the United States. In 2019, Mr. Lentini reviewed the 2013 testimony and summary conclusions of Inspector Winters and produced a report. According to Lentini's analysis, "the expert testimony presented to the jury by Mr. Winters was unreliable, unscientific, and at odds with generally accepted fire investigation methodology." Affidavit of John Lentini, ("Lentini Affidavit") attached as Exhibit O to Petition for Post-conviction Relief, ¶32. Specifically, Lentini concludes "unequivocally and to a reasonable degree of professional certainty" that,

> 1). "The proposition that this fire had two points of origin is unsupportable by any generally accepted methodology,"
>
> 2). "Mr. Winters used circular logic to conclude that the fire could not have been set by Ms. Ayers's son Brennan,"

3). "Despite claiming to follow NFPA 921, Mr. Winters disregarded its guidance in several important ways," and

4). "Mr. Winters demonstrated by his testimony that he is not qualified to investigate fires per NFPA 1033, the generally accepted industry standard."

Lentini Affidavit at ¶ 9.

**[*P36]** By Judgment Entry filed November 2, 2021, the trial court denied both of Ayers's motions. The trial court dismissed the PCR petition on jurisdictional grounds, finding the petition was not timely filed and did not fall within any exceptions of *R.C. 2953.23(A)*. Further, the trial court found the claims in the PCR petition were barred by res judicata. Regarding Ayers's motion for leave to file a motion for new trial, the trial court found that she failed to make the requisite showing that she was unavoidably prevented from discovering the evidence she sought to present in a motion for new trial.

*State v. Ayers,* 167 Ohio St.3d 1528, 2022-Ohio-3322, 195 N.E.3d 167. **(Entry, Exhibit 55)**

The state appellate court then reasonably determined on collateral appeal:

**[*P40]** For ease of discussion, we will address Ayers's Assignments of Error out of sequence.

**[*P41]** In her Second Assignment of Error, Ayers argues that the trial court erred in overruled her untimely petition for post-conviction relief without a hearing.

**Petition for Post-Conviction Relief**

**[*P42]** *R.C. 2953.21(A)* states, in part, as follows: "(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief".

[*P43]  A post-conviction proceeding is a collateral civil attack on a criminal conviction. *State v. Calhoun, 86 Ohio St.3d 279, 281, 1999- Ohio 102, 714 N.E.2d 905 (1999)*; *State v. Phillips, 9th Dist. No. 20692, 2002-Ohio-823*. In order to obtain post-conviction relief, a petitioner must show that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States [.]" *R.C. 2953.21*; *State v. Watson, 126 Ohio App.3d 316, 323, 710 N.E.2d 340 (12th Dist. 1998)*.

*Right to evidentiary hearing is not automatic*

[*P44]  Under *R.C. 2953.21*, a petitioner seeking post-conviction relief is not automatically entitled to an evidentiary hearing. *Calhoun, 86 Ohio St.3d at 282, 714 N.E.2d 905, 1999-Ohio-102*. Significantly, the Ohio Supreme Court has held that the proper basis for dismissing a petition for post-conviction relief without holding an evidentiary hearing include: 1) the failure of the petitioner to set forth sufficient operative facts to establish substantive grounds for relief, and 2) the operation of res judicata to bar the constitutional claims raised in the petition. *Calhoun, 86 Ohio St.3d at paragraph two of the syllabus*; *State v. Lentz, 70 Ohio St.3d 527, 530, 1994- Ohio 532, 639 N.E.2d 784 (1994)*.

[*P45]  In order for an indigent petitioner to be entitled to an evidentiary hearing in a post-conviction relief proceeding on a claim that he was denied effective assistance of counsel, the two-part analysis set forth in *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)* is to be applied. *Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203(1985)*; *State v. Lytle, 48 Ohio St. 2d 391, 358 N.E.2d 623 (1976)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*; *State v. Cole, supra, 2 Ohio St.3d at 114, 443 N.E.2d 169, 2 Ohio B. 661*. The petitioner must therefore prove that: 1). counsel's performance fell below an objective standard of reasonable representation; and 2). there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id.

[*P46]  *R.C. 2953.21* does not expressly mandate a hearing for every post-conviction relief petition; therefore, a hearing is not automatically required. In determining whether a hearing is required, the Ohio Supreme Court in *State v. Jackson, 64 Ohio St.2d 107, 413 N.E.2d 819(1980)*, stated the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting

affidavits, and the files and records of the case. As the Supreme Court further explained in *Jackson*, "[b]road assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction relief petitions." *Id. at 111, 413 N.E.2d 819*. Rather, a petitioner must submit evidentiary documents containing sufficient operative facts to support his claim before an evidentiary hearing will be granted. Accordingly, "a trial court properly denies a defendant's petition for post-conviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun, 86 Ohio St.3d at paragraph two of the syllabus*; see *R.C. 2953.21(C)*.

[*P47] Furthermore, before a hearing is granted in proceedings for post-conviction relief upon a claim of ineffective assistance of trial counsel, the petitioner bears the initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. *Calhoun, 86 Ohio St.3d at 289, 714 N.E.2d 905, 1999-Ohio-102*; *State v. Jackson, 64 Ohio St.2d 107, 413 N.E.2d 819(1980)*, syllabus; see, also *Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693(1984)*.

[*P48] "In determining how to assess the credibility of supporting affidavits in post-conviction relief proceedings, the Supreme Court adopted the reasoning of the First Appellate District in *State v. Moore, 99 Ohio App.3d 748, 651 N.E.2d 1319(1st Dist. 1994)*, which had looked to federal habeas corpus decisions for guidance. *Id. at 753-754, 651 N.E.2d at 1322-1323*. The Supreme Court ultimately determined that the trial court should consider all relevant factors in assessing the credibility of affidavit testimony in 'so-called paper hearings,' including the following: '(1) whether the judge viewing the post-conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.' *Calhoun, 86 Ohio St.3d at 285, 714 N.E.2d at 911-912*, citing *Moore, 99 Ohio App.3d at 754-756, 651 N.E.2d at*

*1323-1324*." *State v. Kinley, 136 Ohio App.3d 1, 13-14, 735 N.E.2d 921, 930-31(2nd Dist. 1999)*. A trial court that discounts the credibility of sworn affidavits must include an explanation of its basis for doing so in its findings of fact and conclusions of law in order that meaningful appellate review may occur. *Id. at 285, 714 N.E.2d at 911-912*.

## Res Judicata

[*P49] Another proper basis upon which to deny a petition for post-conviction relief without holding an evidentiary hearing is res judicata. *State v. Lentz, 70 Ohio St.3d 527, 530, 1994-Ohio-532, 639 N.E.2d 784*; *State v. Perry, 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104(1967)*; *State v. Phillips, 9th Dist. No. 20692, 2002-Ohio-823*. Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. *State v. Szefcyk, 77 Ohio St.3d 93, 1996- Ohio 337, 671 N.E.2d 233(1996), syllabus, approving and following State v. Perry, 10 Ohio St.2d 175, 226 N.E.2d 104(1967), paragraph nine of the syllabus*. It is well settled that, "pursuant to res judicata, a defendant cannot raise an issue in a [petition] for post-conviction relief if he or she could have raised the issue on direct appeal." *State v. Reynolds, 79 Ohio St.3d 158, 161, 1997-Ohio 304, 679 N.E.2d 1131(1997)*.

[*P50] Similarly, regarding claims of ineffective assistance of trial counsel in post-conviction proceedings, the Ohio Supreme Court has stated that where a defendant, represented by different counsel on direct appeal, "fails to raise [in the direct appeal] the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for post-conviction relief." *State v. Cole, 2 Ohio St.3d 112, 2 Ohio B. 661, 443 N.E.2d 169(1982)*, syllabus; *see, also, Lentz, 70 Ohio St.3d at 530, 1994-Ohio-532, 639 N.E.2d 784*; *State v. Phillips, supra*.

## Time requirements for filing

[*P51] The pertinent jurisdictional time requirements for a post-conviction petition at the time of Ayers's direct appeal were set forth in *R.C. 2953.21(A)(2)* as follows,

A petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication * * *.

[*P52] In order for a court to recognize an untimely post-conviction petition, **both of the following requirements must apply** (_R.C. 2953.23(A)(1)_):

> (a) Either the petitioner shows that the petitioner was _unavoidably prevented_ from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in _division (A)(2) of section 2953.21 of the Revised Code_ or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

> (b) The petitioner shows by clear and convincing evidence that, _but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted_ or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence. (Emphasis added).

[*P53] In the case at bar, Ayers agrees that her petition was filed outside the 180-day time limit in effect at the time of her conviction.

**Standard of Review – Untimely petition for Post-Conviction Relief**

[*P54] A post-conviction proceeding is a collateral civil attack on the judgment, _State v. Calhoun, 86 Ohio St.3d 279, 281, 1999-Ohio 102, 714 N.E.2d 905 (1999)_, and the "right to file a post-conviction petition is a statutory right, not a constitutional right," _State v. Broom, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 28_. A post-conviction petitioner therefore "receives no more rights than those granted by the statute." _Calhoun at 281, 714 N.E.2d 905_. This means that any right to post-conviction relief must arise from the statutory scheme enacted by the General

Assembly.

**[*P55]** That includes the right to have one's claim heard at all: _R.C. 2953.23(A)_ provides that "a court _may not entertain_ a petition filed after the expiration of the period prescribed in [ _R.C. 2953.21(A)_] or a second petition or successive petitions for similar relief on behalf of a petitioner _unless_" one of the exceptions in _R.C. 2953.23(A)_ applies. (Emphasis added.) _State v. Apanovitch, 155 Ohio St. 3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 36._ Therefore, a petitioner's failure to satisfy _R.C. 2953.23(A)_ deprives a trial court of jurisdiction to adjudicate the merits of an untimely or successive post-conviction petition. _Apanovitch at ¶ 36_.

**[*P56]** Accordingly, given the substance of Ayers's allegations, for the trial court to have subject-matter jurisdiction to consider the petition, Ayers had to show (1) that she was "unavoidably prevented from discovery of the facts" upon which her claim relies _and_ (2) by clear and convincing evidence, that no reasonable fact-finder would have found her guilty or eligible for the death sentence but for the constitutional error at trial. _R.C. 2953.23(A)(1)_. _See State v. Apanovitch, 155 Ohio St. 3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 36. State v. Bethel,   Ohio St.3d  , 2022-Ohio-783,   N.E.3d  , ¶20_.

**[*P57]** We review de novo whether the trial court had subject-matter jurisdiction to entertain Ayers's petition. _Apanovitch at ¶ 24_; _Bethel at .¶20_.

**[*P58]** We must first decide does the post-conviction petition satisfy an exception provided in _R.C. 2953.23(A)_. _State v. Apanovitch, 155 Ohio St. 3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 23_.

_"[U]navoidably prevented from discovery of the facts"_

**[*P59]** For the trial court to have jurisdiction to entertain the ineffective assistance of trial counsel claim alleged in the post-conviction petition, Ayers first had to establish that she was "unavoidably prevented from discovery of the facts" on which she relies. _R.C. 2953.23(A)(1)(a)_. To meet this standard, courts in Ohio have previously held that a defendant ordinarily must show that he was unaware of the evidence he is relying on and that he could not have discovered the evidence by exercising reasonable diligence. _Bethel, at ¶21_ citing _State v. Harrison, 8th Dist. Cuyahoga No. 105909, 2018-Ohio-1396, 2018 WL 1778661, ¶ 6_.

[*P60]  We find it unnecessary to reach this issue because even if we assume arguendo that Ayers was "unavoidably prevented from discovery of the facts" on which she relies, Ayers must also show by clear and convincing evidence that no reasonable fact-finder would have found her guilty but for constitutional error at trial. _Apanovitch, 155 Ohio St.3d at ¶26_.

_No reasonable fact-finder would have found Ayers guilty but for the constitutional error at trial_

[*P61]  Ayers's post-conviction petition faces an additional jurisdictional hurdle: under _R.C. 2953.23(A)(1)(b)_. Therefore, we must first decide whether a constitutional error occurred during Ayers's jury trial. If a constitutional error occurred, we must then find by clear and convincing evidence that no reasonable fact-finder would have found her guilty but for constitutional error at trial. This question goes to the heart of the second prong of the _Strickland-Brady_ test for claims of ineffective assistance of counsel, which requires Ayers to show that is there is a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. _Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)_; _State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)_. In _Harrington v. Richter_, the United States Supreme Court discussed the prejudice prong of the _Strickland_ test,

> A reasonable probability is a probability sufficient to undermine confidence in the outcome." _[Strickland], at 694, 104 S.Ct. 2052_. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." _Id., at 693, 104 S.Ct. 2052_. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." _Id., at 687, 104 S.Ct. 2052_.

_562 U.S. 86, 104,131 S.Ct. 770, 178 L.Ed.2d 624 (2011)_.

**Substantive Claims**

_First Ground for Relief_

[*P62]  In the First Count of her petition for post-conviction relief Ayers contends that she was denied effective assistance of counsel. Specifically, Ayers contends 1). Defense counsel failed to consult with an expert witness regarding the origin of the fire; 2). Defense counsel failed to challenge false and unsupported testimony offered by the state's expert; and 3). Defense counsel failed to

object to testimony that should have been barred under _Ohio Crim.R.16(K)_.

_1). Failure to consult with an expert._

**[\*P63]**  In support of her contention that she was denied effective assistance of counsel because her trial attorney did not consult with an expert witness, Ayers submitted the affidavit of John J. Lentini, a renowned forensic arson expert. Lentini concludes "unequivocally and to a reasonable degree of professional certainty" that:

> 1). "The proposition that this fire had two points of origin is unsupportable by any generally accepted methodology,"
>
> 2). "Mr. Winters used circular logic to conclude that the fire could not have been set by Ms. Ayers's son Brennan,"
>
> 3). "Despite claiming to follow NFPA 921, Mr. Winters disregarded its guidance in several important ways," and
>
> 4). "Mr. Winters demonstrated by his testimony that he is not qualified to investigate fires per NFPA 1033, the generally accepted industry standard."

Lentini Affidavit at ¶ 9. Mr. Lentini is highly critical of the state's expert Fire Inspector Reginal Winters.

**[\*P64]**  At trial Fire Inspector Winters testified concerning his knowledge and experience as follows,

> Q. How long have you been a Fire Inspector/Fire Investigator?
>
> A. I've been - - five years with the City of Massillon, been on the fire department for ten.
>
> Q. And prior to your employment at the City of Massillon, were you employed elsewhere as a firefighter?
>
> A. Yes, sir, fifteen years with the City of Orrville.
>
> Q. Now, if you would, could you tell these ladies and gentlemen what a fire inspector's duties are?
>
> A. Fire inspector's duties are we do public safety. We also go through commercial buildings ensuring safety, making

sure the fire extinguishers, exit lights are lit, and we also give approval for new buildings and stuff like that. We work with the building department. We also are in charge of fireworks, certifying them and stuff like that, to inspect the site to make sure it's safe for the community.

Q. How about the other part of your job description that you previously entail detailed that you had, would you explain that to these folks?

A. As a Fire Investigator, my job is to come in and determine origin and cause. The cause being what happened, the origin is where the fire started at.

Q. Did you have to undergo specialized training in order to hold a position as that of which you just described?

A. Yes, sir.

Q. What type of training, first of all, did you have to undergo?

A. First of all, I had to get my certified Fire Inspector. You have to be a certified Fire Inspector. And then from there you have to - - it's two stages. You have a basic Fire Investigator and then you have an advanced Fire Inspector course you have to take.

Q. Let's talk about the certified Fire Inspector training first. What does that entail?

A. That entails looking at multiple burn scenes, learning the scientific methodology of how different things burn as far as oils, gas, electrical fires, the synthetic fires as far as people using open flames to fires, candles, paper. And we look at the different patterns the fire makes, the different charring of wood and stuff like that to make our determination whether - - what caused the fire, whether it was mechanical, accidental, or incendiary.

Q. Do you have to go to classes for that?

A. Yes, sir.

Q. And how long were those classes?

A. My first class as a basic investigator,  it was 32 hours.
The second part of advanced was - - it was 40 hours.

Q. Did you successfully complete all those classes?

A. Yes, sir.

Q. And then at the end of those classes, do you have to take
a test?

A. Yes, sir.

Q. And did you successfully pass all those tests?

A. Yes, sir.

Q. So, you are now a certified arson Investigator?

A. Yes.

Q. And that's within the State of Ohio?

A. Yes, sir.

Q. Once you complete that training,  do you have to
continue to update your education?

A. Yes, sir.

Q. What do you have to do?

A. We have to - - well, we take like different seminars. One
seminar I attend is the International  Firefighters
Association of Arson Investigators in Columbus.  It's an
annual Fire Investigator course weeklong.  We have to
maintain 32 hours in a three-year period of continuing
education.

Q. And as you sit here today, are you current in all your
requirements to be a certified arson investigator?

A. Yes, sir.

Q. You indicated that you've held that position with the
Massillon  Police [sic] Department for five years. Could you
estimate the number of fires you've investigated within

those five years?

A. I would say approximately 30.

Q. And have you testified before in the courts of Stark County as an expert in the cause and origin of fires?

A. Yes, sir.

Q. And has that testimony been accepted by the courts?

A. Yes, sir.

1T. at 225-229.

[*P65] In *State v. Thomas, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017*, the Supreme Court observed,

> Neither special education nor certification is necessary to confer expert status upon a witness. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150*; *State v. Baston, 85 Ohio St.3d 418, 423, 1999- Ohio 280, 709 N.E.2d 128*. *Pursuant to Evid.R. 104(A), the trial court determines whether a witness qualifies as an expert*, and that determination will be overturned only for an abuse of discretion. *State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150*; *State v. Williams (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444*.

Id. at ¶46 (emphasis added). Ayers does not argue in her petition for post-conviction relief that the trial court abused its discretion by qualifying Fire Inspector Winters as an expert witness.

[*P66] In the case at bar, the undisputed facts at trial were that a fire occurred on a mattress located in the basement that caused damage to the residence. The disputed facts at trial were whether Ayers stared the fire intentionally or accidentally, or, whether the 3-year-old child started the fire.

[*P67] Mr. Lentini's affidavit does not exonerate Ayers or reduce her culpability. In other words, Mr. Lentini does not opine that 1). the fire was of accidental origin; 2). a person could not have

intentionally started the fire; or 3). having only one ignition point rules out that the fire was started intentionally. To answer those questions the jury must necessarily look to the other evidence present by the state during Ayers's jury trial.

[*P68] Ayers's father testified he had previously discussed finances with her, and the fact she had not been contributing to the household financial situation. Mr. Ayers told Ayers that he was planning to move to West Virginia. Jeff Ayers testified that Ayers became more aggressive toward him and began to make threats to the point that he feared for the safety of his family. 1T. at 309-310. Jeff Ayers testified that Ayers threatened to burn the house down. Id. He became so concerned that he called his sister, aunt and the landlord and told them that Ayers was threatening to burn the house down. 1T. at 310. The fire occurred on the day that he left the home for West Virginia. 1T. at 312.

[*P69] Additionally, a neighbor of Ayers, Jason Pandrea, testified he heard Ayers threaten her father with burning the house down if he ever left. 1T. at 339. Pandrea testified that Ayers "meant it." 1T. at 341.

[*P70] The jury viewed the video of Ayers's statement to Fire Inspector Winters and Patrolman Curtis Rucker from the Massillon Police Department. 1T. at 195; 201. State's Exhibit 1. The jury was shown pictures of the scene after the fire had occurred.

[*P71] Inspector Reginald Winters was the state's expert. 1T. at 225. Winters did not find evidence of a cigarette as the cause of the fire. 1T. at 240. Winters identified the State's Photograph Exhibits that he took of the scene of the fire. 1T. at 243; 2T. at 273, 275. Winters was able to exclude cigarettes, natural gas, accelerants, and an electrical cause for the fire. 1T. at 248-249. Winters testified the cause of the fire was incendiary (open flame) and a person or persons started the fire. 1T. at 250.

[*P72] The jury heard Ayers's statement to Massillon Paramedic Richard Annen that she was running upstairs to get her son when the fire started in the basement. 1T. at 186. Ayers initially told Annen that the child started the fire; however, she later claimed that she might have fallen asleep. 1T. at 206-207. Annen looked in the child's mouth and on his face and found no evidence of soot, which would indicate that the child had been near the fire. Id. at 185. He found evidence of soot on Ayers. 1T. at 186-187.

[*P73] At the hospital, Ayers claimed to be in the basement

folding clothes when she noticed her son playing with a lighter on the mattress. 2T. at 261. When asked how she could see a small fire on the bed with the chimney, hot water tank and furnace blocking her view from her position near the clothes dryer she was unable to answer. 2T. at 263.

[*P74] The jury also had audio recordings of calls made by Ayers while she was in jail. Exhibit 2. This Court notes that State's Exhibit 2 is a disk containing 34 phone calls that Ayers made from the jail while she was awaiting trial. However, only "snippets" from two calls were played for the jury and admitted into evidence. 2T. at 397-398. The state never identified the specific portion of the calls that were played for the jury and admitted into evidence.

[*P75] It is not unusual in a case in which highly technical, medical or other specialized evidence is presented for the experts presented by each party to criticize the other's training, methodology, and/or conclusions. When a so-called "battle of experts" takes place during a jury trial such criticisms go to the weight not the admissibility of each expert's opinion. An expert witness is not required to be the best witness on the subject. *Alexander v. Mt. Carmel Med. Ctr., 56 Ohio St.2d 155, 159, 383 N.E.2d 564(1978)*. (Citations omitted.)

[*P76] The majority of Lentini's opinion centers on his belief that Winters is not qualified, or did not use the techniques that Lentini believes are the best practice. When viewed in this light, Lentini's affidavit has only limited probative value. His opinion does not exonerate Ayers or reduce her culpability. He opines only that Fire Inspector Winters's expert testimony was "unreliable, unscientific, and at odds with generally accepted fire investigation methodology." Lentini Affidavit at ¶32. Lentini's opinion does not affect the other testimony and evidence that was presented during Ayers's jury trial.

[*P77] In light of the evidence produced that did not depend upon expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*. The testimony of Lentini could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Ayers was not denied her right to due process and fair trial by counsel's failure to consult an expert witness.

*2). Defense counsel failed to challenge false and unsupported testimony offered by the state's expert & 3). Defense counsel failed to object to testimony that should have been barred under Ohio Crim.R.16(K).*

**[\*P78]** Ayers next argues that she received ineffective assistance of trial counsel because defense counsel did not object or otherwise challenge Fire Inspector Winters's testimony.

**[\*P79]** In her direct appeal, Ayers raised the following Assignment of Error,

> "II. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO REVIEW THE APPROPRIATE DISCOVERY MATERIALS IN PREPARATION FOR TRIAL."

*State v. Ayers, 5th Dist. Stark No. 2013 CA 00034, 2013-Ohio-5402, ¶15.*

**[\*P80]** We further note that counsel's failure to object to Fire Inspector Winters's testimony is evident from the record. The entire Executive Summary prepared by Winters was read into the record during the jury trial. 2T. at 297. Defense counsel acknowledged receiving the report. Id. at 299. The report does not indicate the fire had two points of origin. 2T. at 297. Ayers was indigent. The record contains no evidence that the defense requested the trial court provide funds to consult with an expert witness.

**[\*P81]** In the case at bar, Ayers was represented in her direct appeal by new counsel. Counsel in that appeal could have cited to the testimony and records contained in the court file to support a claim of ineffective assistance of trial counsel in failing to object or challenge Fire Inspector Winters's testimony. To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. *State v. Cole, 2 Ohio St.3d 112, 2 Ohio B. 661, 443 N.E.2d 169 (1982),* syllabus. Ayers has failed in this burden.

**[\*P82]** As Ayers could have raised and fully litigated this issue on direct appeal, this court concludes that the trial court did not err in finding that trial counsel's failure to object or challenge Fire Inspector Winters's testimony is barred by *res judicata*.

*Second Ground for Relief*

**[\*P83]** In her Second Ground for Relief, Ayers claims the prosecutor committed misconduct by failing to disclose Fire Inspector Winters's conclusion that the fire had two point of origin in violation of *Crim.R. 16(K)*.

**[\*P84]** The entire Executive Summary prepared by Winters was read into the record during the jury trial. 2T. at 297. Defense counsel acknowledged receiving the report. Id. at 299. The report does not indicate the fire had two points of origin. 2T. at 297.

**[\*P85]** In the case at bar, Ayers was represented in her direct appeal by new counsel. Counsel in that appeal could have cited to the testimony and records contained in the court file to support a claim of ineffective assistance of trial counsel in failing to object or challenge the state's failure to disclose Fire Inspector Winters's testimony concerning the fire's two points of origin. Ayers was indigent. The record contains no evidence that the defense requested the trial court provide funds to consult with an expert witness.

**[\*P86]** To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. *State v. Cole, 2 Ohio St.3d 112, 2 Ohio B. 661, 443 N.E.2d 169 (1982)*, syllabus. Ayers has failed in this burden.

**[\*P87]** As Ayers could have raised and fully litigated this discovery issue on direct appeal, this Court concludes that the trial court did not err in finding that this issue was barred by *res judicata*.

*Third Ground for Relief*

**[\*P88]** In the Third Ground for Relief set forth in Ayers's petition for post-conviction relief, Ayers contends that her right to compulsory process was violated by the state's discovery violation, i.e. failing to disclose Fire Inspector Winters's conclusion that the fire had two point of origin in violation of *Crim.R. 16(K)*.

**[\*P89]** Defense counsel was in possession of Fire Inspector Winters's Executive Summary, and his draft report prior to trial. Thus, the defense was on notice that the state would present expert testimony prior to trial. Nothing impeded the defense from

obtaining its own expert witness. The proffered testimony of Ayers's attorneys submitted, as Exhibit L to her petition, does not indicate that her trial attorneys would have retained an expert witness had they received Fire Inspector Winters's conclusion that the fire had two points of origin before trial.

[*P90] The entire Executive Summary prepared by Winters was read into the record during the jury trial. 2T. at 297. Defense counsel acknowledged receiving the report. Id. at 299. The report does not indicate the fire had two points of origin. 2T. at 297.

[*P91] In the case at bar, Ayers was represented in her direct appeal by new counsel. Counsel in that appeal could have cited to the testimony and records contained in the court file to support a claim of ineffective assistance of trial counsel in failing to object or challenge Fire Inspector Winters's testimony, or to retain and present its own expert at trial. To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. _State v. Cole, 2 Ohio St.3d 112, 2 Ohio B. 661, 443 N.E.2d 169 (1982)_, syllabus. Ayers has failed in this burden. The issue of whether Ayers was denied compulsory process by the state's failure to disclose Fire Inspector Winters's conclusion that the fire had two points of origin before trial could have been raised in her direct appeal.

[*P92] As Ayers could have raised and fully litigated this issue on direct appeal, this Court concludes that the trial court did not err in finding that this issue was barred by *res judicata*.

*Fourth Ground for Relief*

[*P93] In the Fourth Ground for Relief Ayers asserts a claim of actual innocence.

[*P94] Ayers does not assert a claim of actual innocence based upon DNA evidence as set forth in _R.C. 2953.23(A)(2)_.

[*P95] The United States Supreme Court has ruled that under the United States Constitution, an actual-innocence claim "is not itself a constitutional claim," _Herrera v. Collins, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)_. Accord, _State v. Apanovitch, 155 Ohio St. 3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶26_. In *State v. Willis*, the Court explained,

  In _Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122_

*L.Ed.2d 203 (1993)*, the United States Supreme Court held that "a claim of 'actual innocence' is not itself a constitutional claim." *Id. at 404, 113 S.Ct. 853*. "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Nevertheless, the court was willing to "assume, for the sake of argument in deciding [the] case, that a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." Id.

Interpreting *Herrera, supra*, the First District Court of Appeals held that a petitioner was not entitled to post-conviction relief unless he showed a violation of rights that were constitutional in dimension, which occurred at the time that the petitioner was tried and convicted. *State v. Campbell, 1st Dist. Hamilton No. C-950746, 1997 Ohio App. LEXIS 11, 1997 WL 5182 (Jan. 8, 1997)*. The court stated:

> [N]ewly discovered evidence is, by definition, that "which the defendant could not with reasonable diligence have discovered and produced at trial." *Crim.R. 33(A)(6)*; * * * A claim of actual innocence based on newly discovered evidence will, therefore, not provide substantive grounds for post-conviction relief, because "it does not, standing alone, demonstrate a constitutional violation in the proceedings that actually resulted in the conviction." * * * Campbell's claims of actual innocence were thus not cognizable in a postconviction proceeding. *Citing State v. Powell, 90 Ohio App.3d 260, 264, 629 N.E.2d 13 (1993)*.

> Other Ohio courts have similarly held that a claim of actual innocence does not constitute a substantive ground for post-conviction relief. *State v. Bound, 5th Dist. Guernsey No. 04 CA 8, 2004-Ohio-7097, 2004 WL 2988294*, *State v. Watson, 126 Ohio App.3d 316, 323, 710 N.E.2d 340 (12th Dist. 1998)*, *State v. Loza, 12th Dist. Butler No. CA96-10-214, 1997 Ohio App. LEXIS 4574, 1997 WL 634348 (Oct. 13, 1997)*.

> *6th Dist. Lucas Nos. L-15-1098, L-15-1101, 2016-Ohio-335, 58 N.E.3d 515, ¶15-¶17*.

**[*P96]** We further note that this Court has previously found that

Ayers's convictions are not against the weight or the sufficiency of the evidence. *State v. Ayers, 5th Dist. Stark No. 2013 CA 00034, 2013-Ohio-5402, ¶26.*

**[*P97]** Accordingly, the trial court did not abuse its discretion in denying Ayers's petition based on actual innocence.

*Fifth Ground for Relief*

**[*P98]** In her Fifth Claim for Relief, Ayers argues that but for Fire Inspector Winters's false, unsupported and/or materially misleading testimony she would not have been convicted.

**[*P99]** It is not unusual in a case in which highly technical, medical or other specialized evidence is presented for the experts presented by each party to criticize the other's training, methodology, and/or conclusions. When a so-called "battle of experts" takes place during a jury trial such criticisms go to the weight not the admissibility of each expert's opinion.

**[*P100]** An expert witness is not required to be the best witness on the subject. *Alexander v. Mt. Carmel Med. Ctr., 56 Ohio St.2d 155, 159, 383 N.E.2d 564(1978).* (Citations omitted.) In *State v. Thomas, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017,* the Supreme Court observed,

> Neither special education nor certification is necessary to confer expert status upon a witness. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150; State v. Baston, 85 Ohio St.3d 418, 423, 1999- Ohio 280, 709 N.E.2d 128. Pursuant to Evid.R. 104(A), the trial court determines whether a witness qualifies as an expert, and that determination will be overturned only for an abuse of discretion. State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150; State v. Williams (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444.*

Id. at ¶46 (emphasis added).

**[*P101]** When viewed in this light, Lentini's affidavit has only limited probative value. His opinion does not exonerate Ayers. The majority of Lentini's opinion centers on his belief that Winters is

not qualified, or did not use the techniques that Lentini believes are the best practice. He opines only that Fire Inspector Winters's expert testimony was "unreliable, unscientific, and at odds with generally accepted fire investigation methodology." Lentini Affidavit at ¶32. Lentini's opinion does not affect the other testimony and evidence that was presented during Ayers's jury trial. Mr. Lentini does not opine: 1). the fire was of accidental origin; 2). a person could not have intentionally started the fire; or 3). having only one ignition point rules out that the fire was started intentionally. To answer those questions the jury must necessarily look to the other evidence present by the state during Ayers's jury trial.

[*P102]  In light of the evidence produced that did not depend upon expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*. The testimony of Lentini could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Ayers was not denied her right to due process and fair trial by Fire Inspector Winters's testimony.

[*P103]  We further note that this Court has previous found that Ayers's convictions are not against the weight or the sufficiency of the evidence. *State v. Ayers, 5th Dist. Stark No. 2013 CA 00034, 2013-Ohio-5402, ¶26*.

*Sixth Ground for Relief*

[*P104]  In her Sixth Ground for Relief Ayers recasts her previous arguments as well as asserting due process and cruel and unusual punishment claims under the Ohio Constitution.

[*P105]  The claims under the state constitution fail for the reasons set forth above in our disposition of Ayers's First through Fifth Grounds for Relief.

**Conclusion - Post conviction relief**

[*P106]  In *Harrington v. Richter*, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *[Strickland], at 694, 104 S.Ct. 2052*. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id., at 693, 104 S.Ct. 2052*. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id., at 687, 104 S.Ct. 2052*.

*562 U.S. 86, 104,131 S.Ct. 770, 178 L.Ed.2d 624(2011)*.

**[\*P107]** In light of the evidence produced that did not depend upon expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*.

**[\*P108]** Accordingly, we hold that Ayers has not shown by clear and convincing evidence that a constitutional error occurred during her jury trial, and that no reasonable fact-finder would have found her guilty but for the constitutional error at trial. *R.C. 2953.23(A)(1)(b)*.

**[\*P109]** Therefore, the trial court correctly concluded that it lacked jurisdiction to consider Ayers's untimely petition for post-conviction relief.

**[\*P110]** Ayers's Second Assignment of Error is overruled.
I. & III.

**[\*P111]** In her First Assignment of Error, Ayers maintains that she relied upon her trial attorneys to discover and investigate evidence necessary to prepare her defense at trial and her reliance upon her attorneys unavoidably prevented her from discovering both the flaws in the state's arson theory and her lack of a fair trial.

**[\*P112]** In Ayers's Third Assignment of Error, she claims that the trial court erred by denying her a hearing on her motion for leave because she presented a "prima facie" showing of unavoidable delay under *Crim.R.33(B)*.

**Standard of Appellate Review**.

**[\*P113]** *Crim.R. 33(B)* provides that if a defendant fails to file a motion for a new trial within 120 days of the jury's verdict, he or

she must seek leave from the trial court to file a delayed motion. _Crim.R. 33(B)_ does not give a deadline by which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence. _State v. Bethel,   Ohio St.3d   , 2022-Ohio-783,   N.E.3d   , ¶53, ¶55._

[*P114]  To obtain leave, the defendant must show by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days. _State v. Lordi, 149 Ohio App.3d 627, 2002-Ohio-5517, 778 N.E.2d 605(7th Dist.), ¶ 26-27._ Clear and convincing proof is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. _In re Adoption of Holcomb, 18 Ohio St .3d 361, 368, 18 Ohio B. 419, 481 N.E.2d 613(1985)_; _Lordi, supra, at ¶ 26._

[*P115]  A party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence. _State v. Bethel, 2022-Ohio-783, ¶21._

[*P116]  "To warrant the granting of a motion for a new trial on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result of a new trial if granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence." _State v. Petro, 148 Ohio St. 505, 76 N.E.2d 370(1947)_, syllabus. _Accord, State v. Hawkins, 66 Ohio St.3d 339, 350, 612 N.E.2d 1227(1993)_, syllabus;  _State v. LaMar, 95 Ohio St. 3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶85._ A trial court abuses its discretion in granting a defendant a new trial without first finding by clear and convincing evidence that the defendant was unavoidably prevented from discovering the evidence within the one hundred twenty-day time frame established by _Crim.R. 33(B)_. _State v. Georgekopoulos, 9th Dist. Summit No. C.A. 21952, 2004-Ohio-5197, ¶8._

[*P117]  The decision whether to grant a new trial on grounds of newly discovered evidence falls within the sound discretion of the trial court. _State v. Hawkins, 66 Ohio St.3d at 350, 612 N.E.2d 1227._ We cannot reverse unless there has been a gross abuse of that discretion, and whether that discretion has been abused must

be disclosed from the entire record. *State v. Petro, 148 Ohio St. at 507-508, 76 N.E.2d 370*, quoting *State v. Lopa, 96 Ohio St. 410, 411, 117 N.E. 319, 15 Ohio L. Rep. 191(1917)*.

[*P118] Trial courts should subject *Crim.R. 33(A)(6)* new trial motions to the closest scrutiny:

> Applications for new trials on the ground of newly discovered evidence are not, however, favored by the courts, for the reason that the moving party has generally had ample opportunity to prepare his case carefully and to secure all of the evidence before the trial. Such applications, whether in a court of law or in a court of equity, are entertained with reluctance and granted with caution, not only because of the danger of perjury, but also because of the manifest injustice in allowing a party to allege that which may be the consequence of his own neglect in order to defeat an adverse verdict. In order to prevent, as far as possible, the fraud and imposition which defeated parties may be tempted to practice as a last resort to escape the consequence of an adverse verdict, an application setting up the discovery of new evidence should always be subjected to the closest scrutiny by the court. The applicant is required to rebut the presumption that the verdict is correct and that there has been a lack of due diligence and to establish other facts essential to warrant the granting of a new trial upon the ground of newly discovered evidence. The rule to be deduced from the cases is that where newly discovered evidence is of such conclusive nature, or of such decisive or preponderating character, that it would with reasonable certainty have changed the verdict or materially reduced the recovery, a new trial should be granted if it is satisfactorily shown why the evidence was not discovered and produced at the time of the trial.

*Taylor v. Ross, 150 Ohio St. 448, 450-51, 83 N.E.2d 222, 224 (1948)*, quoting 39 American Jurisprudence, 163, Section 156; accord *Domanski v. Woda, 132 Ohio St. 208, 6 N.E.2d 601 (1937)*.

[*P119] "The question of whether to decide a motion on the supporting evidence filed with the motion or to hold an evidentiary hearing is within the discretion of the trial court." *United States v. O'Dell, 805 F.2d 637, 643 (6th Cir. 1986)*; *State v. Sutton, 2016-Ohio-7612, 73 N.E.3d 981, ¶ 13 (8th Dist.)*.

**Issue for Appellate Review:** *Whether the trial court abused its discretion in denying Ayers's motion for leave to file a motion for a new trial filed beyond 120 days of the jury's verdict without a hearing.*

**[\*P120]** For the trial court to have jurisdiction to entertain the ineffective assistance of trial counsel claim alleged in the motion for leave to file a motion for a new trial, Ayers first had to establish that she was "unavoidably prevented from discovery of the facts" on which she relies.

**[\*P121]** We find it unnecessary to reach this issue. Assuming arguendo that Ayers would be entitled to a hearing on her motion for leave to file a motion for a new trial, the hearing would be an exercise in futility. We have concluded in our discussion of Ayers's petition for post-conviction relief, Assignment of Error 2, supra, that, in light of the evidence produced at Ayers's jury trial that did not depend upon expert testimony, and the entire record in this case, Ayers has not shown a constitutional error occurred during her jury trial and that no reasonable fact-finder would have found her guilty but for the constitutional error at trial. *R.C. 2953.23(A)(1)(b)*.

**[\*P122]** Because Ayers's failed to meet her burden under *R.C. 2953.23(A)(1)(b)*, Ayers's motion for a new trial would be without merit, therefore rendering moot a hearing on her motion for leave to file a motion for a new trial. *State v. Bethel,  Ohio St.3d , 2022-Ohio-783,  N.E.3d , ¶59 - ¶60*. Therefore, the trial court did not abuse its discretion in overruling Ayers's motion for leave to file a motion for a new trial without holding an evidentiary hearing on the motion.

**[\*P123]** Ayers's First and Third Assignments of Error are overruled.

**[\*P124]** For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.

*State v. Ayers,* 167 Ohio St.3d 1528, 2022-Ohio-3322,  195 N.E.3d 167. **(Entry, Exhibit**

**55)**

Ayers has not rebutted the state appellate court's factual findings by clear and

convincing evidence and in §2254 habeas review, so this Court must presume the state

appellate court's factual findings are correct. *See* 28 U.S.C. §2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate,* 267 F.3d 524, 530 (6th Cir. 2001).

This Court must also defer to the state appellate court's interpretations of Ohio law. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)(*per curiam*); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

Likewise, the Court must defer to the state appellate court's decision to deny Ayers' Sixth Amendment right to effective trial counsel claims because Ayers has not established that the state appellate court's decision is contrary to, or an unreasonable application of clearly established Supreme Court precedent pertaining to the Sixth Amendment right to effective trial counsel, including *Strickland v. Washington,* 466 U.S. 668 (1984) and its progeny.

The ineffective assistance of trial counsel review standard is a very general review standard, which entitles a state court decision even greater leeway in federal habeas review. *See Renico v. Lett,* 559 U.S. 766, 768 (2010); *Davis v. Carpenter,* 798 F.3d 468, 473 (6th Cir. 2015).

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id* at 691. "In assessing the reasonableness of an attorney's

investigation … a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

Deciding which witnesses to call is also a strategic matter. *Boykin v. Webb*, 541 F.3d 638, 649 (6th Cir. 2008). Accordingly, courts owe counsel a wide degree of deference to decide which witnesses to present in making their case. "The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess." *Id*.

For example, when the state's DNA expert is subject to cross-examination and any favorable benefit of a defense DNA expert is purely speculative, the decision not to call a DNA expert should be "relegated to trial strategy, which is beyond the realm of criticism for defective performance." *Holland v. Rivard*, 9 F.Supp.3d 773, 792 (E.D. Mich. 2014).

Similarly, Ohio' Federal District Courts have held that that "a defense attorney is not required to hire an eyewitness identification expert and may instead rely on cross examination and closing arguments to impeach eyewitness testimony." *Jackson v. Bradshaw*, No. 2:03-cv-983, 2007 U.S. Dist. LEXIS 75523, at *53 (S.D. Ohio Sept. 28, 2007); *affirmed* 681 F.3d 753 (6th Cir. 2012), *citing Madrigal v. Bagley*, 276 F.Supp.2d 744, 791 (N.D. Ohio 2003).

Furthermore, an attorney's failure to make a frivolous or meritless argument or motion does not constitute ineffective assistance of counsel. *Rupert v. Berghuis*, 619 F.Supp.2d 363, 371 (6th Cir. 2008).

In this case, the Court cannot not second-guess Ayers' trial attorney's strategic decisions to not retain an arson expert and not present an arson expert as a defense witness. Although Ayers raises her claim as a Sixth Amendment right to effective trial counsel claim, her alleged predicates arguments are actually asking this Court to re-weigh witness credibility and evidence, and to substitute its own judgment for that of the state courts. This Court is prohibited from doing either of those things in habeas review.

A "federal court reviewing a petition for a writ of habeas corpus has no authority to re-weigh the credibility of witnesses at trial or to review conflicts in the evidence." *Lowery v. Ohio*, No. 1:14-cv-2523, 2015 U.S. Dist. LEXIS 54064 at *24, 2015 WL 1885456 (N.D. Ohio Apr. 24, 2015), *citing Marshall v. Lonberger*, 459 U.S. 422 (1983); *Brown v. Hudson*, No. 5:08-cv-599, 2008 U.S. Dist. LEXIS 108559, 2008 WL 5869070 at *2-4 (N.D. Ohio Jan. 21, 2008). When a petition asks "this Court to consider the credibility of the witnesses, and to resolve conflicts in the evidence presented, [those] claims go to the manifest weight of the evidence and are not cognizable in federal habeas corpus." *Id*. *Also see Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986).

"Under §2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The habeas court must not overlook arguments that would otherwise justify the state court's result and "a reviewing court must be careful not to substitute its own judgment for that of the state court by equating the more stringent standard of 'objectively unreasonable' with the more lax standard of 'clear error.'" *Id*.;

*Bryan v. Bobby*, 843 F.3d 1099, 1106 (6th Cir. 2016), *quoting Braxton v. Gansheimer*, 561 F.3d 453, 458 (6th Cir. 2009), *in turn citing Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008).

There is reasonable support in the record for the state appellate court's findings that "Mr. Lentini's affidavit does not exonerate Ayers or reduce her culpability," and that the evidence produced at trial that did not depend on expert testimony was constitutionally sufficient to convict Ayers. **(Entry, Exhibit 55) (Opinion, Exhibit 24)**

This Court cannot reweigh witness credibility and alleged conflicts in the evidence, and Ayers' trial attorney did not perform deficiently and actually prejudice Ayers by strategically deciding not to retain an expert, and not drawing excessive attention to the State's expert witness. Ayers' trial counsel was also not constitutionally ineffective for failing to raise a meritless claim.

Any "single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to be part of a trial strategy or tactical choice." *Hodge v. Haeberlin*, 579 F.3d 627, 648 (6th Cir. 2009), *quoting Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006).

Even without the State's expert's testimony, the totality of the evidence was constitutionally sufficient to convict Ayers, her trial counsel's strategic decision not to object to the State Expert's testimony did not default the entire case to the State, and it did not render her entire trial fundamentally unfair.

Based on the foregoing, the Court cannot grant Ayers habeas relief on her Sixth Amendment right to effective trial counsel claim, and the Court must deny and dismiss Ayers' first relief ground with prejudice.

**Ground Two**

Ayers' second relief ground is:

> **GROUND TWO:** Prosecutorial misconduct in violation of the Fifth and Fourteenth Amendments.
>
> **Supporting Facts:** The State deprived Petitioner of a fair trial, by in violation of Ohio Crim. R. 16(K), failing to disclose the complete expert opinions of Massillon Fire Inspector Reginald Winters, and by knowingly soliciting previously undisclosed "expert" opinions from Inspector Winters. The State should have known that Reginald Winters' testimony regarding the origin of the fire was false, unsupported, and/or unqualified. The State committed misconduct by soliciting this testimony and leaving it uncorrected on the record. The State's misconduct prejudiced Petitioner, and deprived Petitioner of a fundamentally unfair trial.

**(Amended Petition, Doc. No. 14 PageID 96-97)(Brief, Doc. No. 14-1 PageID 129-130)**

Ayers is not entitled to habeas relief on her second relief ground and the Court must deny and dismiss Ayers' second relief ground with prejudice for several reasons. Ayers' alleged Ohio Crim.R. 16(K) violation is not a cognizable ground for federal habeas relief. Ayers did not properly exhaust a Sixth Amendment prosecutorial misconduct claim in state court, Ayers inexcusably procedurally defaulted her Sixth Amendment prosecutorial misconduct claim, and she forfeited federal habeas review and relief.

Additionally, the state appellate court reasonably denied Ayers' Sixth Amendment prosecutorial misconduct claim on collateral appeal, that decision is not contrary to or an unreasonable application of clearly established Supreme Court

precedent pertaining to the Sixth Amendment right, prosecutorial misconduct, and federal constitutional due process, and that decision is entitled to AEDPA deference in this proceeding. Consequently, Ayers' Sixth Amendment prosecutorial misconduct claim lacks merit, and the court must also deny and dismiss Ayers' second relief ground with prejudice on the merits.

### Ayers' alleged Ohio Crim.R. 16(K) Violation is Not a Cognizable Ground for Federal Habeas Relief

Federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991) *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and *citing Pulley v. Harris*, 465 U.S. 37, 41 (1984). Consequently, Ayers' alleged Ohio Crim.R. 16(K) violation is not a cognizable ground for federal habeas relief, and this Court cannot grant Ayers habeas relief on her Ohio Crim.R. 16(K) violation claim.

### Ayers Did Not Exhaust her Sixth Amendment Claim, She Inexcusably Procedurally Default her Second Relief Ground, & Forfeited Habeas Review & Relief

Ayers did not properly exhaust an identical Sixth Amendment prosecutorial misconduct claim in state court, Ayers inexcusably procedurally defaulted her Sixth Amendment prosecutorial misconduct claim, and she forfeited federal habeas review and relief.

Ayers did not raise an identical Sixth Amendment prosecutorial misconduct claim on direct appeal to the state appellate court **(Appellant's Brief, Exhibit 22)**, she did not timely file a direct in the Ohio Supreme Court and her filing deadline expired January 23, 2014. *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i); Ohio S.Ct.Prac.R. 3.03(A)(1).

Accordingly, when Ayers raised her Sixth Amendment prosecutorial misconduct claim in collateral post-conviction relief proceedings, the state appellate court denied

Ayers' claim because her post-conviction relief petition was untimely and Ohio's *res judicata rule* barred her claim. This Court must presume in habeas review that the Ohio Supreme Court's subsequent decision **(Entry, Exhibit 55)** that was silent as to rationale rests on the same procedural ground. *See Ylst v. Nunnemaker*, 501 U.S. 797 (1991); *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996).

Failing to raise claims that are discoverable from the record on direct appeal to the state appellate court and the Ohio Supreme Court are both recognized procedural defaults that waive and preclude habeas review and relief. Similarly, an Ohio court's *res judicata* dismissal is also a well-established procedural default that waives federal habeas review and relief.

Ayers has not established cause and actual prejudice, or a fundamental miscarriage of justice and actual innocence to excuse her failure to fairly present and properly exhaust her Sixth Amendment right to effective trial counsel claims in the Ohio courts and to excuse her state court procedural defaults.

Ayers cannot rely on ineffective assistance of counsel to excuse her state court procedural defaults because her Sixth Amendment right to trial and appellate counsel claims are themselves procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011). In addition to procedurally defaulting her ineffective assistance of trial counsel claim, Ayers did not file an Ohio App.R. 26(B) application, and her filing deadline expired Monday, March 10, 2014. *See* Ohio App.R. 26(B)(1).

Ayers also cannot rely on ineffective assistance of counsel as cause for excuse because she did not have a constitutional right to counsel in Ohio Supreme Court, Ohio

App. R. 26(B) application, or post-conviction relief proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010); *Sowell v. Collins*, 557 F.Supp.2d 843, 919 (S.D. Ohio 2008); *State v. Buell*, 70 Ohio St.3d 1211, 1994-Ohio-475, 639 N.E.2d 110.

Similarly, the fact that Ayers was incarcerated and acting *pro se* does not constitute cause to excuse her procedural default absent other extraordinary circumstances. *See Bonilla v. Hurley*, 370 F.3d 494 (6th Cir. 2004).

Since Ayers has not established cause, this Court does not have to consider the actual prejudice prong. Even so, Ayers has not established actual prejudice or more specifically, a federal constitutional error and a reasonable probability that, but for the established federal constitutional error, the result of Ayers' criminal trial, sentence, or appeal would have been different.

Likewise, Ayers has not proffered new and reliable evidence that is sufficient to meet the demanding *Schlup v. Delo*, 513 U.S. 298 (1995) actual innocence standard. More specifically, Ayers has not shown that no reasonable juror would have convicted her due to new and reliable evidence, and Ayers has not established actual innocence that would excuse her state court procedural defaults.

Based on the foregoing, the Court must dismiss Ayers' second relief ground with prejudice because Ayers inexcusably procedurally defaulted the claim, and Ayers waived federal habeas review and relief.

**The State Appellate Court's Determinations Are Entitled to AEDPA Deference, and Ayers' Sixth Amendment Claim and Second Relief Ground Lack Merit**

"Nevertheless, this Court may deny relief on the merits, notwithstanding a failure to exhaust where appropriate. See 28 U.S.C §2254(b)(2)." *Hanna v. Ishee*, 694 F.3d 596, 610 (6th Cir. 2012). Whether this Court is considering if Ayers has established a federal due process violation to excuse her state court procedural defaults, or considering her alleged prosecutorial misconduct claim on the merits, the analysis and results are the same, and the Court must deny Ayers federal habeas relief.

The state appellate court reasonably determined on direct appeal:

> [*P16] In the first assignment of error, Appellant challenges her convictions as against the manifest weight and sufficiency of the evidence.
>
> [*P17] The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins, 78 Ohio St. 3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus*. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus*, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
>
> [*P18] In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra, 78 Ohio St.3d at 387*. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

[*P19]  Appellant was convicted of aggravated arson, in violation of *R.C. 2909.02(A)(2)*, which reads:

> [*P20]  "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
>
> [*P21]  "(1) Create a substantial risk of serious physical harm to any person other than the offender;
>
> [*P22]  "(2) [**7] Cause physical harm to any occupied structure;
>
> [*P23]  "(3) ***"

[*P24]  Appellant was also convicted of endangering children, in violation of *R.C. 2919.22(A)*, which reads,

> [*P25]  "(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body."

[*P26]  The evidence introduced at trial demonstrates the fire was started with an open flame at opposite ends of a mattress. Appellant gave inconsistent statements regarding her actions, which contain unexplained physical impossibilities. In addition, several witnesses testified at trial as to Appellant's prior threats to burn the residence down in retaliation for her father's moving out of the home. The evidence demonstrates Appellant's son did not have smoke exposure or evidence of soot on his person, whereas Appellant did have evidence of soot on her person.

[*P27]  Based on the above, we do not find the jury lost its way and viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt.

[*P28]  The first assignment of is overruled.

*State v. Ayers*, 5th Dist. Stark No. 2013CA00034, 2013-Ohio-5402. **(Opinion, Exhibit 26)**

"Given the interrelationship between insufficiency of the evidence and manifest weight of the evidence claims, a state court's finding – that the verdict is not against the manifest weight of the evidence – also implicitly holds that there was sufficient evidence for the verdict." *Arnold v. Warden, Lebanon Correctional Institution*, 832 F.Supp.2d 853 (S.D. Ohio 2011), *citing Nash v. Eberlin*, 258 Fed. Appx. 761 (6th Cir. Dec. 14, 2007)(unreported). *Also see Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The state appellate court also reasonably determined on collateral appeal:

[*P40] For ease of discussion, we will address Ayers's Assignments of Error out of sequence.

[*P41] In her Second Assignment of Error, Ayers argues that the trial court erred in overruled her untimely petition for post-conviction relief without a hearing.

**Petition for Post-Conviction Relief**

[*P42] <u>R.C. 2953.21(A)</u> states, in part, as follows: "(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief".

[*P43] A post-conviction proceeding is a collateral civil attack on a criminal conviction. <u>State v. Calhoun, 86 Ohio St.3d 279, 281, 1999- Ohio 102, 714 N.E.2d 905 (1999)</u>; <u>State v. Phillips, 9th Dist. No. 20692, 2002-Ohio-823</u>. In order to obtain post-conviction relief, a petitioner must show that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the

United States [.]" *R.C. 2953.21*; *State v. Watson, 126 Ohio App.3d 316, 323, 710 N.E.2d 340 (12th Dist. 1998)*.

*Right to evidentiary hearing is not automatic*

[*P44] Under *R.C. 2953.21*, a petitioner seeking post-conviction relief is not automatically entitled to an evidentiary hearing. *Calhoun, 86 Ohio St.3d at 282, 714 N.E.2d 905, 1999-Ohio-102*. Significantly, the Ohio Supreme Court has held that the proper basis for dismissing a petition for post-conviction relief without holding an evidentiary hearing include: 1) the failure of the petitioner to set forth sufficient operative facts to establish substantive grounds for relief, and 2) the operation of res judicata to bar the constitutional claims raised in the petition. *Calhoun, 86 Ohio St.3d at paragraph two of the syllabus*; *State v. Lentz, 70 Ohio St.3d 527, 530, 1994- Ohio 532, 639 N.E.2d 784(1994)*.

[*P45] In order for an indigent petitioner to be entitled to an evidentiary hearing in a post-conviction relief proceeding on a claim that he was denied effective assistance of counsel, the two-part analysis set forth in *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)* is to be applied. *Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203(1985)*; *State v. Lytle, 48 Ohio St. 2d 391, 358 N.E.2d 623 (1976)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*; *State v. Cole, supra, 2 Ohio St.3d at 114, 443 N.E.2d 169, 2 Ohio B. 661*. The petitioner must therefore prove that: 1). counsel's performance fell below an objective standard of reasonable representation; and 2). there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id.

[*P46] *R.C. 2953.21* does not expressly mandate a hearing for every post-conviction relief petition; therefore, a hearing is not automatically required. In determining whether a hearing is required, the Ohio Supreme Court in *State v. Jackson, 64 Ohio St.2d 107, 413 N.E.2d 819(1980)*, stated the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavits, and the files and records of the case. As the Supreme Court further explained in *Jackson*, "[b]road assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction relief petitions." *Id. at 111, 413 N.E.2d 819*. Rather, a petitioner must submit evidentiary documents containing sufficient operative facts to support his claim before an evidentiary hearing will be granted. Accordingly, "a trial court properly denies a defendant's petition for post-conviction relief without holding an

evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun, 86 Ohio St.3d at paragraph two of the syllabus*; see *R.C. 2953.21(C)*.

[*P47] Furthermore, before a hearing is granted in proceedings for post-conviction relief upon a claim of ineffective assistance of trial counsel, the petitioner bears the initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. *Calhoun, 86 Ohio St.3d at 289, 714 N.E.2d 905, 1999-Ohio-102*; *State v. Jackson, 64 Ohio St.2d 107, 413 N.E.2d 819(1980)*, *syllabus; see, also Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693(1984)*.

[*P48] "In determining how to assess the credibility of supporting affidavits in post-conviction relief proceedings, the Supreme Court adopted the reasoning of the First Appellate District in *State v. Moore, 99 Ohio App.3d 748, 651 N.E.2d 1319(1st Dist. 1994)*, which had looked to federal habeas corpus decisions for guidance. *Id. at 753-754, 651 N.E.2d at 1322-1323*. The Supreme Court ultimately determined that the trial court should consider all relevant factors in assessing the credibility of affidavit testimony in 'so-called paper hearings,' including the following: '(1) whether the judge viewing the post-conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.' *Calhoun, 86 Ohio St.3d at 285, 714 N.E.2d at 911-912, citing Moore, 99 Ohio App.3d at 754-756, 651 N.E.2d at 1323-1324*." *State v. Kinley, 136 Ohio App.3d 1, 13-14, 735 N.E.2d 921, 930-31(2nd Dist. 1999)*. A trial court that discounts the credibility of sworn affidavits must include an explanation of its basis for doing so in its findings of fact and conclusions of law in order that meaningful appellate review may occur. *Id. at 285, 714 N.E.2d at 911-912*.

*Res Judicata*

**[\*P49]** Another proper basis upon which to deny a petition for post-conviction relief without holding an evidentiary hearing is res judicata. *State v. Lentz, 70 Ohio St.3d 527, 530, 1994-Ohio-532, 639 N.E.2d 784*; *State v. Perry, 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104(1967)*; *State v. Phillips, 9th Dist. No. 20692, 2002-Ohio-823*. Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. *State v. Szefcyk, 77 Ohio St.3d 93, 1996- Ohio 337, 671 N.E.2d 233(1996), syllabus, approving and following State v. Perry, 10 Ohio St.2d 175, 226 N.E.2d 104(1967), paragraph nine of the syllabus.* It is well settled that, "pursuant to res judicata, a defendant cannot raise an issue in a [petition] for post-conviction relief if he or she could have raised the issue on direct appeal." *State v. Reynolds, 79 Ohio St.3d 158, 161, 1997-Ohio 304, 679 N.E.2d 1131(1997).*

**[\*P50]** Similarly, regarding claims of ineffective assistance of trial counsel in post-conviction proceedings, the Ohio Supreme Court has stated that where a defendant, represented by different counsel on direct appeal, "fails to raise [in the direct appeal] the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for post-conviction relief." *State v. Cole, 2 Ohio St.3d 112, 2 Ohio B. 661, 443 N.E.2d 169(1982)*, syllabus; *see, also, Lentz, 70 Ohio St.3d at 530, 1994-Ohio-532, 639 N.E.2d 784*; *State v. Phillips, supra.*

*Time requirements for filing*

**[\*P51]** The pertinent jurisdictional time requirements for a post-conviction petition at the time of Ayers's direct appeal were set forth in *R.C. 2953.21(A)(2)* as follows,

> A petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication * * *.

[*P52]  In order for a court to recognize an untimely post-conviction petition, **both of the following requirements must apply** (_R.C. 2953.23(A)(1)_):

> (a) Either the petitioner shows that the petitioner was _unavoidably prevented_ from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in _division (A)(2) of section 2953.21 of the Revised Code_ or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

> (b) The petitioner shows by clear and convincing evidence that, _but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted_ or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence. (Emphasis added).

[*P53]  In the case at bar, Ayers agrees that her petition was filed outside the 180-day time limit in effect at the time of her conviction.

## Standard of Review - Untimely petition for Post-Conviction Relief

[*P54]  A post-conviction proceeding is a collateral civil attack on the judgment, _State v. Calhoun, 86 Ohio St.3d 279, 281, 1999-Ohio 102, 714 N.E.2d 905 (1999)_, and the "right to file a post-conviction petition is a statutory right, not a constitutional right," _State v. Broom, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 28_. A post-conviction petitioner therefore "receives no more rights than those granted by the statute." _Calhoun at 281, 714 N.E.2d 905_. This means that any right to post-conviction relief must arise from the statutory scheme enacted by the General Assembly.

[*P55]  That includes the right to have one's claim heard at all: _R.C. 2953.23(A)_ provides that "a court _may not entertain_ a petition filed after the expiration of the period prescribed in [ _R.C. 2953.21(A)_] or a second petition or successive petitions for similar relief on behalf of a petitioner _unless_" one of the exceptions in _R.C._

*2953.23(A)* applies. (Emphasis added.) *State v. Apanovitch, 155 Ohio St. 3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 36.* Therefore, a petitioner's failure to satisfy *R.C. 2953.23(A)* deprives a trial court of jurisdiction to adjudicate the merits of an untimely or successive post-conviction petition. *Apanovitch at ¶ 36.*

[*P56] Accordingly, given the substance of Ayers's allegations, for the trial court to have subject-matter jurisdiction to consider the petition, Ayers had to show (1) that she was "unavoidably prevented from discovery of the facts" upon which her claim relies *and* (2) by clear and convincing evidence, that no reasonable fact-finder would have found her guilty or eligible for the death sentence but for the constitutional error at trial. *R.C. 2953.23(A)(1).* See *State v. Apanovitch, 155 Ohio St. 3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 36. State v. Bethel,  Ohio St.3d , 2022-Ohio-783,  N.E.3d , ¶20.*

[*P57] We review de novo whether the trial court had subject-matter jurisdiction to entertain Ayers's petition. *Apanovitch at ¶ 24*; *Bethel at .¶20.*

[*P58] We must first decide does the post-conviction petition satisfy an exception provided in *R.C. 2953.23(A). State v. Apanovitch, 155 Ohio St. 3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 23.*

*"[U]navoidably prevented from discovery of the facts"*

[*P59] For the trial court to have jurisdiction to entertain the ineffective assistance of trial counsel claim alleged in the post-conviction petition, Ayers first had to establish that she was "unavoidably prevented from discovery of the facts" on which she relies. *R.C. 2953.23(A)(1)(a).* To meet this standard, courts in Ohio have previously held that a defendant ordinarily must show that he was unaware of the evidence he is relying on and that he could not have discovered the evidence by exercising reasonable diligence. *Bethel, at ¶21 citing State v. Harrison, 8th Dist. Cuyahoga No. 105909, 2018-Ohio-1396, 2018 WL 1778661, ¶ 6.*

[*P60] We find it unnecessary to reach this issue because even if we assume arguendo that Ayers was "unavoidably prevented from discovery of the facts" on which she relies, Ayers must also show by clear and convincing evidence that no reasonable fact-finder would have found her guilty but for constitutional error at trial. *Apanovitch, 155 Ohio St.3d at ¶26.*

*No reasonable fact-finder would have found Ayers guilty but for the constitutional error at trial*

**[*P61]** Ayers's post-conviction petition faces an additional jurisdictional hurdle: under *R.C. 2953.23(A)(1)(b)*. Therefore, we must first decide whether a constitutional error occurred during Ayers's jury trial. If a constitutional error occurred, we must then find by clear and convincing evidence that no reasonable fact-finder would have found her guilty but for constitutional error at trial. This question goes to the heart of the second prong of the *Strickland-Brady* test for claims of ineffective assistance of counsel, which requires Ayers to show that is there is a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*. In *Harrington v. Richter*, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> A reasonable probability is a probability sufficient to undermine confidence in the outcome." *[Strickland], at 694, 104 S.Ct. 2052*. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id., at 693, 104 S.Ct. 2052*. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id., at 687, 104 S.Ct. 2052*.

*562 U.S. 86, 104, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)*.

**Substantive Claims**

[***]

**[*P64]** At trial Fire Inspector Winters testified concerning his knowledge and experience as follows,

> Q. How long have you been a Fire Inspector/Fire Investigator?
>
> A. I've been - - five years with the City of Massillon, been on the fire department for ten.
>
> Q. And prior to your employment at the City of Massillon, were you employed elsewhere as a firefighter?
>
> A. Yes, sir, fifteen years with the City of Orrville.

Q. Now, if you would, could you tell these ladies and gentlemen what a fire inspector's duties are?

A. Fire inspector's duties are we do public safety. We also go through commercial buildings ensuring safety, making sure the fire extinguishers, exit lights are lit, and we also give approval for new buildings and stuff like that. We work with the building department. We also are in charge of fireworks, certifying them and stuff like that, to inspect the site to make sure it's safe for the community.

Q. How about the other part of your job description that you previously entail detailed that you had, would you explain that to these folks?

A. As a Fire Investigator, my job is to come in and determine origin and cause. The cause being what happened, the origin is where the fire started at.

Q. Did you have to undergo specialized training in order to hold a position as that of which you just described?

A. Yes, sir.

Q. What type of training, first of all, did you have to undergo?

A. First of all, I had to get my certified Fire Inspector. You have to be a certified Fire Inspector. And then from there you have to - - it's two stages. You have a basic Fire Investigator and then you have an advanced Fire Inspector course you have to take.

Q. Let's talk about the certified Fire Inspector training first. What does that entail?

A. That entails looking at multiple burn scenes, learning the scientific methodology of how different things burn as far as oils, gas, electrical fires, the synthetic fires as far as people using open flames to fires, candles, paper. And we look at the different patterns the fire makes, the different charring of wood and stuff like that to make our determination whether - - what caused the fire, whether it was mechanical, accidental, or incendiary.

Q. Do you have to go to classes for that?

A. Yes, sir.

Q. And how long were those classes?

A. My first class as a basic investigator, it was 32 hours. The second part of advanced was - - it was 40 hours.

Q. Did you successfully complete all those classes?

A. Yes, sir.

Q. And then at the end of those classes, do you have to take a test?

A. Yes, sir.

Q. And did you successfully pass all those tests?

A. Yes, sir.

Q. So, you are now a certified arson Investigator?

A. Yes.

Q. And that's within the State of Ohio?

A. Yes, sir.

Q. Once you complete that training, do you have to continue to update your education?

A. Yes, sir.

Q. What do you have to do?

A. We have to - - well, we take like different seminars. One seminar I attend is the International Firefighters Association of Arson Investigators in Columbus. It's an annual Fire Investigator course weeklong. We have to maintain 32 hours in a three-year period of continuing education.

Q. And as you sit here today, are you current in all your requirements to be a certified arson investigator?

A. Yes, sir.

Q. You indicated that you've held that position with the Massillon Police [sic] Department for five years. Could you estimate the number of fires you've investigated within those five years?

A. I would say approximately 30.

Q. And have you testified before in the courts of Stark County as an expert in the cause and origin of fires?

A. Yes, sir.

Q. And has that testimony been accepted by the courts?

A. Yes, sir.

1T. at 225-229.

[*P65]  In _State v. Thomas, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017_, the Supreme Court observed,

> Neither special education nor certification is necessary to confer expert status upon a witness. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." _State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150_; _State v. Baston, 85 Ohio St.3d 418, 423, 1999- Ohio 280, 709 N.E.2d 128_. _Pursuant to Evid.R. 104(A), the trial court determines whether a witness qualifies as an expert,_ and that determination will be overturned only for an abuse of discretion. _State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150_; _State v. Williams (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444_.

Id. at ¶46 (emphasis added). Ayers does not argue in her petition for post-conviction relief that the trial court abused its discretion by qualifying Fire Inspector Winters as an expert witness.

[*P66]  In the case at bar, the undisputed facts at trial were that a fire occurred on a mattress located in the basement that caused damage to the residence. The disputed facts at trial were whether

Ayers stared the fire intentionally or accidentally, or, whether the 3-year-old child started the fire.

[*P67] Mr. Lentini's affidavit does not exonerate Ayers or reduce her culpability. In other words, Mr. Lentini does not opine that 1). the fire was of accidental origin; 2). a person could not have intentionally started the fire; or 3). having only one ignition point rules out that the fire was started intentionally. To answer those questions the jury must necessarily look to the other evidence present by the state during Ayers's jury trial.

[*P68] Ayers's father testified he had previously discussed finances with her, and the fact she had not been contributing to the household financial situation. Mr. Ayers told Ayers that he was planning to move to West Virginia. Jeff Ayers testified that Ayers became more aggressive toward him and began to make threats to the point that he feared for the safety of his family. 1T. at 309-310. Jeff Ayers testified that Ayers threatened to burn the house down. Id. He became so concerned that he called his sister, aunt and landlord and told them that Ayers was threatening to burn the house down. 1T. at 310. The fire occurred on the day that he left the home for West Virginia. 1T. at 312.

[*P69] Additionally, a neighbor of Ayers, Jason Pandrea, testified he heard Ayers threaten her father with burning the house down if he ever left. 1T. at 339. Pandrea testified that Ayers "meant it." 1T. at 341.

[*P70] The jury viewed the video of Ayers's statement to Fire Inspector Winters and Patrolman Curtis Rucker from the Massillon Police Department. 1T. at 195; 201. State's Exhibit 1. The jury was shown pictures of the scene after the fire had occurred.

[*P71] Inspector Reginald Winters was the state's expert. 1T. at 225. Winters did not find evidence of a cigarette as the cause of the fire. 1T. at 240. Winters identified the State's Photograph Exhibits that he took of the scene of the fire. 1T. at 243; 2T. at 273, 275. Winters was able to exclude cigarettes, natural gas, accelerants, and an electrical cause for the fire. 1T. at 248-249. Winters testified the cause of the fire was incendiary (open flame) and a person or persons started the fire. 1T. at 250.

[*P72] The jury heard Ayers's statement to Massillon Paramedic Richard Annen that she was running upstairs to get her son when the fire started in the basement. 1T. at 186. Ayers initially told Annen that the child started the fire; however, she later claimed

that she might have fallen asleep. 1T. at 206-207. Annen looked in the child's mouth and on his face and found no evidence of soot, which would indicate that the child had been near the fire. Id. at 185. He found evidence of soot on Ayers. 1T. at 186-187.

[*P73] At the hospital, Ayers claimed to be in the basement folding clothes when she noticed her son playing with a lighter on the mattress. 2T. at 261. When asked how she could see a small fire on the bed with the chimney, hot water tank and furnace blocking her view from her position near the clothes dryer she was unable to answer. 2T. at 263.

[*P74] The jury also had audio recordings of calls made by Ayers while she was in jail. Exhibit 2. This Court notes that State's Exhibit 2 is a disk containing 34 phone calls that Ayers made from the jail while she was awaiting trial. However, only "snippets" from two calls were played for the jury and admitted into evidence. 2T. at 397-398. The state never identified the specific portion of the calls that were played for the jury and admitted into evidence.

[*P75] It is not unusual in a case in which highly technical, medical or other specialized evidence is presented for the experts presented by each party to criticize the other's training, methodology, and/or conclusions. When a so-called "battle of experts" takes place during a jury trial such criticisms go to the weight not the admissibility of each expert's opinion. An expert witness is not required to be the best witness on the subject. _Alexander v. Mt. Carmel Med. Ctr., 56 Ohio St.2d 155, 159, 383 N.E.2d 564(1978)._ (Citations omitted.)

[*P76] The majority of Lentini's opinion centers on his belief that Winters is not qualified, or did not use the techniques that Lentini believes are the best practice. When viewed in this light, Lentini's affidavit has only limited probative value. His opinion does not exonerate Ayers or reduce her culpability. He opines only that Fire Inspector Winters's expert testimony was "unreliable, unscientific, and at odds with generally accepted fire investigation methodology." Lentini Affidavit at ¶32. Lentini's opinion does not affect the other testimony and evidence that was presented during Ayers's jury trial.

[*P77] In light of the evidence produced that did not depend upon expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. _Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,_

*80 L.Ed.2d 674(1984)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*. The testimony of Lentini could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Ayers was not denied her right to due process and fair trial by counsel's failure to consult an expert witness.

[***]

*Second Ground for Relief*

[*P83] In her Second Ground for Relief, Ayers claims the prosecutor committed misconduct by failing to disclose Fire Inspector Winters's conclusion that the fire had two point of origin in violation of *Crim.R. 16(K)*.

[*P84] The entire Executive Summary prepared by Winters was read into the record during the jury trial. 2T. at 297. Defense counsel acknowledged receiving the report. Id. at 299. The report does not indicate the fire had two points of origin. 2T. at 297.

[*P85] In the case at bar, Ayers was represented in her direct appeal by new counsel. Counsel in that appeal could have cited to the testimony and records contained in the court file to support a claim of ineffective assistance of trial counsel in failing to object or challenge the state's failure to disclose Fire Inspector Winters's testimony concerning the fire's two points of origin. Ayers was indigent. The record contains no evidence that the defense requested the trial court provide funds to consult with an expert witness.

[*P86] To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. *State v. Cole, 2 Ohio St.3d 112, 2 Ohio B. 661, 443 N.E.2d 169 (1982)*, syllabus. Ayers has failed in this burden.

[*P87] As Ayers could have raised and fully litigated this discovery issue on direct appeal, this Court concludes that the trial court did not err in finding that this issue was barred by *res judicata*.

*Third Ground for Relief*

[*P88] In the Third Ground for Relief set forth in Ayers's petition for post-conviction relief, Ayers contends that her right to

compulsory process was violated by the state's discovery violation, i.e. failing to disclose Fire Inspector Winters's conclusion that the fire had two point of origin in violation of *Crim.R. 16(K)*.

**[\*P89]** Defense counsel was in possession of Fire Inspector Winters's Executive Summary, and his draft report prior to trial. Thus, the defense was on notice that the state would present expert testimony prior to trial. Nothing impeded the defense from obtaining its own expert witness. The proffered testimony of Ayers's attorneys submitted, as Exhibit L to her petition, does not indicate that her trial attorneys would have retained an expert witness had they received Fire Inspector Winters's conclusion that the fire had two points of origin before trial.

**[\*P90]** The entire Executive Summary prepared by Winters was read into the record during the jury trial. 2T. at 297. Defense counsel acknowledged receiving the report. Id. at 299. The report does not indicate the fire had two points of origin. 2T. at 297.

**[\*P91]** In the case at bar, Ayers was represented in her direct appeal by new counsel. Counsel in that appeal could have cited to the testimony and records contained in the court file to support a claim of ineffective assistance of trial counsel in failing to object or challenge Fire Inspector Winters's testimony, or to retain and present its own expert at trial. To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. *State v. Cole, 2 Ohio St.3d 112, 2 Ohio B. 661, 443 N.E.2d 169 (1982)*, syllabus. Ayers has failed in this burden. The issue of whether Ayers was denied compulsory process by the state's failure to disclose Fire Inspector Winters's conclusion that the fire had two points of origin before trial could have been raised in her direct appeal.

**[\*P92]** As Ayers could have raised and fully litigated this issue on direct appeal, this Court concludes that the trial court did not err in finding that this issue was barred by *res judicata*.

[\*\*\*]

*Fifth Ground for Relief*

**[\*P98]** In her Fifth Claim for Relief, Ayers argues that but for Fire Inspector Winters's false, unsupported and/or materially misleading testimony she would not have been convicted.

[*P99]  It is not unusual in a case in which highly technical, medical or other specialized evidence is presented for the experts presented by each party to criticize the other's training, methodology, and/or conclusions. When a so-called "battle of experts" takes place during a jury trial such criticisms go to the weight not the admissibility of each expert's opinion.

[*P100]  An expert witness is not required to be the best witness on the subject. *Alexander v. Mt. Carmel Med. Ctr., 56 Ohio St.2d 155, 159, 383 N.E.2d 564(1978)*. (Citations omitted.) In *State v. Thomas, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017*, the Supreme Court observed,

> Neither special education nor certification is necessary to confer expert status upon a witness. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150*; *State v. Baston, 85 Ohio St.3d 418, 423, 1999- Ohio 280, 709 N.E.2d 128. Pursuant to Evid.R. 104(A), the trial court determines whether a witness qualifies as an expert*, and that determination will be overturned only for an abuse of discretion. *State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150*; *State v. Williams (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444*.

Id. at ¶46 (emphasis added).

[*P101]  When viewed in this light, Lentini's affidavit has only limited probative value. His opinion does not exonerate Ayers. The majority of Lentini's opinion centers on his belief that Winters is not qualified, or did not use the techniques that Lentini believes are the best practice. He opines only that Fire Inspector Winters's expert testimony was "unreliable, unscientific, and at odds with generally accepted fire investigation methodology." Lentini Affidavit at ¶32. Lentini's opinion does not affect the other testimony and evidence that was presented during Ayers's jury trial. Mr. Lentini does not opine: 1). the fire was of accidental origin; 2). a person could not have intentionally started the fire; or 3). having only one ignition point rules out that the fire was started intentionally. To answer those questions the jury must necessarily look to the other evidence present by the state during Ayers's jury trial.

[*P102]  In light of the evidence produced that did not depend upon expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*. The testimony of Lentini could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Ayers was not denied her right to due process and fair trial by Fire Inspector Winters's testimony.

[*P103]  We further note that this Court has previous found that Ayers's convictions are not against the weight or the sufficiency of the evidence. *State v. Ayers, 5th Dist. Stark No. 2013 CA 00034, 2013-Ohio-5402, ¶26*.

*Sixth Ground for Relief*

[*P104]  In her Sixth Ground for Relief Ayers recasts her previous arguments as well as asserting due process and cruel and unusual punishment claims under the Ohio Constitution.

[*P105]  The claims under the state constitution fail for the reasons set forth above in our disposition of Ayers's First through Fifth Grounds for Relief.

**Conclusion - Post conviction relief**

[*P106]  In *Harrington v. Richter*, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> A reasonable probability is a probability sufficient to undermine confidence in the outcome." *[Strickland], at 694, 104 S.Ct. 2052*. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id., at 693, 104 S.Ct. 2052*. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id., at 687, 104 S.Ct. 2052*.

*562 U.S. 86, 104,131 S.Ct. 770, 178 L.Ed.2d 624(2011)*.

[*P107]  In light of the evidence produced that did not depend upon expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for

counsel's unprofessional errors, the result of her trial would have been different. *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*.

[*P108] Accordingly, we hold that Ayers has not shown by clear and convincing evidence that a constitutional error occurred during her jury trial, and that no reasonable fact-finder would have found her guilty but for the constitutional error at trial. *R.C. 2953.23(A)(1)(b)*.

[*P109] Therefore, the trial court correctly concluded that it lacked jurisdiction to consider Ayers's untimely petition for post-conviction relief.

[*P110] Ayers's Second Assignment of Error is overruled.
I. & III.

[*P111] In her First Assignment of Error, Ayers maintains that she relied upon her trial attorneys to discover and investigate evidence necessary to prepare her defense at trial and her reliance upon her attorneys unavoidably prevented her from discovering both the flaws in the state's arson theory and her lack of a fair trial.

[*P112] In Ayers's Third Assignment of Error, she claims that the trial court erred by denying her a hearing on her motion for leave because she presented a "prima facie" showing of unavoidable delay under *Crim.R.33(B)*.

**Standard of Appellate Review**.

[*P113] *Crim.R. 33(B)* provides that if a defendant fails to file a motion for a new trial within 120 days of the jury's verdict, he or she must seek leave from the trial court to file a delayed motion. *Crim.R. 33(B)* does not give a deadline by which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence. *State v. Bethel, _ Ohio St.3d _, 2022-Ohio-783, _ N.E.3d _, ¶53, ¶55*.

[*P114] To obtain leave, the defendant must show by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days. *State v. Lordi, 149 Ohio App.3d 627, 2002-Ohio-5517, 778 N.E.2d 605(7th Dist.), ¶ 26-27*. Clear and convincing proof is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb, 18 Ohio St*

*.3d 361, 368, 18 Ohio B. 419, 481 N.E.2d 613(1985)*; *Lordi, supra, at ¶ 26*.

**[\*P115]**  A party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.  *State v. Bethel, 2022-Ohio-783, ¶21*.

**[\*P116]**  "To warrant the granting of a motion for a new trial on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result of a new trial if granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence." *State v. Petro, 148 Ohio St. 505, 76 N.E.2d 370(1947)*, syllabus. *Accord, State v. Hawkins, 66 Ohio St.3d 339, 350, 612 N.E.2d 1227(1993)*, syllabus; *State v. LaMar, 95 Ohio St. 3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶85*. A trial court abuses its discretion in granting a defendant a new trial without first finding by clear and convincing evidence that the defendant was unavoidably prevented from discovering the evidence within the one hundred twenty-day time frame established by *Crim.R. 33(B)*. *State v. Georgekopoulos, 9th Dist. Summit No. C.A. 21952, 2004-Ohio-5197, ¶8*.

**[\*P117]**  The decision whether to grant a new trial on grounds of newly discovered evidence falls within the sound discretion of the trial court. *State v. Hawkins, 66 Ohio St.3d at 350, 612 N.E.2d 1227*. We cannot reverse unless there has been a gross abuse of that discretion, and whether that discretion has been abused must be disclosed from the entire record. *State v. Petro, 148 Ohio St. at 507-508, 76 N.E.2d 370*, quoting *State v. Lopa, 96 Ohio St. 410, 411, 117 N.E. 319, 15 Ohio L. Rep. 191(1917)*.

**[\*P118]**  Trial courts should subject *Crim.R. 33(A)(6)* new trial motions to the closest scrutiny:

> Applications for new trials on the ground of newly discovered evidence are not, however, favored by the courts, for the reason that the moving party has generally had ample opportunity to prepare his case carefully and to secure all of the evidence before the trial. Such applications, whether in a court of law or in a court of

equity, are entertained with reluctance and granted with caution, not only because of the danger of perjury, but also because of the manifest injustice in allowing a party to allege that which may be the consequence of his own neglect in order to defeat an adverse verdict. In order to prevent, as far as possible, the fraud and imposition which defeated parties may be tempted to practice as a last resort to escape the consequence of an adverse verdict, an application setting up the discovery of new evidence should always be subjected to the closest scrutiny by the court. The applicant is required to rebut the presumption that the verdict is correct and that there has been a lack of due diligence and to establish other facts essential to warrant the granting of a new trial upon the ground of newly discovered evidence. The rule to be deduced from the cases is that where newly discovered evidence is of such conclusive nature, or of such decisive or preponderating character, that it would with reasonable certainty have changed the verdict or materially reduced the recovery, a new trial should be granted if it is satisfactorily shown why the evidence was not discovered and produced at the time of the trial.

*Taylor v. Ross, 150 Ohio St. 448, 450-51, 83 N.E.2d 222, 224 (1948)*, quoting 39 American Jurisprudence, 163, Section 156; accord *Domanski v. Woda, 132 Ohio St. 208, 6 N.E.2d 601 (1937)*.

[*P119] "The question of whether to decide a motion on the supporting evidence filed with the motion or to hold an evidentiary hearing is within the discretion of the trial court." *United States v. O'Dell, 805 F.2d 637, 643 (6th Cir. 1986)*; *State v. Sutton, 2016-Ohio-7612, 73 N.E.3d 981, ¶ 13 (8th Dist.)*.

**Issue for Appellate Review:** *Whether the trial court abused its discretion in denying Ayers's motion for leave to file a motion for a new trial filed beyond 120 days of the jury's verdict without a hearing.*

[*P120] For the trial court to have jurisdiction to entertain the ineffective assistance of trial counsel claim alleged in the motion for leave to file a motion for a new trial, Ayers first had to establish that she was "unavoidably prevented from discovery of the facts" on which she relies.

[*P121] We find it unnecessary to reach this issue. Assuming arguendo that Ayers would be entitled to a hearing on her motion

for leave to file a motion for a new trial, the hearing would be an exercise in futility. We have concluded in our discussion of Ayers's petition for post-conviction relief, Assignment of Error 2, supra, that, in light of the evidence produced at Ayers's jury trial that did not depend upon expert testimony, and the entire record in this case, Ayers has not shown a constitutional error occurred during her jury trial and that no reasonable fact-finder would have found her guilty but for the constitutional error at trial. *R.C. 2953.23(A)(1)(b)*.

[*P122] Because Ayers's failed to meet her burden under *R.C. 2953.23(A)(1)(b)*, Ayers's motion for a new trial would be without merit, therefore rendering moot a hearing on her motion for leave to file a motion for a new trial. *State v. Bethel,    Ohio St.3d   , 2022-Ohio-783,    N.E.3d   , ¶59 - ¶60*. Therefore, the trial court did not abuse its discretion in overruling Ayers's motion for leave to file a motion for a new trial without holding an evidentiary hearing on the motion.

[*P123] Ayers's First and Third Assignments of Error are overruled.

[*P124] For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.

*State v. Ayers,* 167 Ohio St.3d 1528, 2022-Ohio-3322, 195 N.E.3d 167. **(Entry, Exhibit 55)**

Ayers has not rebutted the state appellate court's factual findings by clear and convincing evidence and in §2254 habeas review, so this Court must presume the state appellate court's factual findings are correct. *See* 28 U.S.C. §2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).

This Court must also defer to the state appellate court's interpretations of Ohio law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)(*per curiam*); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Likewise, the Court must defer to the state appellate court's decision to that the evidence was constitutionally sufficient to convict Ayers **(Opinion, Exhibit 26)** because the state appellate court decision is not contrary to, or an unreasonable application of clearly established Supreme Court precedent pertaining to the Sixth Amendment, sufficiency of the evidence, and federal constitutional due process.  To the contrary, the state appellate court reasonably applied the correct review standard from *Jackson v. Virginia*, 443 U.S. 307 (1979).

Similarly, the Court must defer to the state appellate court's decision to deny Ayers' Sixth Amendment prosecutorial misconduct claim because Ayers has not established that the state appellate court's decision is contrary to, or an unreasonable application of clearly established Supreme Court precedent pertaining to the Sixth Amendment, prosecutorial misconduct, and federal constitutional due process.

Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to deprive the petitioner of due process" does it provide grounds for granting a writ of habeas corpus.  *Broom v. Mitchell*, 441 F.3d 3992, 406 (6th Cir. 2006), *quoting McAddo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).  State-court evidentiary rulings "cannot rise to the level of due process violations unless they 'offend [ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.''  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), *quoting Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

Similarly, the test for prosecutorial misconduct is whether the conduct complained of deprived the accused of a fair trial.  The relevant analysis concerns the fairness of the trial rather than the culpability of the prosecutor.  *Smith v. Phillips, 455*

U.S. 209, 219 (1982). Prosecutorial misconduct can merit habeas relief only if the prosecutor's misconduct render the trial so unfair as to be a denial of due process. *Moore v. Mitchell*, 708 F.3d 760 (6th Cir. 2013); *citing Donnelly v. DeChristoforo*, 416 U.S. 637, 634-45 (1974).

Fundamental fairness under the Due Process Clause is judged as to whether "the action complained of violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990). The Supreme Court has "defined the category of [such trial court] infractions that violate 'fundamental fairness' very narrowly." *Id*.

In this case, Ayers has not met the extremely high standard necessary to establish that her trial was fundamentally unfair in violation of the federal constitutional Due Process Clause, particularly when the state appellate court reasonably determined in accord with clearly established Supreme Court precedent that the evidence was constitutionally sufficient evidence to convict Ayers **(Opinion, Exhibit 26)**, the record supports the state appellate court's reasonable findings that "Mr. Lentini's affidavit does not exonerate Ayers or reduce her culpability," and that the evidence produced at trial that did not depend on expert testimony was also constitutionally sufficient to convict Ayers. **(Entry, Exhibit 55)**

Based on the foregoing, the Court cannot grant Ayers habeas relief on her Sixth Amendment right to effective trial counsel claim, and the Court must deny and dismiss Ayers' second relief ground with prejudice.

### Ground Three

Ayers' third relief ground is:

> **GROUND THREE:** Conviction obtained by fundamentally unreliable evidence in violation of the Fifth and Fourteenth Amendments.
>
> **Supporting Facts:** Petitioner's conviction was obtained using evidence now known to be false, unsupported, and/or fundamentally unreliable. Specifically, the testimony of Reginald Winters regarding the origin of the fire was incorrect, unsupported, and/or fundamentally unreliable in key respects. The probable value of Winters' testimony, if any, was greatly outweighed by the prejudice to Petitioner from its admission. Its role in Petitioner's conviction is a fundamental defect which inherently results in a miscarriage of justice.

**(Amended Petition, Doc. No. 14 PageID 97-98)(Brief, Doc. No. 14-1 PageID 130-131)**

Ayers is not entitled to habeas relief on her third relief ground and the Court must deny and dismiss Ayers' third relief ground with prejudice for several reasons. Ayers did not properly exhaust an identical federal constitutional due process claim in state court, Ayers inexcusably procedurally defaulted her federal constitutional due process claim, and she forfeited federal habeas review and relief.

Additionally, the state appellate court reasonably denied Ayers' federal constitutional due process claim on collateral appeal, that decision is not contrary to or an unreasonable application of clearly established Supreme Court precedent pertaining to the fundamental fairness and federal constitutional due process, so that decision is entitled to AEDPA deference in this proceeding. Consequently, Ayers' federal constitutional due process claim lacks merit, and the court must also deny and dismiss Ayers' third relief ground with prejudice on the merits.

**Ayers Did Not Exhaust her Federal Constitutional Due Process
Claim, She Inexcusably Procedurally Default her Third Relief
Ground, & Forfeited Habeas Review & Relief**

Ayers did not properly exhaust an identical federal constitutional due process claim in state court, Ayers inexcusably procedurally defaulted her federal constitutional due process claim, and she forfeited federal habeas review and relief.

Ayers did not raise an identical federal constitutional due process claim on direct appeal to the state appellate court **(Appellant's Brief, Exhibit 22)**, she did not timely file a direct in the Ohio Supreme Court and her filing deadline expired January 23, 2014. *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i); Ohio S.Ct.Prac.R. 3.03(A)(1).

Accordingly, when Ayers raised her federal constitutional due process claim in collateral post-conviction relief proceedings, the state appellate court denied Ayers' claim because her post-conviction relief petition was untimely and Ohio's *res judicata rule* barred her claim. This Court must presume in habeas review that the Ohio Supreme Court's subsequent decision **(Entry, Exhibit 55)** that was silent as to rationale rests on the same procedural ground. *See Ylst v. Nunnemaker*, 501 U.S. 797 (1991); *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996).

Failing to raise claims that are discoverable from the record on direct appeal to the state appellate court and the Ohio Supreme Court are both recognized procedural defaults that waive and preclude habeas review and relief. Similarly, an Ohio court's *res judicata* dismissal is also a well-established procedural default that waives federal habeas review and relief.

Ayers has not established cause and actual prejudice, or a fundamental miscarriage of justice and actual innocence to excuse her failure to fairly present and

properly exhaust her federal constitutional due process claim in the Ohio courts and to excuse her state court procedural defaults.

Ayers cannot rely on ineffective assistance of counsel to excuse her state court procedural defaults because her Sixth Amendment right to trial and appellate counsel claims are themselves procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011). In addition to procedurally defaulting her ineffective assistance of trial counsel claim, Ayers did not file an Ohio App.R. 26(B) application, and her filing deadline expired Monday, March 10, 2014. *See* Ohio App.R. 26(B)(1).

Ayers also cannot rely on ineffective assistance of counsel as cause for excuse because she did not have a constitutional right to counsel in Ohio Supreme Court, Ohio App. R. 26(B) application, or post-conviction relief proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010); *Sowell v. Collins*, 557 F.Supp.2d 843, 919 (S.D. Ohio 2008); *State v. Buell*, 70 Ohio St.3d 1211, 1994-Ohio-475, 639 N.E.2d 110.

Similarly, the fact that Ayers was incarcerated and acting *pro se* does not constitute cause to excuse her procedural default absent other extraordinary circumstances. *See Bonilla v. Hurley*, 370 F.3d 494 (6th Cir. 2004).

Since Ayers has not established cause, this Court does not have to consider the actual prejudice prong. Even so, Ayers has not established actual prejudice or more specifically, a federal constitutional error and a reasonable probability that, but for the established federal constitutional error, the result of Ayers' criminal trial, sentence, or appeal would have been different.

Likewise, Ayers has not proffered new and reliable evidence that is sufficient to meet the demanding *Schlup v. Delo*, 513 U.S. 298 (1995) actual innocence standard. More specifically, Ayers has not shown that no reasonable juror would have convicted her due to new and reliable evidence, and Ayers has not established actual innocence that would excuse her state court procedural defaults.

Based on the foregoing, the Court must dismiss Ayers' third relief ground with prejudice because Ayers inexcusably procedurally defaulted the claim, and Ayers waived federal habeas review and relief.

### The State Appellate Court's Determinations Are Entitled to AEDPA Deference, and Ayers' Federal Constitutional Due Process Claim and Third Relief Ground Lack Merit

"Nevertheless, this Court may deny relief on the merits, notwithstanding a failure to exhaust where appropriate. See 28 U.S.C §2254(b)(2)." *Hanna v. Ishee*, 694 F.3d 596, 610 (6th Cir. 2012). Whether this Court is considering if Ayers has established a federal due process violation to excuse her state court procedural defaults, or considering her alleged federal constitutional due process claim on the merits, the analysis and results are the same, and the Court must deny Ayers federal habeas relief.

As detailed above, on direct appeal, the state appellate court reasonably applied the correct review standard from *Jackson v. Virginia*, 443 U.S. 307 (1979), and reasonably determined that the evidence was constitutionally sufficient to convict Ayers. **(Opinion, Exhibit 26)**

On collateral appeal, the state appellate court also reasonably determined:

> **[*P64]** At trial Fire Inspector Winters testified concerning his knowledge and experience as follows,
>
> > Q. How long have you been a Fire Inspector/Fire

Investigator?

A. I've been - - five years with the City of Massillon, been on the fire department for ten.

Q. And prior to your employment at the City of Massillon, were you employed elsewhere as a firefighter?

A. Yes, sir, fifteen years with the City of Orrville.

Q. Now, if you would, could you tell these ladies and gentlemen what a fire inspector's duties are?

A. Fire inspector's duties are we do public safety. We also go through commercial buildings ensuring safety, making sure the fire extinguishers, exit lights are lit, and we also give approval for new buildings and stuff like that. We work with the building department. We also are in charge of fireworks, certifying them and stuff like that, to inspect the site to make sure it's safe for the community.

Q. How about the other part of your job description that you previously entail detailed that you had, would you explain that to these folks?

A. As a Fire Investigator, my job is to come in and determine origin and cause. The cause being what happened, the origin is where the fire started at.

Q. Did you have to undergo specialized training in order to hold a position as that of which you just described?

A. Yes, sir.

Q. What type of training, first of all, did you have to undergo?

A. First of all, I had to get my certified Fire Inspector. You have to be a certified Fire Inspector. And then from there you have to - - it's two stages. You have a basic Fire Investigator and then you have an advanced Fire Inspector course you have to take.

Q. Let's talk about the certified Fire Inspector training first. What does that entail?

A. That entails looking at multiple burn scenes, learning the scientific methodology of how different things burn as far as oils, gas, electrical fires, the synthetic fires as far as people using open flames to fires, candles, paper. And we look at the different patterns the fire makes, the different charring of wood and stuff like that to make our determination whether - - what caused the fire, whether it was mechanical, accidental, or incendiary.

Q. Do you have to go to classes for that?

A. Yes, sir.

Q. And how long were those classes?

A. My first class as a basic investigator, it was 32 hours. The second part of advanced was - - it was 40 hours.

Q. Did you successfully complete all those classes?

A. Yes, sir.

Q. And then at the end of those classes, do you have to take a test?

A. Yes, sir.

Q. And did you successfully pass all those tests?

A. Yes, sir.

Q. So, you are now a certified arson Investigator?

A. Yes.

Q. And that's within the State of Ohio?

A. Yes, sir.

Q. Once you complete that training, do you have to continue to update your education?

A. Yes, sir.

Q. What do you have to do?

A. We have to - - well, we take like different seminars. One seminar I attend is the International Firefighters Association of Arson Investigators in Columbus. It's an annual Fire Investigator course weeklong. We have to maintain 32 hours in a three-year period of continuing education.

Q. And as you sit here today, are you current in all your requirements to be a certified arson investigator?

A. Yes, sir.

Q. You indicated that you've held that position with the Massillon Police [sic] Department for five years. Could you estimate the number of fires you've investigated within those five years?

A. I would say approximately 30.

Q. And have you testified before in the courts of Stark County as an expert in the cause and origin of fires?

A. Yes, sir.

Q. And has that testimony been accepted by the courts?

A. Yes, sir.

1T. at 225-229.

[*P65]  In *State v. Thomas, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017*, the Supreme Court observed,

> Neither special education nor certification is necessary to confer expert status upon a witness. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150*; *State v. Baston, 85 Ohio St.3d 418, 423, 1999- Ohio 280, 709 N.E.2d 128. Pursuant to Evid.R. 104(A), the trial court determines whether a witness qualifies as an expert*, and that determination will be overturned only for an abuse of discretion. *State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150*; *State v. Williams (1983), 4 Ohio St.3d 53, 58,*

*4 OBR 144, 446 N.E.2d 444*.

Id. at ¶46 (emphasis added). Ayers does not argue in her petition for post-conviction relief that the trial court abused its discretion by qualifying Fire Inspector Winters as an expert witness.

[*P66] In the case at bar, the undisputed facts at trial were that a fire occurred on a mattress located in the basement that caused damage to the residence. The disputed facts at trial were whether Ayers stared the fire intentionally or accidentally, or, whether the 3-year-old child started the fire.

[*P67] Mr. Lentini's affidavit does not exonerate Ayers or reduce her culpability. In other words, Mr. Lentini does not opine that 1). the fire was of accidental origin; 2). a person could not have intentionally started the fire; or 3). having only one ignition point rules out that the fire was started intentionally. To answer those questions the jury must necessarily look to the other evidence present by the state during Ayers's jury trial.

[*P68] Ayers's father testified he had previously discussed finances with her, and the fact she had not been contributing to the household financial situation. Mr. Ayers told Ayers that he was planning to move to West Virginia. Jeff Ayers testified that Ayers became more aggressive toward him and began to make threats to the point that he feared for the safety of his family. 1T. at 309-310. Jeff Ayers testified that Ayers threatened to burn the house down. Id. He became so concerned that he called his sister, aunt and the landlord and told them that Ayers was threatening to burn the house down. 1T. at 310. The fire occurred on the day that he left the home for West Virginia. 1T. at 312.

[*P69] Additionally, a neighbor of Ayers, Jason Pandrea, testified he heard Ayers threaten her father with burning the house down if he ever left. 1T. at 339. Pandrea testified that Ayers "meant it." 1T. at 341.

[*P70] The jury viewed the video of Ayers's statement to Fire Inspector Winters and Patrolman Curtis Rucker from the Massillon Police Department. 1T. at 195; 201. State's Exhibit 1. The jury was shown pictures of the scene after the fire had occurred.

[*P71] Inspector Reginald Winters was the state's expert. 1T. at 225. Winters did not find evidence of a cigarette as the cause of the fire. 1T. at 240. Winters identified the State's Photograph Exhibits that he took of the scene of the fire. 1T. at 243; 2T. at 273, 275.

Winters was able to exclude cigarettes, natural gas, accelerants, and an electrical cause for the fire. 1T. at 248-249. Winters testified the cause of the fire was incendiary (open flame) and a person or persons started the fire. 1T. at 250.

[*P72] The jury heard Ayers's statement to Massillon Paramedic Richard Annen that she was running upstairs to get her son when the fire started in the basement. 1T. at 186. Ayers initially told Annen that the child started the fire; however, she later claimed that she might have fallen asleep. 1T. at 206-207. Annen looked in the child's mouth and on his face and found no evidence of soot, which would indicate that the child had been near the fire. Id. at 185. He found evidence of soot on Ayers. 1T. at 186-187.

[*P73] At the hospital, Ayers claimed to be in the basement folding clothes when she noticed her son playing with a lighter on the mattress. 2T. at 261. When asked how she could see a small fire on the bed with the chimney, hot water tank and furnace blocking her view from her position near the clothes dryer she was unable to answer. 2T. at 263.

[*P74] The jury also had audio recordings of calls made by Ayers while she was in jail. Exhibit 2. This Court notes that State's Exhibit 2 is a disk containing 34 phone calls that Ayers made from the jail while she was awaiting trial. However, only "snippets" from two calls were played for the jury and admitted into evidence. 2T. at 397-398. The state never identified the specific portion of the calls that were played for the jury and admitted into evidence.

[*P75] It is not unusual in a case in which highly technical, medical or other specialized evidence is presented for the experts presented by each party to criticize the other's training, methodology, and/or conclusions. When a so-called "battle of experts" takes place during a jury trial such criticisms go to the weight not the admissibility of each expert's opinion. An expert witness is not required to be the best witness on the subject. _Alexander v. Mt. Carmel Med. Ctr., 56 Ohio St.2d 155, 159, 383 N.E.2d 564(1978)_. (Citations omitted.)

[*P76] The majority of Lentini's opinion centers on his belief that Winters is not qualified, or did not use the techniques that Lentini believes are the best practice. When viewed in this light, Lentini's affidavit has only limited probative value. His opinion does not exonerate Ayers or reduce her culpability. He opines only that Fire Inspector Winters's expert testimony was "unreliable, unscientific, and at odds with generally accepted fire investigation

methodology." Lentini Affidavit at ¶32. Lentini's opinion does not affect the other testimony and evidence that was presented during Ayers's jury trial.

[*P77]  In light of the evidence produced that did not depend upon expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*. The testimony of Lentini could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Ayers was not denied her right to due process and fair trial by counsel's failure to consult an expert witness.

[***]

*Second Ground for Relief*

[*P83]  In her Second Ground for Relief, Ayers claims the prosecutor committed misconduct by failing to disclose Fire Inspector Winters's conclusion that the fire had two point of origin in violation of *Crim.R. 16(K)*.

[*P84]  The entire Executive Summary prepared by Winters was read into the record during the jury trial. 2T. at 297. Defense counsel acknowledged receiving the report. Id. at 299. The report does not indicate the fire had two points of origin. 2T. at 297.

[*P85]  In the case at bar, Ayers was represented in her direct appeal by new counsel. Counsel in that appeal could have cited to the testimony and records contained in the court file to support a claim of ineffective assistance of trial counsel in failing to object or challenge the state's failure to disclose Fire Inspector Winters's testimony concerning the fire's two points of origin. Ayers was indigent. The record contains no evidence that the defense requested the trial court provide funds to consult with an expert witness.

[*P86]  To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. *State v. Cole, 2 Ohio St.3d 112, 2 Ohio B. 661, 443 N.E.2d 169 (1982)*, syllabus. Ayers has failed in this burden.

[*P87] As Ayers could have raised and fully litigated this discovery issue on direct appeal, this Court concludes that the trial court did not err in finding that this issue was barred by *res judicata*.

*Third Ground for Relief*

[*P88] In the Third Ground for Relief set forth in Ayers's petition for post-conviction relief, Ayers contends that her right to compulsory process was violated by the state's discovery violation, i.e. failing to disclose Fire Inspector Winters's conclusion that the fire had two point of origin in violation of *Crim.R. 16(K)*.

[*P89] Defense counsel was in possession of Fire Inspector Winters's Executive Summary, and his draft report prior to trial. Thus, the defense was on notice that the state would present expert testimony prior to trial. Nothing impeded the defense from obtaining its own expert witness. The proffered testimony of Ayers's attorneys submitted, as Exhibit L to her petition, does not indicate that her trial attorneys would have retained an expert witness had they received Fire Inspector Winters's conclusion that the fire had two points of origin before trial.

[*P90] The entire Executive Summary prepared by Winters was read into the record during the jury trial. 2T. at 297. Defense counsel acknowledged receiving the report. Id. at 299. The report does not indicate the fire had two points of origin. 2T. at 297.

[*P91] In the case at bar, Ayers was represented in her direct appeal by new counsel. Counsel in that appeal could have cited to the testimony and records contained in the court file to support a claim of ineffective assistance of trial counsel in failing to object or challenge Fire Inspector Winters's testimony, or to retain and present its own expert at trial. To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. *State v. Cole, 2 Ohio St.3d 112, 2 Ohio B. 661, 443 N.E.2d 169 (1982)*, syllabus. Ayers has failed in this burden. The issue of whether Ayers was denied compulsory process by the state's failure to disclose Fire Inspector Winters's conclusion that the fire had two points of origin before trial could have been raised in her direct appeal.

[*P92] As Ayers could have raised and fully litigated this issue on direct appeal, this Court concludes that the trial court did not err in finding that this issue was barred by *res judicata*.

[***]

*Fifth Ground for Relief*

[*P98] In her Fifth Claim for Relief, Ayers argues that but for Fire Inspector Winters's false, unsupported and/or materially misleading testimony she would not have been convicted.

[*P99] It is not unusual in a case in which highly technical, medical or other specialized evidence is presented for the experts presented by each party to criticize the other's training, methodology, and/or conclusions. When a so-called "battle of experts" takes place during a jury trial such criticisms go to the weight not the admissibility of each expert's opinion.

[*P100] An expert witness is not required to be the best witness on the subject. *Alexander v. Mt. Carmel Med. Ctr., 56 Ohio St.2d 155, 159, 383 N.E.2d 564(1978)*. (Citations omitted.) In *State v. Thomas, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017*, the Supreme Court observed,

> Neither special education nor certification is necessary to confer expert status upon a witness. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150*; *State v. Baston, 85 Ohio St.3d 418, 423, 1999- Ohio 280, 709 N.E.2d 128*. *Pursuant to Evid.R. 104(A), the trial court determines whether a witness qualifies as an expert*, and that determination will be overturned only for an abuse of discretion. *State v. Hartman, 93 Ohio St.3d at 285, 2001-Ohio-1580, 754 N.E.2d 1150*; *State v. Williams (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 446 N.E.2d 444*.

Id. at ¶46 (emphasis added).

[*P101] When viewed in this light, Lentini's affidavit has only limited probative value. His opinion does not exonerate Ayers. The majority of Lentini's opinion centers on his belief that Winters is not qualified, or did not use the techniques that Lentini believes are the best practice. He opines only that Fire Inspector Winters's expert testimony was "unreliable, unscientific, and at odds with generally accepted fire investigation methodology." Lentini

Affidavit at ¶32. Lentini's opinion does not affect the other testimony and evidence that was presented during Ayers's jury trial. Mr. Lentini does not opine: 1). the fire was of accidental origin; 2). a person could not have intentionally started the fire; or 3). having only one ignition point rules out that the fire was started intentionally. To answer those questions the jury must necessarily look to the other evidence present by the state during Ayers's jury trial.

[*P102] In light of the evidence produced that did not depend upon expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*. The testimony of Lentini could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Ayers was not denied her right to due process and fair trial by Fire Inspector Winters's testimony.

[*P103] We further note that this Court has previous found that Ayers's convictions are not against the weight or the sufficiency of the evidence. *State v. Ayers, 5th Dist. Stark No. 2013 CA 00034, 2013-Ohio-5402, ¶26*.

*Sixth Ground for Relief*

[*P104] In her Sixth Ground for Relief Ayers recasts her previous arguments as well as asserting due process and cruel and unusual punishment claims under the Ohio Constitution.

[*P105] The claims under the state constitution fail for the reasons set forth above in our disposition of Ayers's First through Fifth Grounds for Relief.

**Conclusion - Post conviction relief**

[*P106] In *Harrington v. Richter*, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> A reasonable probability is a probability sufficient to undermine confidence in the outcome." *[Strickland], at 694, 104 S.Ct. 2052*. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id., at 693, 104 S.Ct. 2052*. Counsel's errors

must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id., at 687, 104 S.Ct. 2052*.

*562 U.S. 86, 104,131 S.Ct. 770, 178 L.Ed.2d 624(2011)*.

**[\*P107]** In light of the evidence produced that did not depend upon expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. *Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984)*; *State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373(1989)*.

**[\*P108]** Accordingly, we hold that Ayers has not shown by clear and convincing evidence that a constitutional error occurred during her jury trial, and that no reasonable fact-finder would have found her guilty but for the constitutional error at trial. *R.C. 2953.23(A)(1)(b)*.

**[\*P109]** Therefore, the trial court correctly concluded that it lacked jurisdiction to consider Ayers's untimely petition for post-conviction relief.

**[\*P110]** Ayers's Second Assignment of Error is overruled. I. & III.

**[\*P111]** In her First Assignment of Error, Ayers maintains that she relied upon her trial attorneys to discover and investigate evidence necessary to prepare her defense at trial and her reliance upon her attorneys unavoidably prevented her from discovering both the flaws in the state's arson theory and her lack of a fair trial.

**[\*P112]** In Ayers's Third Assignment of Error, she claims that the trial court erred by denying her a hearing on her motion for leave because she presented a "prima facie" showing of unavoidable delay under *Crim.R.33(B)*.

**Standard of Appellate Review**.

**[\*P113]** *Crim.R. 33(B)* provides that if a defendant fails to file a motion for a new trial within 120 days of the jury's verdict, he or she must seek leave from the trial court to file a delayed motion. *Crim.R. 33(B)* does not give a deadline by which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence. *State v. Bethel, ___ Ohio St.3d ___, 2022-Ohio-*

*783,  N.E.3d  , ¶53, ¶55.*

**[\*P114]**  To obtain leave, the defendant must show by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days. *State v. Lordi, 149 Ohio App.3d 627, 2002-Ohio-5517, 778 N.E.2d 605(7th Dist.), ¶ 26-27.* Clear and convincing proof is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb, 18 Ohio St .3d 361, 368, 18 Ohio B. 419, 481 N.E.2d 613(1985); Lordi, supra, at ¶ 26.*

**[\*P115]**  A party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence. *State v. Bethel, 2022-Ohio-783, ¶21.*

**[\*P116]**  "To warrant the granting of a motion for a new trial on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result of a new trial if granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence." *State v. Petro, 148 Ohio St. 505, 76 N.E.2d 370(1947),* syllabus. *Accord, State v. Hawkins, 66 Ohio St.3d 339, 350, 612 N.E.2d 1227(1993),* syllabus;  *State v. LaMar, 95 Ohio St. 3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶85.* A trial court abuses its discretion in granting a defendant a new trial without first finding by clear and convincing evidence that the defendant was unavoidably prevented from discovering the evidence within the one hundred twenty-day time frame established by *Crim.R. 33(B). State v. Georgekopoulos, 9th Dist. Summit No. C.A. 21952, 2004-Ohio-5197, ¶8.*

**[\*P117]**  The decision whether to grant a new trial on grounds of newly discovered evidence falls within the sound discretion of the trial court. *State v. Hawkins, 66 Ohio St.3d at 350, 612 N.E.2d 1227.* We cannot reverse unless there has been a gross abuse of that discretion, and whether that discretion has been abused must be disclosed from the entire record. *State v. Petro, 148 Ohio St. at 507-508, 76 N.E.2d 370, quoting State v. Lopa, 96 Ohio St. 410, 411, 117 N.E. 319, 15 Ohio L. Rep. 191(1917).*

**[\*P118]** Trial courts should subject *Crim.R. 33(A)(6)* new trial motions to the closest scrutiny:

> Applications for new trials on the ground of newly discovered evidence are not, however, favored by the courts, for the reason that the moving party has generally had ample opportunity to prepare his case carefully and to secure all of the evidence before the trial. Such applications, whether in a court of law or in a court of equity, are entertained with reluctance and granted with caution, not only because of the danger of perjury, but also because of the manifest injustice in allowing a party to allege that which may be the consequence of his own neglect in order to defeat an adverse verdict. In order to prevent, as far as possible, the fraud and imposition which defeated parties may be tempted to practice as a last resort to escape the consequence of an adverse verdict, an application setting up the discovery of new evidence should always be subjected to the closest scrutiny by the court. The applicant is required to rebut the presumption that the verdict is correct and that there has been a lack of due diligence and to establish other facts essential to warrant the granting of a new trial upon the ground of newly discovered evidence. The rule to be deduced from the cases is that where newly discovered evidence is of such conclusive nature, or of such decisive or preponderating character, that it would with reasonable certainty have changed the verdict or materially reduced the recovery, a new trial should be granted if it is satisfactorily shown why the evidence was not discovered and produced at the time of the trial.

*Taylor v. Ross, 150 Ohio St. 448, 450-51, 83 N.E.2d 222, 224 (1948)*, quoting 39 American Jurisprudence, 163, Section 156; accord *Domanski v. Woda, 132 Ohio St. 208, 6 N.E.2d 601 (1937)*.

**[\*P119]** "The question of whether to decide a motion on the supporting evidence filed with the motion or to hold an evidentiary hearing is within the discretion of the trial court." *United States v. O'Dell, 805 F.2d 637, 643 (6th Cir. 1986)*; *State v. Sutton, 2016-Ohio-7612, 73 N.E.3d 981, ¶ 13 (8th Dist.)*.

**Issue for Appellate Review:** *Whether the trial court abused its discretion in denying Ayers's motion for leave to file a motion for a new trial filed beyond 120 days of the jury's verdict without a hearing.*

**[\*P120]**  For the trial court to have jurisdiction to entertain the ineffective assistance of trial counsel claim alleged in the motion for leave to file a motion for a new trial, Ayers first had to establish that she was "unavoidably prevented from discovery of the facts" on which she relies.

**[\*P121]**  We find it unnecessary to reach this issue. Assuming arguendo that Ayers would be entitled to a hearing on her motion for leave to file a motion for a new trial, the hearing would be an exercise in futility.  We have concluded in our discussion of Ayers's petition for post-conviction relief, Assignment of Error 2, supra, that, in light of the evidence produced at Ayers's jury trial that did not depend upon expert testimony, and the entire record in this case, Ayers has not shown a constitutional error occurred during her jury trial and that no reasonable fact-finder would have found her guilty but for the constitutional error at trial. _R.C. 2953.23(A)(1)(b)_.

**[\*P122]**  Because Ayers's failed to meet her burden under _R.C. 2953.23(A)(1)(b)_, Ayers's motion for a new trial would be without merit, therefore rendering moot a hearing on her motion for leave to file a motion for a new trial. _State v. Bethel,  Ohio St.3d  , 2022-Ohio-783,  N.E.3d  , ¶59 - ¶60_. Therefore, the trial court did not abuse its discretion in overruling Ayers's motion for leave to file a motion for a new trial without holding an evidentiary hearing on the motion.

**[\*P123]**  Ayers's First and Third Assignments of Error are overruled.

**[\*P124]**  For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.

_State v. Ayers,_ 167 Ohio St.3d 1528, 2022-Ohio-3322,  195 N.E.3d 167. **(Entry, Exhibit 55)**

Ayers has not rebutted the state appellate court's factual findings by clear and convincing evidence and in §2254 habeas review, so this Court must presume the state appellate court's factual findings are correct. _See_ 28 U.S.C. §2254(e)(1); _Moore v._

*Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).

This Court must also defer to the state appellate court's interpretations of Ohio law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)(*per curiam*); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Likewise, the Court must defer to the state appellate court's decision to deny Ayers' federal constitutional due process because Ayers has not established that the state appellate court's decision is contrary to, or an unreasonable application of clearly established Supreme Court precedent pertaining to federal constitutional due process and fundamental fairness.

Fundamental fairness under the Due Process Clause is judged as to whether "the action complained of violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990). The Supreme Court has "defined the category of [such trial court] infractions that violate 'fundamental fairness' very narrowly." *Id*.

In this case, Ayers has not met the extremely high standard necessary to establish that her trial was fundamentally unfair in violation of the federal constitutional Due Process Clause, particularly when the state appellate court reasonably determined in accord with clearly established Supreme Court precedent that the evidence was constitutionally sufficient evidence to convict Ayers **(Opinion, Exhibit 26)**, the record supports the state appellate court's reasonable findings that "Mr. Lentini's affidavit does not exonerate Ayers or reduce her culpability," and that the evidence produced at trial

that did not depend on expert testimony was also constitutionally sufficient to convict Ayers. **(Entry, Exhibit 55)**

Based on the foregoing, the Court cannot grant Ayers habeas relief on her federal constitutional due process claim, and the Court must deny and dismiss Ayers' third relief ground with prejudice.

### Ground Four

Ayers' fourth relief ground is:

> **GROUND FOUR:** Actual innocence in violation of Fifth, Eighth, and Fourteenth Amendments.
>
> **Supporting Facts**: Newly-discovered evidence demonstrates that Petitioner is actually innocent of the charges for which she was convicted. Specifically, Inspector Winters' testimony regarding the origin of the fire is false, and the fire was, in fact, accidental. A truly persuasive demonstration of "actual innocence" made after trial renders the conviction unconstitutional. *Herrera v. Collins*, 506 U.S. 390, 418, (1993). As a result, Petitioner's conviction and the ongoing effects of her conviction are inconsistent with the U.S. Constitution's guarantee of due process of law.

**(Amended Petition, Doc. No. 14 PageID 98)(Brief, Doc. No. 14-1 PageID 131-132)**

Ayers is not entitled to habeas relief on her fourth relief ground and the Court must deny and dismiss Ayers' fourth relief ground with prejudice for several reasons. Ayers' actual innocence claim is not cognizable as a stand-alone ground for habeas relief. Ayers did not properly exhaust an identical federal constitutional claim in state court, Ayers inexcusably procedurally defaulted her federal constitutional due process claim, and she forfeited federal habeas review and relief.

Additionally, the state appellate court reasonably denied Ayers' federal constitutional due process claim on collateral appeal, that decision is not contrary to or an

unreasonable application of clearly established Supreme Court precedent pertaining to the fundamental fairness and federal constitutional due process, so that decision is entitled to AEDPA deference in this proceeding. Consequently, Ayers' federal constitutional due process claim lacks merit, and the court must also deny and dismiss Ayers' fourth relief ground with prejudice on the merits.

### Ayers' actual innocence claim is not cognizable as a stand-alone ground for habeas relief

Ayers' actual innocence claim is not cognizable as a stand-alone ground for habeas relief. Case law in this Circuit establishes that the Supreme Court has never recognized a free-standing or substantive actual innocence claim, and actual innocence claims are not cognizable as stand-alone grounds for habeas relief. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2001). *Also see* S*chlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (6th Cir. 2006). Consequently, the Court cannot grant Ayers habeas relief on her fourth relief ground.

### Ayers Did Not Exhaust her Federal Constitutional Due Process Claim, She Inexcusably Procedurally Default her Fourth Relief Ground, & Forfeited Habeas Review & Relief

Ayers did not properly exhaust an identical federal constitutional due process claim in state court, Ayers inexcusably procedurally defaulted her federal constitutional due process claim, and she forfeited federal habeas review and relief.

Ayers did not raise an identical federal constitutional due process claim on direct appeal to the state appellate court **(Appellant's Brief, Exhibit 22)**, she did not timely file a direct in the Ohio Supreme Court and her filing deadline expired January 23, 2014. *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i); Ohio S.Ct.Prac.R. 3.03(A)(1).

Accordingly, when Ayers raised her federal constitutional due process claim in collateral post-conviction relief proceedings, the state appellate court denied Ayers' claim because her post-conviction relief petition was untimely and Ohio's *res judicata rule* barred her claim. This Court must presume in habeas review that the Ohio Supreme Court's subsequent decision **(Entry, Exhibit 55)** that was silent as to rationale rests on the same procedural ground. *See Ylst v. Nunnemaker*, 501 U.S. 797 (1991); *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996).

Failing to raise claims that are discoverable from the record on direct appeal to the state appellate court and the Ohio Supreme Court are both recognized procedural defaults that waive and preclude habeas review and relief. Similarly, an Ohio court's *res judicata* dismissal is also a well-established procedural default that waives federal habeas review and relief.

Ayers has not established cause and actual prejudice, or a fundamental miscarriage of justice and actual innocence to excuse her failure to fairly present and properly exhaust her federal constitutional due process claim in the Ohio courts and to excuse her state court procedural defaults.

Ayers cannot rely on ineffective assistance of counsel to excuse her state court procedural defaults because her Sixth Amendment right to trial and appellate counsel claims are themselves procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011). In addition to procedurally defaulting her ineffective assistance of trial counsel claim, Ayers did not file an Ohio App.R. 26(B) application, and her filing deadline expired Monday, March 10, 2014. *See* Ohio App.R. 26(B)(1).

Ayers also cannot rely on ineffective assistance of counsel as cause for excuse because she did not have a constitutional right to counsel in Ohio Supreme Court, Ohio App. R. 26(B) application, or post-conviction relief proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010); *Sowell v. Collins*, 557 F.Supp.2d 843, 919 (S.D. Ohio 2008); *State v. Buell*, 70 Ohio St.3d 1211, 1994-Ohio-475, 639 N.E.2d 110.

Similarly, the fact that Ayers was incarcerated and acting *pro se* does not constitute cause to excuse her procedural default absent other extraordinary circumstances. *See Bonilla v. Hurley*, 370 F.3d 494 (6th Cir. 2004).

Since Ayers has not established cause, this Court does not have to consider the actual prejudice prong. Even so, Ayers has not established actual prejudice or more specifically, a federal constitutional error and a reasonable probability that, but for the established federal constitutional error, the result of Ayers' criminal trial, sentence, or appeal would have been different.

Likewise, Ayers has not proffered new and reliable evidence that is sufficient to meet the demanding *Schlup v. Delo*, 513 U.S. 298 (1995) actual innocence standard. More specifically, Ayers has not shown that no reasonable juror would have convicted her due to new and reliable evidence, and Ayers has not established actual innocence that would excuse her state court procedural defaults.

Based on the foregoing, the Court must dismiss Ayers' fourth relief ground with prejudice because Ayers inexcusably procedurally defaulted the claim, and Ayers waived federal habeas review and relief.

**The State Appellate Court's Determinations Are Entitled to
AEDPA Deference, and Ayers' Federal Constitutional Due
Process Claim and Fourth Relief Ground Lack Merit**

"Nevertheless, this Court may deny relief on the merits, notwithstanding a failure to exhaust where appropriate. See 28 U.S.C §2254(b)(2)." *Hanna v. Ishee*, 694 F.3d 596, 610 (6th Cir. 2012). Whether this Court is considering if Ayers has established a federal due process violation to excuse her state court procedural defaults, or considering her alleged federal constitutional due process claim on the merits, the analysis and results are the same, and the Court must deny Ayers federal habeas relief.

As detailed above, on direct appeal, the state appellate court reasonably applied the correct review standard from *Jackson v. Virginia*, 443 U.S. 307 (1979), and reasonably determined that the evidence was constitutionally sufficient to convict Ayers.

**(Opinion, Exhibit 26)**

On collateral appeal, the state appellate court also reasonably determined:

[*P93] In the Fourth Ground for Relief Ayers asserts a claim of actual innocence.

[*P94] Ayers does not assert a claim of actual innocence based upon DNA evidence as set forth in *R.C. 2953.23(A)(2)*.

[*P95] The United States Supreme Court has ruled that under the United States Constitution, an actual-innocence claim "is not itself a constitutional claim," *Herrera v. Collins, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Accord, State v. Apanovitch, 155 Ohio St. 3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶26*. In *State v. Willis*, the Court explained,

> In *Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)*, the United States Supreme Court held that "a claim of 'actual innocence' is not itself a constitutional claim." *Id. at 404, 113 S.Ct. 853*. "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim

considered on the merits." Nevertheless, the court was willing to "assume, for the sake of argument in deciding [the] case, that a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." Id.

Interpreting _Herrera, supra,_ the First District Court of Appeals held that a petitioner was not entitled to post-conviction relief unless he showed a violation of rights that were constitutional in dimension, which occurred at the time that the petitioner was tried and convicted. _State v. Campbell, 1st Dist. Hamilton No. C-950746, 1997 Ohio App. LEXIS 11, 1997 WL 5182 (Jan. 8, 1997)._ The court stated:

> [N]ewly discovered evidence is, by definition, that "which the defendant could not with reasonable diligence have discovered and produced at trial." _Crim.R. 33(A)(6);_ * * * A claim of actual innocence based on newly discovered evidence will, therefore, not provide substantive grounds for post-conviction relief, because "it does not, standing alone, demonstrate a constitutional violation in the proceedings that actually resulted in the conviction." * * * Campbell's claims of actual innocence were thus not cognizable in a postconviction proceeding. _Citing State v. Powell, 90 Ohio App.3d 260, 264, 629 N.E.2d 13 (1993)._

> Other Ohio courts have similarly held that a claim of actual innocence does not constitute a substantive ground for post-conviction relief. _State v. Bound, 5th Dist. Guernsey No. 04 CA 8, 2004-Ohio-7097, 2004 WL 2988294, State v. Watson, 126 Ohio App.3d 316, 323, 710 N.E.2d 340 (12th Dist. 1998), State v. Loza, 12th Dist. Butler No. CA96-10-214, 1997 Ohio App. LEXIS 4574, 1997 WL 634348 (Oct. 13, 1997)._

_6th Dist. Lucas Nos. L-15-1098, L-15-1101, 2016-Ohio-335, 58 N.E.3d 515, ¶15-¶17._

[*P96] We further note that this Court has previously found that Ayers's convictions are not against the weight or the sufficiency of the evidence. _State v. Ayers, 5th Dist. Stark No. 2013 CA 00034, 2013-Ohio-5402, ¶26._

[*P97] Accordingly, the trial court did not abuse its discretion in denying Ayers's petition based on actual innocence.

*State v. Ayers,* 167 Ohio St.3d 1528, 2022-Ohio-3322, 195 N.E.3d 167. **(Entry, Exhibit 55)**

Ayers has not rebutted the state appellate court's factual findings by clear and convincing evidence and in §2254 habeas review, so this Court must presume the state appellate court's factual findings are correct. *See* 28 U.S.C. §2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate,* 267 F.3d 524, 530 (6th Cir. 2001).

This Court must also defer to the state appellate court's interpretations of Ohio law. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)(*per curiam*); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

Likewise, the Court must defer to the state appellate court's decision to deny Ayers' federal constitutional due process because Ayers has not established that the state appellate court's decision is contrary to, or an unreasonable application of clearly established Supreme Court precedent pertaining to federal constitutional due process, fundamental fairness, and actual innocence.

Fundamental fairness under the Due Process Clause is judged as to whether "the action complained of violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'" *Dowling v. United States,* 493 U.S. 342, 352 (1990). The Supreme Court has "defined the category of [such trial court] infractions that violate 'fundamental fairness' very narrowly." *Id.*

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional

violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Case law in this Circuit establishes that the Supreme Court has never recognized a free-standing or substantive actual innocence claim, but a persuasive claim of actual innocence can be used to excuse a procedural default so that a habeas court can reach the merits of an underlying constitutional claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2001). *Also see House v. Bell*, 547 U.S. 518; S*chlup v. Delo*, 513 U.S. 298 (1995).

To establish a valid actual innocence claim that would warrant excusing state court procedural defaults, a habeas petitioner must support the claim with new evidence that was not presented at trial and that evidence must be so strong that a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 315. Specifically, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. at 327; *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005).

"[T]enable actual-innocence gateway pleas are rare." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). A petitioner must support her allegations of constitutional error with new reliable evidence that shows it is more likely than not that no reasonable juror would have convicted her. *Id.*, at 1933, *quoting Schlup v. Delo*, 513 U.S. 298, 329 (1995). To assess whether a petitioner has met that standard, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of

the evidence on reasonable jurors." *Id*. Additionally, timing remains a "factor relevant in evaluating the reliability of a petitioner's proof of innocence" and "unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 569 U.S. at 397.

In this case, Ayers has not met the extremely high standard necessary to establish that her trial was fundamentally unfair in violation of the federal constitutional Due Process Clause, particularly when the state appellate court reasonably determined in accord with clearly established Supreme Court precedent that the evidence was constitutionally sufficient evidence to convict Ayers **(Opinion, Exhibit 26)**, the record supports the state appellate court's reasonable findings that "Mr. Lentini's affidavit does not exonerate Ayers or reduce her culpability," and that the evidence produced at trial that did not depend on expert testimony was also constitutionally sufficient to convict Ayers. **(Entry, Exhibit 55)**

Likewise, Ayers has not met the demanding *Schlup* actual innocence standard needed to establish a fundamental miscarriage of justice and actual innocence to excuse her state court procedural defaults. More specifically, Ayers' purported evidence does not show that it is more likely than not that no reasonable juror would have convicted her.

Ayers has not identified any materially indistinguishable clearly established Supreme Court precedent that is contrary to the state appellate court decision to deny her actual innocence claim, or that the state appellate court unreasonably applied in reaching its decision. Consequently, this Court must defer to the state court decision and also deny Ayers' actual innocence claim and Ayers' fourth relief ground.

For the same reasons, the Court should also not excuse Ayers' state court procedural defaults based on her alleged actual innocence claim.

## IX.  EVIDENTIARY HEARING

Habeas review under 28 U.S.C. §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170 (2011). Since §2254(d)(1) uses the past tense and backward-looking language, state court decisions must be examined in the context of the time the decision was made and habeas review is limited to the record in existence at that time. *Id.*

In this case, there is no need for an evidentiary hearing because the state court record was adequately developed to resolve Ayers' relief grounds and petition, and additional factual inquiry is not necessary. *See* 28 U.S.C. §2254(e)(2). Consequently, the Court can adequately adjudicate Ayers' petition and claims, and the Court should not grant Harney an evidentiary hearing.

## X.  CERTIFICATE OF APPEALABILITY

The Court should not grant Ayers a certificate of appealability. Reasonable jurists would not debate that Ayers' habeas petition raises non-cognizable and inexcusably procedurally defaulted claims. Reasonable jurists would also not debate that Ayers has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. §2253(c)(2). Consequently, Ayers is not entitled to a certificate of appealability.

## XI.  CONCLUSION

There is sufficient evidence to decide this case from the record and Ayers has not established that she is entitled to an evidentiary hearing under 28 U.S.C. §2254(e)(2). The Court should deny and dismiss Ayers' §2254 petition with prejudice because the

petition raises non-cognizable unexhausted, and inexcusably procedurally defaulted claims, and Ayers has not established a federal constitutional violation. Reasonable jurists would not disagree, so the Court should also deny Ayers a certificate of appealability and *in forma pauperi*s status on appeal because she cannot in good-faith institute an appeal.

Respectfully submitted,

Dave Yost
Ohio Attorney General

s/Maura O'Neill Jaite
Maura O'Neill Jaite (#0058524)
Senior Assistant Attorney General
Ohio Attorney General's Office
Criminal Justice Section
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233/ (866) 485-4071 (fax)
maura.jaite@OhioAGO.gov
*Respondent's Attorney*

## CERTIFICATE OF SERVICE

On February 10, 2023, the Answer/ROW, Exhibits, & Transcripts were electronically filed in the Court's CM/ECF system, which will distribute the notice to all parties and counsel of record.

s/Maura O'Neill Jaite
Maura O'Neill Jaite
Senior Assistant Attorney General