**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| KAYLA JEAN AYERS, | ) CASE NO. 5:20-CV-01654-SL |
| Plaintiff, | ) DISTRICT JUDGE SARA LIOI<br>) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS, DIRECTOR; | ) MAGISTRATE JUDGE<br>) CARMEN E. HENDERSON<br>) **REPORT AND RECOMMENDATION** |
| Defendant, | ) |

## I.  Introduction

Kayla Jean Ayers ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is an Ohio prisoner who is currently serving an aggregate prison term of seven years for aggravated arson and endangering children. (ECF No. 15-1, PageID #: 307). She now asserts four grounds for relief. (ECF No. 14, PageID #: 95–98). The Director of the Ohio Department of Rehabilitation and Corrections ("Respondent") filed a return of writ on February 10, 2023. (ECF No. 15). Petitioner filed a traverse on March 10, 2023 (ECF No. 16), and Respondent filed a reply to the traverse on March 27, 2023 (ECF No. 17).

This matter was referred to the Court under Local Rule 72.2 to prepare a report and recommendation on Petitioner's petition and other case-dispositive motions. Because Petitioner

has had not filed a timely petition, I recommend that the Court deny her petition in its entirety and not grant her a certificate of appealability.[1]

## II. Relevant Factual Background

The Ohio Court of Appeals for the Fifth Appellate District set forth the following facts[2] on direct appeal:

> {¶ 2} On October 3, 2012, the Massillon Fire Department responded to a fire at Appellant's residence. The fire was extinguished in the basement of the home.
>
> {¶ 3} Appellant's defense centered upon the allegation her young son started the fire. Appellant's son did not appear to have any smoke exposure or soot on his person. Appellant cut her hand while allegedly attempting to get her son out of the residence. Appellant appeared to have smoke exposure and tested positive for soot residue on her person.
>
> {¶ 4} Inspector Reginald Winters of the Massillon Fire Department testified he ruled out an electrical shortage as the cause of the fire. Winters determined a mattress was the point of origination for the fire, and there were two distinct start points at separate ends of the mattress. Winters' report concluded the fire was not an accident.
>
> {¶ 5} During an interview with investigators Appellant claimed her three-year old son started the fire while playing with a cigarette lighter. She seemed lethargic and unable to answer the questions posed. She stated she was in the basement folding clothes when she noticed her son by the bed playing with a lighter. Shortly thereafter she noticed a fire on the bed, grabbed a blanket and started fanning the flame. She ran and retrieved a glass of water, but tripped, breaking the glass, falling and cutting her hand. She stated she could not find the phone to call the fire department.

---

[1] As the Court finds that Petitioner has failed to file a timely appeal, it need not address any procedural defaulted claims or merit-based arguments.

[2] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

{¶ 6} At the time of the fire, Appellant lived with her father and his family. Her father had previously discussed finances with her, and the fact she had not been contributing to the household financial situation. Their relationship eventually deteriorated and Jeff Ayers, Appellant's father, told Appellant to leave and care for her own family. Appellant refused to leave. Jeff Ayers testified at trial when he decided to leave, Appellant threatened to burn the house down.

{¶ 7} Additionally, a neighbor of Appellant, Jason Pandrea, testified he heard Appellant threaten her father with burning the house down if he ever left.

{¶ 8} Karen Ball testified at trial she knew Appellant through a church relationship. She visited the residence on the night of the fire to pick up the children for a church activity. She knocked on the door, but received no answer. She heard someone inside the residence say, "Shhh." Ball noticed Appellant's purse on the deck of the residence, which led her to believe Appellant was inside. At approximately 8:00 p.m. the night of the fire, Ball returned to the residence and witnessed some flickering in the window. When Appellant exited the house, she told Ball her son had started the fire.

{¶ 9} Investigator Winters prepared a draft report. He concluded the fire originated on the first floor of the residence. Winters maintains this was a typographical error, and should have read the fire originated in the basement of the residence. Additionally, the report contained several other errors not to be included in the final copy. Winters stated in his testimony at trial the report including the alleged errors was not the final report.

{¶ 10} During pretrial proceedings, Appellant filed two motions in limine. In the first, Appellant sought to exclude evidence of "bad parenting" introduced by the state.

{¶ 11} In the second motion in limine, Appellant sought to exclude evidence of her involvement with Child Protective Services and the Department of Job and Family Services regarding "parenting rights, allegations of lice infestation, and having a dirty home," as well as, evidence regarding her mental health and use of medication.

{¶ 12} Following a jury trial, Appellant was convicted of one count of aggravated arson, in violation of R.C. 2909.02(A)(2), a felony of the second degree, and one count of endangering

>children, in violation of R.C. 2919.22(A), a misdemeanor of the first degree. Appellant was sentenced to an aggregate prison term of seven years.

*State v. Ayers*, No. 2013CA00034, 2013-Ohio-5402, ¶¶ 2–12 (5th Dist. Ohio Dec. 9, 2013).

### III. Relevant State Procedural History

#### a. Indictment, Trial, Verdict, and Sentencing

A grand jury indicted Petitioner on November 6, 2012 for one count of knowingly causing physical harm to an occupied structure in violation of Ohio Revised Code section 2909.02(A)(2) and one count of creating a substantial risk to the health or safety of children by violating a duty of care, protection or support set forth in Ohio Revised Code section 2919.22(A). (ECF No. 15-1, PageID #: 273). Petitioner pleaded not guilty to the counts on November 9, 2012. (ECF No. 15-1, PageID #: 275).

This matter proceeded to trial and the jury issued a verdict January 28, 2013 finding Petitioner guilty of both counts. (ECF No. 15-1, PageID #: 306, 310). The trial court sentenced Petitioner to seven years imprisonment for aggravated arson and one hundred and eighty days for endangering children. (ECF No. 15-1, PageID #: 307). The court ordered Petitioner to serve the sentences concurrently, for an aggregate prison term of seven years. (ECF No. 15-1, PageID #: 307).[3] Petitioner was also ordered to serve three years of post-release control under O.R.C.

---

[3] Petitioner completed her sentence and is no longer in custody. She states she was released from prison on August 22, 2019 and remained on post-release control through August 22, 2022. (*See* ECF No. 14-1, PageID #: 114). However, she was still in custody when she filed her initial habeas petition, and her petition is not moot since she challenges the conviction itself, rather than the sentence. *See Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998); *see also Gentry v. Deuth*, 456 F.3d 687, 693–95 (6th Cir. 2006) (discussing that federal habeas petitions are not moot if the petitioner is out of custody and they are challenging the conviction itself, also discusses the collateral consequences of a conviction, including firearm ownership which is a collateral consequence Petitioner mentions in her memorandum in support of the petition).

§ 2967.28(B). (ECF No. 15-1, PageID #: 308). As discussed below, Petitioner filed her federal habeas corpus petition while she was on post-release control.

### b. Direct Appeal

Petitioner filed a notice of appeal with the Fifth District of the Ohio Court of Appeals on February 20, 2013 and an appellate brief on June 24, 2013. (ECF No. 15-1, Ex. 21 (notice), Ex. 22 (brief)). In her appeal, she raised two assignments of error (sic):

> Assignment of Error No. I: The Appellant's convictions for one count of aggravated arson in violation of R.C. 2909.02 and one count of endangering children in violation of R.C. 2919.22 were against the manifest weight and sufficiency of the evidence.
>
> Assignment of Error No. II: The Appellant was denied effective assistance of counsel due to trial counsel's failure to review the appropriate discovery materials in preparation for trial.

(ECF No. 15-1, PageID #: 314). The State filed an opposition brief on August 22, 2013. (ECF No. 15-1, Ex. 23). On December 9, 2013, the appellate court overruled Petitioner's assignments of error. (ECF No. 15-1, Ex. 24). Petitioner did not make a timely appeal of the court's decision to the Supreme Court of Ohio. Neither did she file an application to reopen her direct appeal under Rule 26(B) of the Ohio Rules of Appellate Procedure.

### c. Additional Motions

Petitioner filed several unsuccessful motions with the Ohio Court of Common Pleas following the appellate court's denial of her direct appeal. On May 28, 2015, she filed a motion to credit her community service hours to her fines, court costs, and/or restitution. (ECF No. 15-1, Ex. 27). She filed a motion for modification of sentence on October 19, 2015 and again on October 27, 2015. (ECF No. 15-1, Exs. 29, 31). Petitioner also filed a motion for judicial release on February 12, 2018. (ECF No. 15-1, Ex. 33). The Ohio trial court denied each motion in turn. (*See* ECF No. 15-1, Exs. 28, 30, 32, 34).

### d. Petition for Post-Conviction Relief and Motion for Leave to File a Motion for a New Trial

Petitioner filed a petition for post-conviction relief pursuant to O.R.C. § 2953.21-23 on April 13, 2020. (ECF No. 15-1, Ex. 35). She incorporated a *motion for a new trial instanter* to the petition. (*See* ECF No. 15-1, PageID #: 416). Petitioner also filed a separate motion for leave to file a motion for a new trial pursuant to Rule 33(B) of the Ohio Rules of Criminal Procedure. (ECF No. 15-1, Ex. 36). She filed an amended petition for post-conviction relief on May 18, 2020, alleging the following "counts" (sic):

> Count One: Ineffective Assistance of Counsel Sixth Amendment to the United States Constitution
>
> Count Two: Prosecutorial Misconduct Fifth and Fourteenth Amendment to the U.S. Constitution
>
> Count Three: Right to Compulsory Process Sixth Amendment to the U.S. Constitution
>
> Count Four: Actual Innocence Fifth, Eighth, and Fourteenth Amendment to the U.S. Constitution
>
> Count Five: Conviction Obtained By Fundamentally Unreliable Evidence Fifth and Fourteenth Amendments to the U.S. Constitution
>
> Count Six: Ohio Constitution Article I, Sections 9, 10 & 16

(ECF No. 15-1, PageID #: 31–34). While Petitioner awaited the appellate court's decision, she filed a habeas corpus petition in the U.S. District Court for the Northern District of Ohio, which is discussed below. (*See* ECF No. 1).

The State filed a motion to dismiss Petitioner's petition for post-conviction relief on December 21, 2020. (ECF No. 15-1, Ex. 39).[4] The Court of Common Pleas for Stark County ultimately denied and dismissed Petitioner's petition for post-conviction relief and her motion for leave to file a motion for a new trial. (ECF No. 15-1, PageID #: 727–28).

Petitioner appealed the trial court's decision on November 29, 2021, and the State filed a response brief. (ECF No. 15-1, Exs. 47, 49). In her supporting brief, Petitioner raised three assignments of error:

>Assignment of Error No. I: The trial court erred by denying Appellant's motion for leave to file a motion for new trial
>
>Assignment of Error No. II: The trial court erred by denying Appellant's first amended petition for postconviction relief
>
>Assignment of Error No. III: The trial court erred by failing to hold an evidentiary hearing

(ECF No. 15-1, PageID #: 741).

The Fifth Appellate District affirmed the trial court's decision on June 6, 2022. (ECF No. 15-1, Ex. 51). Petitioner then filed an appeal notice and memorandum in support of jurisdiction with the Supreme Court of Ohio on July 19, 2022. (ECF No. 15-1, Exs. 52, 53). She raised the following propositions of law in her brief (sic):

>Proposition of Law No. I: A court cannot reject a Crim.R. 33 motion for a new trial which the movant has not filed.
>
>Proposition of Law No. II: The "no reasonable factfinder" standard of Ohio R.C. 2953.23(a)(1)(b) does not apply to new trial motions under Crim.R. 33.

---

[4] The Court notes that the parties filed a number of responses, replies, and supplemental briefs before the trial court issued a judgment entry. For brevity, these filings have not been recounted here.

> Proposition of Law No. III: Where trial counsel fails to consult an independent expert and fails to object to the state's inadmissable, prejudicial expert testimony, that counsel's ineffective assistance undermines all confidence in the jury's verdict and deprives the defendant of her sixth amendment right to a fair trial.

(ECF No. 15-1, PageID #: 876, 878, 880). The State again filed a response brief, and the Supreme Court of Ohio declined to accept jurisdiction on September 27, 2022. (ECF No. 15-1, PageID #: 54, 55).

### e. Federal Habeas Corpus Petition and Stay in Abeyance of State Court Exhaustion

Before the Ohio Court of Common Pleas ruled on Petitioner's petition for post-conviction relief and motion for leave to file a motion for a new trial, Petitioner filed a habeas petition with the U.S. District Court for the Northern District of Ohio on July 27, 2020. (ECF No. 1). The same day, she also filed a *motion to hold Petition for Writ of Habeas Corpus in abeyance pending exhaustion in state court*, which the Court granted on December 3, 2020. (*See* ECF No. 2).

After the Supreme Court of Ohio declined to accept jurisdiction of Petitioner's appeal, she filed a *Notice of Intent to Proceed and Motion to lift stay* which this Court granted. (ECF Nos. 12, 13). Petitioner indicated in her motion that she would seek leave to amend her habeas petition, so the Court proactively ordered Petitioner to file the amended petition. (ECF No. 12, PageID #: 90; ECF No. 13).

Petitioner filed her amended petition on December 19, 2022. (ECF No. 14). In the petition, she asserted the following grounds for relief and supporting paragraphs (sic):

> **Ground One:** Ineffective assistance of counsel Sixth Amendment to the United States Constitution.
>
> **Supporting Paragraphs:**

16. Petitioner's counsel was deficient and fell below an objective standard of reasonableness. Specifically:

   a. Defense counsel failed to consult with an expert witness regarding the origin of the fire.

   b. Defense counsel failed to challenge false and unsupported testimony offered by the State's expert.

   c. Defense counsel failed to object to testimony that should have been barred under Ohio Crim.R.16(K).

17. Petitioner was prejudiced by counsel's ineffective assistance. Based on the totality of the evidence before the jury, there is a reasonable probability that, but-for counsel's unprofessional errors, the result of the proceeding would have been different. Based on her trial attorneys' failures, Ms. Ayers was denied the effective assistance of counsel and her conviction was in violation of her rights under the Sixth and Fourteenth Amendments to the United States Constitution.

**Ground Two:** Prosecutorial misconduct Fifth and Fourteenth Amendments to the U.S. Constitution

**Supporting Paragraphs:**

21. The State committed misconduct and deprived Petitioner of a fair trial by, in violation of Crim.R.16(K), failing to disclose the complete expert opinions of Massillon Fire Inspector Reginald Winters, and by knowingly soliciting previously undisclosed "expert" opinions from Inspector Winters. This misconduct was a fundamental defect in the trial and was inconsistent with rudimentary demands of fair procedure.

22. In addition, the State knew or should have known that Reginald Winters's testimony regarding the origin of the fire was false, unsupported, and/or unqualified. The State committed misconduct by soliciting this testimony and leaving it uncorrected on the record.

23. The State's misconduct prejudiced Petitioner. There is a reasonable probability that, but-for the State's misconduct, the result of the proceeding would have been different.

24. The State's misconduct deprived Petitioner of a fundamentally fair trial and infected the trial with unfairness such that the resulting conviction was a violation of due process.

**Ground Three:** Conviction obtained by fundamentally unreliable evidence Fifth and Fourteenth Amendments to the U.S. Constitution.

**Supporting Paragraphs:**

27. Specifically, the testimony of Reginald Winters regarding the origin of the fire was incorrect, unsupported, and/or fundamentally unreliable in key respects. The probative value of Winters' testimony, if any, was greatly outweighed by the prejudice to Petitioner from its admission. Its role in Petitioner's conviction is a fundamental defect which inherently results in a miscarriage of justice.

28. This testimony was central to the State's case against Petitioner. But-for Reginald Winters' false, unsupported, and/or materially misleading testimony, Petitioner would not have been convicted.

29. Winters' testimony undermined the fundamental fairness of Petitioner's trial because the testimony was itself false, unsupported, or unreliable. Insofar as Petitioner's conviction depends on evidence now known to be false, unsupported, and/or materially misleading, that conviction is inconsistent with the United States Constitution's guarantee of due process.

**Ground Four:** Actual innocence Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

**Supporting Paragraphs:**

31. Newly-discovered evidence demonstrates that Petitioner is actually innocent of the charges for which she was convicted. Specifically, Inspector Winters' testimony regarding the origin of the fire is false, and the fire was, in fact, accidental.

[. . .]

32. As a result, Petitioner's conviction and the ongoing effects of her conviction are inconsistent with the U.S. Constitution's guarantee of due process of law.

(ECF No. 14, PageID #: 95–98). Respondent filed a return of writ on February 10, 2023, and Petitioner filed a traverse on March 20, 2023. (ECF Nos. 15, 16). Finally, Respondent filed a reply to the traverse on March 27, 2023. (ECF No. 17).

IV. **Law and Analysis**

a. **Statute of Limitations under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus under 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1).

A conviction becomes final under § 2244(d)(1)(A) when direct review concludes, not when the petitioner has exhausted all state remedies. *See Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001); *see also Bronaugh v. Ohio*, 235 F.3d 280, 283–84 (6th Cir. 2000) (noting that the one-year limitations period under § 2244(d)(1)(A) does not begin to run until the day after the petition for a writ of certiorari was due in the Supreme Court). A judgment is final when the time to file a direct appeal to the state appellate court expires unless the state appellate court grants a motion to file an out-of-time appeal. *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009).

An Ohio criminal defendant has thirty days from the date his conviction and sentence become final to file a timely direct appeal. Ohio R. App. P. 4(A).

The habeas one-year statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." § 2244(d)(2); *see also Lopez v. Wilson*, 426 F.3d 339, 351–52 (6th Cir. 2005) (en banc) (holding that a motion to reopen under Rule 26(B) of the Ohio Rules of Appellate Procedure is a collateral proceeding). A post-conviction relief petition is considered "properly filed" only if it meets the applicable state rules governing filing. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Walker v. Smith*, 360 F.3d 561, 563 (6th Cir. 2004). "[T]ime limits, no matter their form, are 'filing' conditions." *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Untimely post-conviction petitions or other collateral motions do not toll the AEDPA statute of limitations, despite any exceptions to the timely filing requirement that might exist under state law. *See id.* at 413–14.

### b. Untimely Petition

Respondent argues that Petitioner's AEDPA statute of limitations began running on January 24, 2014—a day after her conviction became final because her time to file an appeal with the Supreme Court of Ohio expired. (ECF No. 15, PageID #: 154). Thus, Respondent contends that the statute of limitations expired on January 26, 2015. (ECF No. 15, PageID #: 154). Petitioner argues that the statute of limitations began running on July 29, 2019—the date she obtained a report from John Lentini, a forensic arson expert. (ECF No. 14-1, PageID #: 132; ECF No. 16, PageID #: 1433, 1438, 1440).

The Court agrees with Respondent. Petitioner's judgment became final on January 26, 2015—when her time to file a notice of appeal to the Ohio Supreme Court expired. Ohio R. App.

P. 4(A). Thus, Petitioner's statute of limitations under § 2244(d)(1)(A) began on January 24, 2014 and expired on January 26, 2015—a year later. Petitioner filed the instant petition on July 27, 2020, over five years after the AEDPA statute of limitations expired. (*See* ECF No. 1).

The Court notes that under § 2244(d)(1) the one-year statute of limitations begins to run from the latest time prescribed in the four subsections. Petitioner attempts to argue that the statute of limitations under § 2244(d)(1)(D) did not begin running until the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." (ECF No. 14-1, PageID #: 132; ECF No. 16, PageID #: 1440). Specifically, she argues that the date of the factual predicate of her claim is the day she obtained Mr. Lentini's expert report, which contradicted the trial testimony of the State's arson expert. (*See* ECF No. 14-1, PageID #: 132–33). In her memorandum in support of her amended petition, she argues that all of her habeas claims rely on evidence from Mr. Lentini's report. (*See* ECF No. 14-1, PageID #: 132) ("Each of Ms. Ayers's claims relies on evidence outside the record. Specifically, the claims are supported by scientific evidence from an independent arson expert, obtained on July 29, 2019.").[5]

But Petitioner fails to demonstrate that she could not have obtained Mr. Lentini's report—or any expert report—through due diligence prior to July 29, 2019. *See DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) ("[T]he petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D)."); *see also Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002) ("The petitioner has the burden of

---

[5] The Court has reviewed the claims and agrees that there is an argument to be made that Mr. Lentini's report relates to each claim.

13

persuading the court that he has exercised due diligence in his search for the factual predicate of his claim."). Notably, "§ 2244(d)(1)(D) 'does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." *DiCenzi*, 452 F.3d at 470 (quoting *Granger v. Hurt*, 90 F. App'x 97, 100 (6th Cir. Jan. 23, 2004)).

In her memorandum in support of her habeas petition, Petitioner appears to blame her trial counsel for her inability to retain expert testimony before the AEDPA deadline:

> Ms. Ayers's trial attorneys failed her. They failed to retain or even consult with an independent fire expert regarding the origin of the fire. They failed to meaningfully challenge the State's expert, Reginald Winters, and they failed to recognize the serious flaws in Winters' opinions and qualifications. As a result of those failures, the jury was presented with a false picture of the fire's origin. Federal law does not require that the court put these failures on the shoulders of a twenty-three-year old criminal defendant, nor should the court hold Ms. Ayers to a higher standard of diligence and care than both the City of Massillon Fire Inspector and the professional attorneys retained to investigate and challenge the claims against her.

(ECF No. 14-1, PageID #: 133). However, Petitioner cannot blame her counsel for failure to obtain the information in Mr. Lentini's report since *Petitioner* must demonstrate due diligence in obtaining the new factual predicate under § 2244(d)(1)(D). *See DiCenzi*, 452 F.3d at 471 ("*[T]he petitioner* bears the burden of proving that *he* exercised due diligence," emphasis added).

Here, Petitioner had several opportunities to raise her counsel's decision not to call an expert and failed to do so. Since she witnessed her trial—and the State's expert testify—she would have known it was possible to call an expert.[6] But she neglected to raise her trial counsel's

---

[6] Indeed, in her direct appeal, Petitioner specifically references the testimony of the State's expert in her second assignment of error. (*See* ECF No. 14-1, PageID #: 326–28).

14

failure to obtain an expert as an error on direct appeal.[7] (*See* ECF No. 15-1, Ex. 22). Petitioner had another opportunity to pursue this claim by filing an application to reopen under Rule 26(B) of the Ohio Rules of Appellate Procedure. If she had filed this application, she could have alleged that her appellate counsel failed to raise such a claim on direct appeal. But Petitioner did not file such an application. As Petitioner failed to take advantage of any of these opportunities, or retain an expert herself, she has not demonstrated "reasonable" due diligence in pursuing this claim. *See DiCenzi*, 452 F.3d at 470.

Thus, the Court finds the statute of limitations under § 2244(d)(1)(D) does not apply here. Rather, under § 2244(d)(1)(A), Petitioner's statute of limitations began on January 24, 2014 and expired on January 26, 2015.

   c. **Equitable Tolling**

The inquiry does not end, however, at the determination of statutory tolling: The Court must next consider whether Petitioner is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S 631, 645–46 (2010) (stating that because the AEDPA's limitations period is not jurisdictional, it may be equitably tolled). If a petitioner seeks equitable tolling, then he must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Id.* at 649 (quoting *Pace*, 544 U.S. at 418). "The petitioner bears the burden of demonstrating he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). Notably, a petitioner's pro se status or ignorance of procedural requirements "are not sufficient to constitute an extraordinary circumstance and to excuse his late filing." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d

---

[7] While Petitioner raised ineffective assistance of counsel as an assignment of error, she raised the issue in relation to her trial counsel's failure to review discovery, not their failure to retain an expert witness. (*See* ECF No. 15-1, PageID #: 326–29).

452, 464 (6th Cir. 2012) (citing *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751–52 (6th Cir. 2011); *Winkfield v. Bagley*, 66 F. App'x 578, 583 (6th Cir. 2003)).

Petitioner has failed to demonstrate that equitable tolling applies here. In her brief, she simply states she has "not intentionally or negligently delayed her filing" and argues the State's use of "unscientific and unsupported expert testimony" and her unwarranted faith in her attorneys constitutes "exceptional circumstances." (ECF No. 14-1, PageID #: 134).

However, none of these arguments demonstrate that she diligently pursued her rights or that extraordinary circumstances prohibited her from making a timely filing. Petitioner submitted her habeas petition five years after her AEDPA deadline and has not indicated any attempts at retaining an expert report prior to July 2019. Her failure to pursue her claims on direct appeal, or through an application to reopen her direct appeal, further belies any due diligence in pursuing her rights.

Further, she cites no case law demonstrating that the trial witness's "unscientific and unsupported" testimony or counsel's failure to retain an expert witness constitute "extraordinary circumstances" described in *Holland*. *See* 560 U.S at 649. Thus, the Court finds Petitioner has neither exercised due diligence nor argued that some extraordinary circumstance stood in her way and prevented timely filing. Accordingly, Petitioner is not entitled to equitable tolling.

### d. Actual Innocence

A credible showing of actual innocence is also grounds for granting equitable tolling. *Steward v. Wilson*, 555 F. Supp. 2d 858, 870–71 (N.D. Ohio 2006). But Petitioner does not meet the exceptionally high bar for actual innocence for this Court to overlook her untimely filing. *See Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005) ("The actual innocence exception would be limited to the rare and extraordinary case where a petitioner can demonstrate a credible claim of

actual innocence and the one-year limitations window has closed."); *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018) ("The exception 'applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner].'"). Petitioner must generally show that "no reasonable factfinder would have found the applicant guilty of the underlying offense" with the new evidence to qualify for the "actual innocence" standard. *See McQuiggin v. Perkins*, 569 U.S. 383, 384 (2013) (quoting §§ 2244(b)(2)(B)(ii), 2254(e)(2)); *see also Schlup v. Delo*, 513 U.S. 298, 329 (1995) (holding that the *Murray v. Carrier*, 477 U.S. 478 (1986), actual innocence standard requires "a petitioner to show that it is more likely than not that 'no reasonable juror' would have convicted him.").

Here, Petitioner argues that Mr. Lentini's report is "credible evidence of her actual innocence" and that "it is now likely that no reasonable juror would convict her." (ECF No. 14-1, PageID #: 135). But even if she is right—and the Lentini report completely disproves the testimony of the State's witness—Petitioner disregards the remainder of the State's argument. The trial witness was not the only fact the State relied upon. In fact, the State highlighted several unfavorable facts in its closing argument. First, the State referenced Petitioner's former threats to burn the house down. (ECF No. 15-2, PageID #: 1355). Next, it noted that Petitioner was the only person at the scene of the fire when it began and the only individual with soot on their person. (ECF No. 15-2, PageID #: 1349–50). Finally, the State referenced Petitioner's changing account of how the fire started. (ECF No. 15-2, PageID #: 1351–52, 1354). Based on this evidence, there were several facts supporting Petitioner's guilt, and she has failed to show that "no reasonable factfinder would have found the applicant guilty of the underlying offense." *See McQuiggin*, 569 U.S. at 384.

As this petition is untimely, equitable tolling does not apply, and Petitioner has not met the burden of proving actual innocence, the Court recommends the petition be dismissed.

V. **Certificate of Appealability**

a. **Legal Standard**

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

b. **Analysis**

Petitioner's petition is untimely. If the Court accepts the foregoing recommendation, Petitioner would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

VI. **Recommendation**

Petitioner has filed an untimely petition. Thus, I recommend that the Court deny her petition in its entirety and not grant her a certificate of appealability.

Dated: June 13, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).