# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KAYLA JEAN AYERS, | ) | CASE NO. 5:20-cv-1654 |
| | ) | |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| OHIO DEPARTMENT OF | ) | |
| REHABILITATION AND CORRECTIONS, | ) | |
| DIRECTOR, | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Carmen E. Henderson, recommending dismissal of the petition for writ of habeas corpus filed, pursuant to 28 U.S.C. § 2254, by petitioner Kayla Jean Ayers ("Ayers" or "petitioner"). (Doc. No. 18.) Ayers filed timely objections to the R&R, pursuant to Fed. R. Civ. P. 72(b)(2). (Doc. No. 20.) Respondent Director of the Ohio Department of Rehabilitation and Corrections ("Respondent") filed no opposition to the objections and the time for doing so under the rule has expired. Because the petition is time-barred, and Ayers is not entitled to equitable tolling, the petition is dismissed.

## I.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is

dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.") "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). After review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## II.  TIMELINESS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("ADEPA"), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This one year period runs from the latest of four events: the date on which the state court judgment became final by the conclusion of direct review; the date on which a State-created impediment to filing an application has been removed; the date on which a constitutional right is newly-recognized by the Supreme Court; or the date on which the factual predicate of the claims presented could have been discovered through the exercise of due diligence. § 2244(d)(1)(A)–(D).

The statute of limitations is subject to equitable tolling in circumstances where a petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (internal quotation marks and citation omitted). The

2

Sixth Circuit has stated, however, that "federal courts sparingly bestow equitable tolling." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc*., 209 F.3d 552, 560 (6th Cir. 2000) (citing cases); *see, e.g., Hall v. Warden, Lebanon Corr. Inst*., 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010)). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Graham-Humphreys*, 209 F.3d at 560–61 (citation omitted). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Id*. at 561 (citation omitted). The petitioner bears the burden of proof and must satisfy both prongs of the test to be entitled to equitable tolling. *See Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 256, 136 S. Ct. 750, 193 L. Ed. 2d 652 (2016); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005).

## III.    DE NOVO REVIEW

### A.    Ayers' Petition and the R&R

The R&R sets forth the factual predicate for the underlying criminal offenses, as found by the state appellate court, as well as the procedural history in the state courts, including Ayers' 2013 jury trial, which resulted in convictions for aggravated arson and endangering children. Ayers does not take issue with the magistrate judge's recitation of the factual and procedural history, and the Court accepts the magistrate judge's summary, as if rewritten herein. (Doc. No. 18, at 2–8.[1])

For purposes of resolving Ayers' objections to the R&R, it is sufficient to note that Ayers was convicted of crimes surrounding the 2012 fire that started in the basement of her father's house

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

in Massillon, Ohio. At the time of the fire, Ayers and the youngest of her three children, a three-year old boy, were the only persons in the house and both managed to escape. The defense's theory was that Ayers' son, whom Ayers claimed was playing with a cigarette lighter, had accidently set the fire. At trial, the prosecution called Inspector Reginald Winters ("Winters") of the Massillon Fire Department, who had investigated the fire and provided expert testimony on the origins of the fire. He opined that a mattress in the basement was the point of origination of the fire, and that there were two distinct start points at separate ends of the mattress. He further opined that if Ayers' son had started the fire, he would have had to light the fire at one end of the mattress and then crawl across the burning mattress to light it at the second ignition point. *See State v. Ayers*, No. 2021CA00134, 2022 WL 1946586, at *1–4 (Ohio Ct. App. June 6, 2022).

Following the jury trial and guilty verdicts, Ayers was sentenced to an aggregate term of imprisonment of seven years and was released from prison on August 22, 2019.[2] (*Id*. at 4 n.3; *see* Doc. No. 15-1 (Judgment Entry, dated 02/01/2013), at 39–42.) On July 27, 2020, Ayers filed, through counsel, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) The federal habeas proceedings were stayed while Ayers attempted to exhaust her claims in state court. (Order [non-document], 12/03/2020; *see* Doc. No. 2 (Motion to Hold in Abeyance).) Following the resolution of state collateral proceedings and the Court's lifting of the stay, Ayers amended her petition on December 19, 2022. (Doc. No. 14 (Amended Petition).)

As amended, Ayers' petition raised four grounds for relief. In Count One, Ayers alleged that trial counsel was ineffective for failing to consult with an expert witness regarding the origin

---

[2] The Court agrees with the magistrate judge's conclusion that Ayers' habeas petition was not rendered moot upon her release from prison, as her petition challenges her convictions, rather than her sentence, and Ayers maintains that she continues to suffer collateral consequences resulting from her convictions. (*See* Doc. No. 18, at 4 n.3 (citing cases).)

of the fire and for failing to challenge the State's purportedly false expert testimony. (*Id.* ¶¶ 14–17.) In Count Two, Ayers asserted that the prosecution violated her due process rights when it offered at trial a previously undisclosed expert opinion, in violation of Ohio R. Crim. P. 16(K), that was also false and unsupported by the record. (*Id.* ¶¶ 18–21.) Count Three alleged that the State's expert testimony was unreliable, false, and unsupported, and resulted in a verdict that was fundamentally unfair. (*Id.* ¶¶ 25–29.) Finally, Count Four purported to raise a claim of "actual innocence," again premised on the notion that the expert testimony offered at trial was flawed. (*Id.* ¶¶ 30–32.)

In her R&R, the magistrate judge recommends that the petition be dismissed as untimely. (Doc. No. 18, at 18.) In support, the magistrate judge determined that Ayers' judgment became final on January 24, 2014—when her time to file a notice of appeal to the Ohio Supreme Court expired—and that, therefore, the statute of limitations under 28 U.S.C. § 2244(d)(1)(A) began to run on January 24, 2014, and expired a year later on January 26, 2015. (*Id.* at 12–13.) Accordingly, Ayers' federal petition, filed more than five years after the expiration of the one-year statutory filing period (on July 27, 2020), was untimely under § 2244(d)(1)(A). (*Id.* at 13.)

In so ruling, the magistrate judge determined that Ayers could not take advantage of § 2244(d)(1)(D), which allows for the filing of a federal habeas petition within one year of the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Counts One, Three, and Four of the amended petition directly relied on the July 29, 2019 expert report of John J. Lentini (the "Lentini Report"), that challenged several of the conclusions reached by Winters. (Doc. No. 15-1 (Lentini Report), at 233–51.) Of particular relevance, the Lentini Report questioned Winters' conclusion that the fire had two points of origin.

5

(*Id.* at 237–38.) The magistrate judge recommends that the Court find that Ayers had failed to demonstrate that she could not have obtained the Lentini Report—or any other expert report on the origin of the fire—through due diligence prior to July 2019. (Doc. No. 18, at 13.)

Additionally, the magistrate judge rejected Ayers' suggestion that the limitations period should be equitably tolled, finding that her trial counsel's failure to obtain an expert witness did not rise to the level of an "extraordinary circumstance," as described in *Holland*, 560 U.S. at 649. (*Id*. at 16.) The magistrate judge also discounted Ayers' claim that she is actually innocent of the crimes for which she was convicted in state court. (*Id*. at 16–17.) Specifically, the magistrate judge found that, based on all of the evidence offered at trial—including testimony that Ayers had previously threatened to burn down her father's house—Ayers had failed to demonstrate "that 'no reasonable factfinder would have found [her] guilty of the underlying offense[s].'" (*Id*. at 17 (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 384, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013)).)

**B.    Ayers' Objections**

Ayers does not take issue with the magistrate judge's determination that her federal habeas petition was untimely under 28 U.S.C. § 2244(d)(1)(A), which requires such petitions to be filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" (Doc. No. 18, at 12–13[3]; *see* Doc. No. 20, at 2 ("For purposes of [p]etitioner's [o]bjections, the primary issue is the application of § 2244(d)(1)(D)").) Rather, her objections focus on the magistrate judge's recommendations that

---

[3] Ayers also does not suggest that her petition is timely under § 2244(d)(1)(B)—allowing for filing within one year of "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"—or under § 2244(d)(1)(C)—allowing for filing within one year of "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]"

this Court find her petition untimely under § 2244(d)(1)(D), and that it find that Ayers was not entitled to equitable tolling due to her counsel's ineffectiveness or as someone who was actually innocent of the offenses for which she was convicted.

### 1. *Ayers did not Exercise Due Diligence (28 U.S.C. § 2244(d)(1)(D))*

In her first objection, Ayers contends that the magistrate judge failed to properly consider whether she was reasonably diligent, under § 2244(d)(1)(D), in uncovering the factual predicate for her ineffective assistance of counsel claim; namely, the opinions contained in the Lentini Report. (Doc. No. 20, at 3–9.) In particular, Ayers complains that the magistrate judge neglected to take into consideration the "realities of the prison system," including a prisoner's access to information. (*See id.* at 3.) She notes that it was not until her current counsel secured an independent expert report—something she claims she could not have done on her own—that the basis for her ineffectiveness claim became evident. (*Id.* at 9.) According to Ayers, "[g]iven the 'reality of the prison system,' the complicated nature of the State's expert arson conclusions, and the limited resources available to [] Ayers during her imprisonment, it is a miracle [Ayers] obtained an expert forensic review at all." (*Id.*)

Under § 2244(d)(1)(D), the limitations period commences when the factual predicate for the claim could have been discovered through the exercise of due diligence. *Souter v. Jones*, 395 F.3d 577, 586 (6th Cir. 2005); *Brooks v. McKee*, 307 F. Supp. 2d 902, 905–06 (E.D. Mich. 2004) (citing cases). This period begins when the petitioner knows or could have discovered the important facts for the claim, not when the petitioner recognizes the legal significance of those facts. *Brooks*, 307 F. Supp. 2d at 905–06. The start of the limitations period also "does not await the collection of evidence which supports the facts." *Id.* at 906; *see Flanagan v. Johnson*, 154 F.3d

196, 199 (5th Cir. 1998) ("Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim.") Moreover, newly discovered information "that merely supports or strengthens a claim that could have been properly stated without the discovery . . . is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)D)." *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (quotation marks and citation omitted).

Petitioner bears the burden of establishing her entitlement to delayed commencement of the limitations period under § 2244(d)(1)(D). *See DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006); *Redmond v. Jackson*, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) (citing *Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2022)). To meet this burden, a petitioner must "specify how the factual predicate of [her] claims could not have been discovered earlier" and "indicate what steps, if any, [s]he took to discover these claims." *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750 (E.D. Mich. 2002).

In an effort to demonstrate due diligence, Ayers points to the fact that, on June 27, 2013, she filed a motion for the appointment of counsel to assist with a petition for postconviction relief, which was ultimately denied by the trial court in an order noting that Ayers was already represented by appellate counsel and her direct appeal was still pending. (Doc. No. 20, at 7 (citing Doc. No. 15-1 (Motion for Counsel), at 108–110)); *see* Doc. No. 15-1 (Judge Entry Denying Motion), at 111.) The motion makes no reference to obtaining an expert or otherwise challenging Winters' testimony. (*See* Doc. No. 15-1, at 108–110.) Moreover, it is well settled that there is no constitutional right to appointed counsel when pursuing a discretionary appeal. *See Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) (holding that "the right to

appointed counsel extends to the first appeal of right, and no further").

Beyond this motion for counsel, filed within five months of Ayers' sentencing, the only other indication of any efforts Ayers made to discover the factual predicate for her claims is supplied by Ayers' counsel, who represents that Ayers "continued to assert her innocence and continued to reach out for help, including to the Ohio Innocence Project [OIP]." (Doc. No. 20, at 9.) But counsel does not indicate when Ayers contacted the OIP, who else she contacted, or when these other inquiries were made. An affidavit prepared by a student-fellow with OIP, offered in support of a motion for leave to file a motion for a new trial in state court, suggests that Ayers may have reached out to OIP sometime in mid-2019, as it indicates that Lentini reviewed materials from Ayers' case in "the summer of 2019[.]" (Doc. No. 15-1 (Affidavit of Brian Davis), at 260, ¶ 2.) The affidavit further states that, thereafter, students and attorneys from OIP interviewed Winters, issued a public records request, and researched issues relevant to the filing of a motion for a new trial. (*Id*. at 260–61, ¶¶ 3–6.)

The Court agrees with the magistrate judge that Ayers has failed to meet her burden of demonstrating due diligence. Assuming that Ayers' motion for counsel can be considered an effort to discover the factual predicate for her ineffective assistance of counsel claim, Ayers points to no efforts she made between July 2013 and mid-2019 to pursue her claim.[4] Her counsel's representations that, on unspecified dates, Ayers reached out to unknown individuals for assistance

---

[4] Ayers also delayed a year after her counsel obtained the Lentini Report before she filed her federal petition. While the record suggests that current counsel may have attempted, during this time period, to acquire additional evidence through public record requests, the start of the limitations period under § 2244(d)(1)(D) does not await the collection of evidence. *Brooks*, 307 F. Supp. 2d at 906; *see Flanagan*, 154 F.3d at 199.

are simply insufficient to satisfy her burden.[5] *See, e.g., Kuzma v. Campbell*, No. 1:15-cv-1130, 2021 WL 2820661, at *5 (W.D. Mich. July 7, 2021) (refusing to find petitioner satisfied burden to show due diligence under § 2244(d)(1)(D) with a general assertion that he "'diligently sought out help from anyone who[] would listen'").

Nevertheless, Ayers argues that the Court should take into consideration the "realities of the prison system" in assessing whether she has demonstrated due diligence. In her affidavit, Ayers avers that she had only a tenth grade education, she did not know anything about arson investigation, and did not have funds to hire an attorney for post-conviction proceedings or hire a private arson expert. (Doc. No. 15-1 (Affidavit of Kayla J. Ayers), at 228, ¶¶ 9–10.) "Being a prisoner without financial resources[, however,] is not sufficient to demonstrate that a duly diligent person in [Ayers'] circumstances could not have discovered the factual predicate for [her] claim." *Kuzma*, 2021 WL 2820661, at *5; *see also Parkin v. MacLaren*, No. 1:18-cv-493, 2018 WL 8452436, at *3 (W.D. Mich. June 18, 2018) ("The fact that Petitioner is untrained in the law, was proceeding without a lawyer for a time, or may have been unaware of the statute of limitations does not warrant tolling") (collecting cases), *R&R adopted*, 2019 WL 2297289 (W.D. Mich. May 30, 2019), *certificate of appealability denied*, *Parkin v. Rewerts*, No. 19-1672, 2019 WL 6869683 (6th Cir. Sept. 16, 2019); *Howard v. Brewer*, No. 2:15-cv-13765, 2017 WL 783494, at *6 (E.D. Mich. Mar. 1, 2017) (similar) (citing, among authority, *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) (*pro se* status is not an extraordinary circumstance)).

---

[5] The Court also notes that a party's briefs or statements of counsel are not evidence. *Bennett v. Louisville Metro. Gov't*, 616 F. App'x 820, 823 (6th Cir. 2015).

Ayers' reliance on the decision in *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006) is misplaced. In *DiCenzi*, the Sixth Circuit remanded the case to the district court "to allow it to determine when a defendant in DiCenzi's position, acting with due diligence for AEDPA statutory purposes, would have discovered his right to an appeal." *Id*. at 472. In that case, there was no evidence in the record that the petitioner was informed of his right to an appeal at the time he was convicted and sentenced; moreover, the petitioner pointed out that, when he was first informed of his appellate rights over two years thereafter, he immediately filed a motion for leave to file a delayed appeal and filed "repeated pleadings noting that he was never informed of his right to an appeal" from that point on. *See id*. at 467, 471. Without factual findings from the district court, the Sixth Circuit ruled that it could not determine the timeliness of the petitioner's habeas petition. *Id*. at 471.

Here, both the magistrate judge and this Court have considered the record, and this Court has now determined that Ayers has failed to exercise due diligence under § 2244(d)(1)(D). *See Webb v. United States*, 679 F. App'x 443, 448–49 (6th Cir. 2017) (distinguishing *DiCenzi* on similar grounds). And while the court in *DiCenzi* noted that § 2244(d)(1)(D) "does not require the maximum feasible diligence[,]" this Court finds that Ayers failed to demonstrate that she exercised *any* diligence in the five-year period before she obtained the Lentini Report. *See DiCenzi*, 452 F.3d at 470 (quoting *Granger v. Hurt*, 90 F. App'x 97, 100 (6th Cir. 2004) (further citation omitted)). Ayers bore the burden of proof on this issue, *see McSwain v. Davis*, 287 F. App'x 450, 454–55 (6th Cir. 2008), and her failure to show any effort during this gap is fatal to her timeliness claim under § 2244(d)(1)(D). *See, e.g., Shorter v. Richard*, 659 F. App'x 227, 232 (6th Cir. 2016)

11

(discussing the ruling in *DiCenzi* and finding that a substantial delay in seeking appellate review precluded petitioner from establishing due diligence).[6]

Ayers also suggests, however, that no lay person could have "evaluated the soundness of Inspector Winters'[] testimony just by observing the trial." (Doc. No. 20, at 6.) Noting that expert testimony, "by definition," "relates to matters beyond the knowledge or experience possessed by lay persons," Ayers maintains that "[i]f Inspector Winters'[] arson science conclusions were readily subject to evaluation by [] Ayers in real time, then they would not be expert conclusions in the first place." (*Id*. at 7.) In essence, she argues that one always needs an expert to know if one needs an expert.

A panel of the Sixth Circuit has rejected this very argument. *Stokes*, 36 F. App'x at 805 ("Indeed, the essence of Stokes'[] claim is that because he needed an expert to determine whether he needed an expert, he could not have discovered that he needed an expert until he had an expert. While we do not hold here that such a claim would never have merit, it is patently obvious that it has no merit here.") In *Stokes*, the petitioner initiated a federal habeas action claiming, in part, that his counsel was ineffective for failing to "investigate the scientific literature and to find expert witnesses to rebut the state's expert witnesses with regard to child abuse allegations and child victim testimony." *Id*. at 804–05. The court found that the fact that petitioner's subsequently obtained expert witness averred that trial counsel should have been aware of the large body of

---

[6] In particular, the court noted that, "Petitioner has given no explanation for the five-year delay in filing a Rule 5(A) motion[.] . . . For his petition to be timely, Petitioner would have to convince this Court that a duly diligent person in his circumstances would have delayed a full five years in filing his motion for direct appeal. . . . We agree with the district court that on this record, Petitioner did not meet his burden of demonstrating due diligence to discover his appellate rights in the five-year period between his sentencing (and receiving the letter from his attorney), and the conversation with a fellow inmate in 2013 that spurred Petitioner's motion for delayed appeal." *Shorter*, 659 F. App'x at 232  (internal citation omitted).

literature available on the subject, and that appellate counsel should have been aware that this readily available information was not utilized at trial, belied his claim that expert help was necessary to discover his attorney's alleged poor performance. *Id*. at 805. Ultimately, the court found that the fact that petitioner offered no explanation for his six year delay in seeking an expert prevented him from demonstrating that he exercised due diligence to discover the factual predicate for his claim. *Id*.

Similarly, here, Ayers seems to simultaneously argue that her counsel was clearly ineffective for failing to consult with an expert on the subject of fire origin to test Winters' testimony and that there was no way for *anyone*, including trial counsel, to understand that Winters' testimony was deficient without the assistance of an expert. Winters represents that his opinions were based on the 2011 Edition of the National Fire Protective Association 921: Guide for Fire and Explosion Investigations ("NFPA-921"), which is a well "recognized guide for assessing the reliability of expert testimony in fire investigations." *Indiana Ins. Corp. v. Gen. Elec. Co*., 326 F. Supp. 2d 844, 849 (N.D. Ohio 2004) (collecting cases). (Doc. No. 15-1 (Report of Inspector Reggie Winters), at 231–32.) The Lentini Report, in turn, relies on this well-recognized guide to demonstrate what its author believes are shortcomings in Winters' conclusions and analyses. (*See, e.g*., Doc. No. 15-1, at 239–40 (using NFPA-921, § 22.2.1, to criticize Winters' conclusion that there were multiple points of ignition).) If it should have been evident to counsel that he ought to have tested Winters' conclusions under the NFPA-921 with an expert witness, then Ayers cannot maintain that she (or any non-scientific person) could not have known of the need to obtain an expert until she had secured one through counsel more than five years after her sentence was final.

13

Ayers' attempt to analogize this case to *Ege v. Yukins*, 485 F.3d 364 (6th Cir. 2007) is unavailing. The defendant in *Ege* had been convicted of murder almost exclusively on the strength of the expert testimony of a witness who opined that an alleged bite mark on the victim's body was highly consistent with Ege's dentition. *Id*. at 368. Approximately five years after Ege was sentenced, her counsel became aware of a letter from the Wayne County Prosecutor's Office concerning the unreliability of the same expert in two cases it prosecuted. In the letter, the prosecutor's office stated unequivocally that it would not approve warrants in the future supported primarily by the testimony of this expert. *Id*. at 370. In finding that the letter provided a critical factual predicate to Ege's due process claim, sufficient under § 2244(d)(1)(D) to start the running of the one-year limitations period, the Sixth Circuit characterized the science relied on by the expert as "complete bunk," and the expert who had provided the questionable testimony as a "charlatan." *Id*. at 373.

The Lentini Report is a far cry from the prosecutor's letter in *Ege*. While Ayers suggests that her expert's report demonstrates that Winters' testimony was based on "junk science" and was, in fact, "false" (*see* Doc. No. 1-2 at 1, 26, 27, 30; Doc. No. 20, at 5), "[s]imply showing that an expert's opinion is inaccurate or wrong, however, does not violate due process or demonstrate that the expert lied." *Sutton v. Bell*, No. 3:06-cv-388, 2011 WL 1225891, at *7 (E.D. Tenn. Mar. 30, 2011) (citation omitted). As the state appellate court observed in response to Ayers' collateral appeal, "[i]t is not unusual in a case in which highly technical, medical or other specialized evidence is presented for the experts presented by each party to criticize the other's training, methodology, and/or conclusions." *Ayers*, 2022 WL 1946586, at *12. "When a so-called 'battle of

14

the experts' takes place during a jury trial such criticisms go to the weight not the admissibility of each expert's opinion." *Id.*

Ayers' belated attempt to create a "battle of the experts" does not supply a critical factual predicate sufficient to start the limitations period under § 2244(d)(1)(D). In *Ege*, the disgraced bite mark expert's testimony represented the only evidence that tied the defendant to the scene of the murder, and the only physical evidence against the defendant. *Ege*, 485 F.3d at 370. As discussed more thoroughly below in response to Ayers claim that she is "actually innocent," Winters' testimony was not the only evidence tying Ayers to the fire. The Lentini Report did not exclude Ayers as a suspect or otherwise demonstrate that she could not have set the fire that underlies her convictions. It cannot, therefore, supply the basis for finding her petition timely.

For all of these reasons, the Court finds that Ayers has not demonstrated that she exercised due diligence under § 2244(d)(1)(D), and her first objection is overruled.[7]

### 2. *Ayers is not Entitled to Equitable Tolling*

Ayers also objects to the magistrate judge's determination that her trial counsel's failure to obtain an expert witness to test Winters' testimony did not represent "egregious behavior" sufficient to warrant equitable tolling under *Holland*, 560 U.S. at 649. (Doc. No. 20, at 12.) She

---

[7] Ayers also takes the magistrate judge to task for suggesting that Ayers should have, but did not, raise the issue of her trial counsel's ineffectiveness on direct appeal. (Doc. No. 20, at 10 (citing Doc. No. 18 at 15).) She correctly notes that, under Ohio law, a defendant is not required to raise issues of ineffective assistance of counsel on direct appeal if the claim depends on factual allegations that cannot be determined by an examination of the record. *See generally State v. Cole*, 443 N.E.2d 169, 169–70 (Ohio 1982). While the Lentini Report was not part of the trial court record, the fact that trial counsel did not call a competing expert witness was. Additionally, the Lentini Report identifies the NFPA-921 as the "generally accepted standard" for fire investigation and provides that Winters' testimony is clearly "at odds" with this "generally accepted fire investigation methodology." (Doc. No. 15-1, at 250.) He also complains that Winters' conclusions were "circular" in nature, adding that he had "rarely seen such speculative testimony actually admitted into evidence." (*Id.* at 245.) If Winters' conclusions were that deficient, this should have been evident to appellate counsel, even without the Lentini Report, and counsel could have raised it on direct appeal. Nevertheless, the Court need not resolve this procedural dispute. Even if the issue could not have been raised until a collateral appeal, Ayers inexplicably still waited several years before she attempted to raise the issue on state collateral review.

argues that her trial counsel's "endorsement of the State's junk science was an extraordinary circumstance that hampered [Ayers'] ability to uncover her present claims." (*Id.* at 13.) Because she believes that the magistrate judge did not properly "analyze the effect of this conduct on [Ayers'] ability to meet the statutory deadline[,]" Ayers contends the magistrate judge erred in concluding that she was not entitled to equitable tolling. (*Id.*)

The Supreme Court has long held that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect" by an attorney, such as when negligence results in an attorney missing a filing deadline. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990). But, the Supreme Court also recognizes that "unprofessional attorney conduct may, in certain circumstances, prove 'egregious' and can be 'extraordinary'" enough to satisfy the "extraordinary circumstances" prong of equitable tolling. *Holland*, 560 U.S. at 651 (collecting and endorsing lower court opinions).

As an initial matter, for the reasons previously stated, the Court cannot find that Ayers was pursuing her rights diligently during the more than six-year gap between her conviction becoming final and the filing of her federal habeas petition.[8] For this reason alone, Ayers is not entitled to equitable tolling. *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 419, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) (petitioner's several-years delay in seeking post-conviction review in state court and his five-months delay in filing a federal habeas petition thereafter demonstrated lack of diligence in pursuing his rights).

---

[8] Ayers complains that the magistrate judge "mostly rehashes the analysis it offered pursuant to § 2244(d)(1)(D)." (Doc. No. 20, at 12.) Of course, such an observation overlooks the fact that timeliness under § 2244(d)(1)(D) and equitable tolling share overlapping considerations, such as diligence. *See Holland*, 560 U.S. at 649; *Souter*, 395 F.3d at 586 (quoting § 2244(d)(1)(D)).

Moreover, the Court must conclude that trial counsel's alleged ineffectiveness was not sufficiently egregious to meet the standard for equitable tolling. The attorney misconduct alleged in *Holland* was far more serious, essentially amounting to abandonment of his client's case. *See Holland*, 560 U.S. at 637–39. The alleged misconduct in the present case—failing to acquire expert testimony to counter the State's expert's arguably flawed testimony—is not of comparable severity and cannot fairly be described as "egregious." While Ayers claims that her counsel's failure to adequately attack the State's testimony amounted to the endorsement of "junk science," for reasons already discussed herein, Ayers overstates the significance of the Lentini Report. Even if counsel could be considered ineffective for failing to test the State's expert evidence, such ineffectiveness does not rise to the level of abandonment of his client's case or his duties as an attorney. Ayers' second objection is overruled.

### 3. Ayers has not Demonstrated She is "Actually Innocent"

In her final objection, Ayers criticizes the magistrate judge's determination that she has failed to make a credible showing that she is actually innocent of the charges sufficient to warrant equitable tolling on that basis. She argues that the circumstantial evidence against her was "a wash," and that, without Winters' faulty testimony, the evidence was entirely consistent with "a fire started by a curious and unattended child." (Doc. No. 20, at 15.) This argument, and the evidence alluded to by Ayers, is insufficient to demonstrate that she is actually innocent of the crimes for which she was convicted.

Both the Supreme Court and the Sixth Circuit have held that a credible claim of actual innocence equitably toll the one-year statute of limitations. *Perkins*, 569 U.S. at 386; *Souter*, 395 F.3d at 588–90. The courts, however, have set the bar high for such a showing. In order to be

17

entitled to the actual innocence exception, a petitioner must present "new reliable evidence . . . that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found [her] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist. *See id*. at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.")

"Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350–51 (8th Cir. 1996) ( internal citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"); *see generally Souter*, 395 F.3d at 589–90. Such examples, which are sufficient to raise serious doubt about the petitioner's guilt to a point of undermining the confidence in the conviction, "'remain rare' and [should] 'only be applied in the extraordinary case." *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321 (further quotation marks omitted)); *see also Perkins*, 569 U.S. at 386, 401 ("[T]enable actual-innocence gateway pleas are rare[,]" and "the [actual-innocence] standard is demanding." (citation omitted)). It is Ayers' burden to show that this is "one of those extraordinary cases where a credible claim of actual innocence has been established by new reliable evidence." *McSwain*, 287 F. App'x at 461.

Ayers has not presented evidence sufficient to surpass the "actual innocence" threshold. At best, the Lentini Report calls into question Winters' opinion that the fire had two separate points of origin. While the Lentini Report more readily makes room for the possibility that Ayers' son

18

could have started the fire, such a showing is insufficient because it does not rule out the possibility that the fire was deliberately set, nor does it exclude Ayers as the perpetrator or even raise a serious doubt that she started the fire. *See Schlup*, 513 U.S. at 329 (evidence that raises a reasonable doubt that previously did not otherwise exist does not demonstrate actual innocence); *see, e.g., Carter v. Klee*, 286 F. Supp. 3d 846, 853 (E.D. Mich. 2018) (laboratory reports indicating that defendant's blood type was not found on the victim's panties did not eliminate him as a suspect); *Howard*, 2017 WL 783494, at *7 (affidavits that merely impeached trial witnesses did "not show that petitioner is innocent of the crimes"); *Dixon v. Wolfenbarger*, No. 2:11-cv-11882, 2012 WL 2004307, at *10–11 (E.D. Mich. May 4, 2012) (rejecting "actual innocence" claim as to tolling, noting that even considering trial witness's newly recanted story, his account "still places petitioner in the group of people from where the shot was fired" and did not exclude petitioner as the shooter).

Even if one entirely disregards Winters' theory that the fire had two points of origin, that still leaves considerable evidence that Ayers set the fire deliberately, and this reality prevents Ayers from slipping through the narrow "actually innocent" gateway. *See Townsend v. Lafler*, 99 F. App'x 606, 610 (6th Cir. 2004) (newly discovered police report that called into question the government's theory for the shooting did not establish that "no reasonable juror would have found [the petitioner] guilty" where there still was trial evidence pointing to petitioner as the shooter). There was substantial evidence offered at trial that the relationship between Ayers and her father, with whom Ayers and her children lived, had become strained over Ayers' lack of contribution to the household finances. Ayers grew more aggressive toward her father when he told Ayers he was planning to move to West Virginia. Ayers' father testified that Ayers had threatened to burn down

the house if he left. Ayers' neighbor also testified that he heard Ayers threaten her father with burning down the house, and he believed the threat to be credible. The fire occurred the same day Ayers' father decided to leave. *See Ayers*, 2022 WL 1946586, at *12.

The jury also heard evidence that Ayers had initially told paramedics that her son set the fire but later stated that she might have fallen asleep.[9] The paramedics noted that they found evidence of soot on Ayers but none on her son. *Id*. at *2–3. Moreover, when Winters interviewed Ayers at the hospital, where she was being treated for a cut on her hand that she sustained in the fire, she did not respond when Winters asked her if she had attempted to take the lighter away from her child. *Id*. at *3.

Ayers offers a number of innocent explanations for much of the trial evidence: she was distraught in the aftermath of the fire and concerned about losing her children and her post-fire statements to authorities were, therefore, the result of confusion and fear; a neighbor had "cleaned up" and changed her son before authorities examined him; there was testimony suggesting that at least one of Ayers' prior threats had been "kind of a laugh or a joke kind of thing," "like she meant it, but she didn't[;]" and that her neighbor who overheard the threat was purportedly trying to have Ayers' children taken away. (Doc. No. 20, at 14–15 (citing trial record).) She argues that "[w]ithout Winters' 'two points of origin theory,' the facts are entirely consistent with an accidental fire started by her young son, and it is more likely than not [Ayers] would have been acquitted." (*Id*. at 16.)

---

[9] Winters testified that he found no evidence that a cigarette caused the fire, and the Lentini Report does not take issue with this finding or suggest that the fire was started accidently due to someone smoking in bed. *See Ayers*, 2022 WL 1946586, at *2.

That the trial evidence (viewed through a defense lens) may have been *consistent with* the defense theory, in addition to supporting a guilty verdict, does not demonstrate that this is the rare case where it is more likely than not that no reasonable juror would have voted to convict her. A Sixth Circuit panel rejected a similar showing in *Parkin v. Rewerts*, No. 19-1672, 2019 WL 6869683 (6th Cir. Sept. 16, 2019). There, during post-conviction proceedings, the petitioner presented newly discovered testimony from an expert witness who opined that there was "a very real possibility" that petitioner's DNA was found on the victim's body as the result of an "innocent transfer" of amylase (an enzyme found in saliva). *Id*. at *3. "But even 'a very real *possibility* that there was an 'innocent transfer' of DNA[, the court found,] does not 'show that it is more likely than not that no reasonable juror would have convicted [petitioner] in light of [the allegedly] new evidence." *Id*. (quoting *Perkins*, 569 U.S. at 386 (emphasis in original, further quotation marks and citation omitted)). Ultimately, the court rejected the petitioner's "actual innocence" argument, finding that, in light of the other evidence offered at trial, his newly discovered evidence might not have ensured an acquittal. *Id*.

There is even less of a chance here that the introduction of the newly discovered evidence would have changed the outcome at trial. The reasonable juror would still have been free to reject Ayers' version of the facts and find that she, and not her young son, deliberately set fire to the house, whether out of anger at her father or for some other reason. While the Lentini Report allowed for the possibility that Ayers' son set the fire, the reasonable juror would have had to look past considerable damaging circumstantial evidence pointing in the direction of Ayers as the fire-starter to reach the conclusion that the three-year old was to blame. Under these circumstances, the Court cannot find that it is more likely than not that no reasonable juror would have convicted her.

Because the Lentini Report fails to provide the type of compelling evidence of innocence sufficient to meet the actual innocence exception, Ayers is not entitled to consideration of her time-barred claims on this basis. Accordingly, the Court overrules this third and final objection.

## IV. CONCLUSION

Upon de novo review, all matters raised in Ayers' objections are overruled, and the Court denies the petition as untimely. Further, for all the same reasons, the Court finds that "reasonable jurists" would not debate the Court's dismissal of the petition as time-barred. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. §§ 1915(a)(3), 2253(c); Fed. R. App. 22(b).

**IT IS SO ORDERED**.

Dated: August 2, 2023

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT COURT**
**CHIEF JUDGE**