**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | |
|---|---|
| KAYLA JEAN AYERS, | )    CASE NO. 5:20-CV-01654-SL |
| | ) |
|          Plaintiff, | )    CHIEF JUDGE SARA LIOI |
| | )    UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | )    MAGISTRATE JUDGE |
| OHIO DEPARTMENT OF | )    CARMEN E. HENDERSON |
| REHABILITATION AND CORRECTIONS, | ) |
| DIRECTOR; | ) |
| | )    **REPORT & RECOMMENDATION** |
| | ) |
|          Defendant, | ) |

## I.  Introduction

Kayla Jean Ayers ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging her 2013 conviction for aggravated arson, for which she was sentenced to prison for seven years. (ECF No. 15-1, PageID #: 307). In 2023, the Court dismissed Petitioner's amended petition for habeas relief as time barred. *Ayers v. Ohio Dep't of Rehab. & Corr.*, No. 5:20-CV-1654, 2023 WL 4931928, at *1 (N.D. Ohio Aug. 2, 2023). The Sixth Circuit granted Petitioner a certificate of appealability on her ineffective assistance of trial counsel claim only and in August 2024, reversed the District Court's judgment, finding Petitioner's claim timely, and remanded to the District Court for further proceedings. *Ayers v. Ohio Dep't of Rehab. & Correction*, 113 F.4th 665, 667, 669, 674 (6th Cir. 2024), *cert. denied sub nom. Chambers-Smith v. Ayers*, 145 S. Ct. 1632 (2025).

1

This matter was referred to the undersigned under Local Rule 72.2 to prepare a report and recommendation on Petitioner's amended petition. For the reasons set forth below, the undersigned recommends that the Court deny and dismiss Ayers' petition for habeas corpus.

## II.  Relevant Factual Background

The Ohio Court of Appeals for the Fifth Appellate District set forth the following facts[1] on direct appeal:

> {¶ 2} On October 3, 2012, the Massillon Fire Department responded to a fire at Appellant's residence. The fire was extinguished in the basement of the home.
>
> {¶ 3} Appellant's defense centered upon the allegation her young son started the fire. Appellant's son did not appear to have any smoke exposure or soot on his person. Appellant cut her hand while allegedly attempting to get her son out of the residence. Appellant appeared to have smoke exposure and tested positive for soot residue on her person.
>
> {¶ 4} Inspector Reginald Winters of the Massillon Fire Department testified he ruled out an electrical shortage as the cause of the fire. Winters determined a mattress was the point of origination for the fire, and there were two distinct start points at separate ends of the mattress. Winters' report concluded the fire was not an accident.
>
> {¶ 5} During an interview with investigators Appellant claimed her three-year old son started the fire while playing with a cigarette lighter. She seemed lethargic and unable to answer the questions posed. She stated she was in the basement folding clothes when she noticed her son by the bed playing with a lighter. Shortly thereafter she noticed a fire on the bed, grabbed a blanket and started fanning the flame. She ran and retrieved a glass of water, but tripped, breaking the glass, falling and cutting her hand. She stated she could not find the phone to call the fire department.

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

{¶ 6} At the time of the fire, Appellant lived with her father and his family. Her father had previously discussed finances with her, and the fact she had not been contributing to the household financial situation. Their relationship eventually deteriorated and Jeff Ayers, Appellant's father, told Appellant to leave and care for her own family. Appellant refused to leave. Jeff Ayers testified at trial when he decided to leave, Appellant threatened to burn the house down.

{¶ 7} Additionally, a neighbor of Appellant, Jason Pandrea, testified he heard Appellant threaten her father with burning the house down if he ever left.

{¶ 8} Karen Ball testified at trial she knew Appellant through a church relationship. She visited the residence on the night of the fire to pick up the children for a church activity. She knocked on the door, but received no answer. She heard someone inside the residence say, "Shhh." Ball noticed Appellant's purse on the deck of the residence, which led her to believe Appellant was inside. At approximately 8:00 p.m. the night of the fire, Ball returned to the residence and witnessed some flickering in the window. When Appellant exited the house, she told Ball her son had started the fire.

{¶ 9} Investigator Winters prepared a draft report. He concluded the fire originated on the first floor of the residence. Winters maintains this was a typographical error, and should have read the fire originated in the basement of the residence. Additionally, the report contained several other errors not to be included in the final copy. Winters stated in his testimony at trial the report including the alleged errors was not the final report.

{¶ 10} During pretrial proceedings, Appellant filed two motions in limine. In the first, Appellant sought to exclude evidence of "bad parenting" introduced by the state.

{¶ 11} In the second motion in limine, Appellant sought to exclude evidence of her involvement with Child Protective Services and the Department of Job and Family Services regarding "parenting rights, allegations of lice infestation, and having a dirty home," as well as, evidence regarding her mental health and use of medication.

{¶ 12} Following a jury trial, Appellant was convicted of one count of aggravated arson, in violation of R.C. 2909.02(A)(2), a felony of the second degree, and one count of endangering children, in violation of

> R.C. 2919.22(A), a misdemeanor of the first degree. Appellant was
> sentenced to an aggregate prison term of seven years.

*State v. Ayers*, No. 2013CA00034, 2013 WL 6506473, * 1–2 (Ohio Ct. App. Dec. 9, 2013).

## III.  Procedural History
### A.  Indictment, Trial, Verdict, and Sentencing

A grand jury indicted Petitioner on November 6, 2012 for one count of knowingly causing

physical harm to an occupied structure in violation of Ohio Revised Code section 2909.02(A)(2)

and one count of creating a substantial risk to the health or safety of children by violating a duty

of care, protection or support set forth in Ohio Revised Code section 2919.22(A). (ECF No. 15-1,

PageID #: 273). Petitioner pleaded not guilty to the counts on November 9, 2012. (ECF No. 15-1,

PageID #: 275).

This matter proceeded to trial and the jury issued a verdict on January 28, 2013, finding

Petitioner guilty of both counts. (ECF No. 15-1, PageID #: 306, 310). The trial court sentenced

Petitioner to seven years imprisonment for aggravated arson and one hundred and eighty days for

endangering children. (ECF No. 15-1, PageID #: 307). The court ordered Petitioner to serve the

sentences concurrently, for an aggregate prison term of seven years. (ECF No. 15-1, PageID #:

307).[2] Petitioner was also ordered to serve three years of post-release control under O.R.C. §

---

[2] Petitioner completed her sentence and is no longer in custody. She states she was released from prison on August 22, 2019 and remained on post-release control through August 22, 2022. (See ECF No. 14-1, PageID #: 114). However, she was still in custody when she filed her initial habeas petition, and her petition is not moot since she challenges the conviction itself, rather than the sentence. *See Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998); *see also Gentry v. Deuth*, 456 F.3d 687, 693–95 (6th Cir. 2006) (discussing that federal habeas petitions are not moot if the petitioner is out of custody and they are challenging the conviction itself, also discussing the collateral consequences of a conviction, including prohibiting firearm ownership, which is a collateral consequence Petitioner mentions in her memorandum in support of the petition).

4

2967.28(B). (ECF No. 15-1, PageID #: 308). As discussed below, Petitioner filed her federal habeas corpus petition while she was on post-release control.

## B.  Direct Appeal

Petitioner filed a notice of appeal with the Fifth District of the Ohio Court of Appeals on February 20, 2013 and an appellate brief on June 24, 2013. (ECF No. 15-1, Ex. 21 (notice), Ex. 22 (brief)). In her appeal, she raised two assignments of error (sic):

> Assignment of Error No. I: The Appellant's convictions for one count of aggravated arson in violation of R.C. 2909.02 and one count of endangering children in violation of R.C. 2919.22 were against the manifest weight and sufficiency of the evidence.

> Assignment of Error No. II: The Appellant was denied effective assistance of counsel due to trial counsel's failure to review the appropriate discovery materials in preparation for trial.

(ECF No. 15-1, PageID #: 314). The State filed an opposition brief on August 22, 2013. (ECF No. 15-1, Ex. 23). On December 9, 2013, the appellate court overruled Petitioner's assignments of error. (ECF No. 15-1, Ex. 24). Petitioner did not make a timely appeal of the court's decision to the Supreme Court of Ohio. Neither did she file an application to reopen her direct appeal under Rule 26(B) of the Ohio Rules of Appellate Procedure.

## C.  Additional Motions

Petitioner filed several unsuccessful motions with the Ohio Court of Common Pleas following the appellate court's denial of her direct appeal. On May 28, 2015, she filed a motion to credit her community service hours to her fines, court costs, and/or restitution. (ECF No. 15-1, Ex. 27). She filed a motion for modification of sentence on October 19, 2015 and again on October 27, 2015. (ECF No. 15-1, Exs. 29, 31). Petitioner also filed a motion for judicial release on February 12,

2018. (ECF No. 15-1, Ex. 33). The Ohio trial court denied each motion in turn. (*See* ECF No. 15-1, Exs. 28, 30, 32, 34).

**D.  Petition for Post-Conviction Relief and Motion for Leave to File a Motion for a New Trial**

Petitioner filed a petition for post-conviction relief pursuant to O.R.C. § 2953.21-23 on April 13, 2020. (ECF No. 15-1, Ex. 35). She incorporated a *motion for a new trial instanter* to the petition. (*See* ECF No. 15-1, PageID #: 416). Petitioner also filed a separate motion for leave to file a motion for a new trial pursuant to Rule 33(B) of the Ohio Rules of Criminal Procedure. (ECF No. 15-1, Ex. 36). She filed an amended petition for post-conviction relief on May 18, 2020, alleging the following "counts" (sic):

> Count One: Ineffective Assistance of Counsel Sixth Amendment to the United States Constitution
>
> Count Two: Prosecutorial Misconduct Fifth and Fourteenth Amendment to the U.S. Constitution
>
> Count Three: Right to Compulsory Process Sixth Amendment to the U.S. Constitution
>
> Count Four: Actual Innocence Fifth, Eighth, and Fourteenth Amendment to the U.S. Constitution
>
> Count Five: Conviction Obtained By Fundamentally Unreliable Evidence Fifth and Fourteenth Amendments to the U.S. Constitution
>
> Count Six: Ohio Constitution Article I, Sections 9, 10 & 16

(ECF No. 15-1, PageID #: 31–34). While Petitioner awaited the appellate court's decision, she filed a habeas corpus petition in the U.S. District Court for the Northern District of Ohio, which is discussed below. (*See* ECF No. 1).

6

The State filed a motion to dismiss Petitioner's petition for post-conviction relief on December 21, 2020. (ECF No. 15-1, Ex. 39).[3] The Court of Common Pleas for Stark County ultimately denied and dismissed Petitioner's petition for post-conviction relief and her motion for leave to file a motion for a new trial. (ECF No. 15-1, PageID #: 727–28). Petitioner appealed the trial court's decision on November 29, 2021, and the State filed a response brief. (ECF No. 15-1, Exs. 47, 49). In her supporting brief, Petitioner raised three assignments of error:

> Assignment of Error No. I: The trial court erred by denying Appellant's motion for leave to file a motion for new trial
>
> Assignment of Error No. II: The trial court erred by denying Appellant's first amended petition for postconviction relief
>
> Assignment of Error No. III: The trial court erred by failing to hold an evidentiary hearing

(ECF No. 15-1, PageID #: 741). The Fifth Appellate District affirmed the trial court's decision on June 6, 2022. (ECF No. 15-1, Ex. 51). Petitioner then filed an appeal notice and memorandum in support of jurisdiction with the Supreme Court of Ohio on July 19, 2022. (ECF No. 15-1, Exs. 52, 53). She raised the following propositions of law in her brief (sic):

> Proposition of Law No. I: A court cannot reject a Crim.R. 33 motion for a new trial which the movant has not filed.
>
> Proposition of Law No. II: The "no reasonable factfinder" standard of Ohio R.C. 2953.23(a)(1)(b) does not apply to new trial motions under Crim.R. 33.
>
> Proposition of Law No. III: Where trial counsel fails to consult an independent expert and fails to object to the state's inadmissible, prejudicial expert testimony, that counsel's ineffective assistance undermines all confidence in the jury's verdict and deprives the defendant of her sixth amendment right to a fair trial.

---

[3] The Court notes that the parties filed a number of responses, replies, and supplemental briefs before the trial court issued a judgment entry. For brevity, these filings have not been recounted here.

7

(ECF No. 15-1, PageID #: 876, 878, 880). The State again filed a response brief, and the Supreme Court of Ohio declined to accept jurisdiction on September 27, 2022. (ECF No. 15-1, PageID #: 54, 55).

### E.   Federal Habeas Corpus Petition and Stay in Abeyance of State Court Exhaustion

Before the Ohio Court of Common Pleas ruled on Petitioner's petition for post-conviction relief and motion for leave to file a motion for a new trial, Petitioner filed a habeas petition with the U.S. District Court for the Northern District of Ohio on July 27, 2020. (ECF No. 1). The same day, she also filed a *motion to hold Petition for Writ of Habeas Corpus in abeyance pending exhaustion in state court*, which the Court granted on December 3, 2020. (*See* ECF No. 2).

After the Supreme Court of Ohio declined to accept jurisdiction of Petitioner's appeal, she filed a Notice of Intent to Proceed and Motion to lift stay which this Court granted. (ECF Nos. 12, 13). Petitioner indicated in her motion that she would seek leave to amend her habeas petition, so this Court proactively ordered Petitioner to file the amended petition. (ECF No. 12, PageID #: 90; ECF No. 13).

Petitioner filed her amended petition on December 19, 2022. (ECF No. 14). In the petition, she asserted the following grounds for relief and supporting paragraphs (sic):

> **Ground One:** Ineffective assistance of counsel Sixth Amendment to the United States Constitution.
>
> **Supporting Paragraphs:**
>
> 16. Petitioner's counsel was deficient and fell below an objective standard of reasonableness. Specifically:
>
> > a. Defense counsel failed to consult with an expert witness regarding the origin of the fire.
> >
> > b. Defense counsel failed to challenge false and unsupported testimony offered by the State's expert.

c. Defense counsel failed to object to testimony that should have been barred under Ohio Crim.R.16(K).

17. Petitioner was prejudiced by counsel's ineffective assistance. Based on the totality of the evidence before the jury, there is a reasonable probability that, but-for counsel's unprofessional errors, the result of the proceeding would have been different. Based on her trial attorneys' failures, Ms. Ayers was denied the effective assistance of counsel and her conviction was in violation of her rights under the Sixth and Fourteenth Amendments to the United States Constitution

**Ground Two:** Prosecutorial misconduct Fifth and Fourteenth Amendments to the U.S. Constitution

**Supporting Paragraphs:**

21. The State committed misconduct and deprived Petitioner of a fair trial by, in violation of Crim.R.16(K), failing to disclose the complete expert opinions of Massillon Fire Inspector Reginald Winters, and by knowingly soliciting previously undisclosed "expert" opinions from Inspector Winters. This misconduct was a fundamental defect in the trial and was inconsistent with rudimentary demands of fair procedure.

22. In addition, the State knew or should have known that Reginald Winters's testimony regarding the origin of the fire was false, unsupported, and/or unqualified. The State committed misconduct by soliciting this testimony and leaving it uncorrected on the record.

23. The State's misconduct prejudiced Petitioner. There is a reasonable probability that, but-for the State's misconduct, the result of the proceeding would have been different.

24. The State's misconduct deprived Petitioner of a fundamentally fair trial and infected the trial with unfairness such that the resulting conviction was a violation of due process.

**Ground Three:** Conviction obtained by fundamentally unreliable evidence Fifth and Fourteenth Amendments to the U.S. Constitution.

**Supporting Paragraphs:**

27. Specifically, the testimony of Reginald Winters regarding the origin of the fire was incorrect, unsupported, and/or fundamentally

unreliable in key respects. The probative value of Winters' testimony, if any, was greatly outweighed by the prejudice to Petitioner from its admission. Its role in Petitioner's conviction is a fundamental defect which inherently results in a miscarriage of justice.

28. This testimony was central to the State's case against Petitioner. But-for Reginald Winters' false, unsupported, and/or materially misleading testimony, Petitioner would not have been convicted.

29. Winters' testimony undermined the fundamental fairness of Petitioner's trial because the testimony was itself false, unsupported, or unreliable. Insofar as Petitioner's conviction depends on evidence now known to be false, unsupported, and/or materially misleading, that conviction is inconsistent with the United States Constitution's guarantee of due process.

**Ground Four:** Actual innocence Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

**Supporting Paragraphs:**

31. Newly-discovered evidence demonstrates that Petitioner is actually innocent of the charges for which she was convicted. Specifically, Inspector Winters' testimony regarding the origin of the fire is false, and the fire was, in fact, accidental.

[. . .]

32. As a result, Petitioner's conviction and the ongoing effects of her conviction are inconsistent with the U.S. Constitution's guarantee of due process of law.

(ECF No. 14, PageID #: 95–98). Respondent filed a return of writ on February 10, 2023, and Petitioner filed a traverse on March 20, 2023. (ECF Nos. 15, 16). Respondent filed a reply to the traverse on March 27, 2023. (ECF No. 17).

On June 13, 2023, in a report and recommendation to the District Court, the undersigned recommended that the District Court deny Ayers' petition for habeas corpus as untimely and that the Court not grant her a certificate of appealability. *Ayers v. Ohio Dep't of Rehab. & Corr., Dir.*, No. 5:20-CV-01654-SL, 2023 WL 4935917, at *1 (N.D. Ohio June 14, 2023), *report and*

10

*recommendation adopted sub nom. Ayers v. Ohio Dep't of Rehab. & Corr.*, No. 5:20-CV-1654, 2023 WL 4931928 (N.D. Ohio Aug. 2, 2023), *rev'd and remanded sub nom. Ayers v. Ohio Dep't of Rehab. & Correction*, 113 F.4th 665 (6th Cir. 2024), *cert. denied sub nom. Chambers-Smith v. Ayers*, 145 S. Ct. 1632 (2025). Petitioner filed timely objections to the report and recommendation, but on August 2, 2023, the District Court overruled Petitioner's objections—finding the petition was time barred and that Petitioner was not entitled to equitable tolling. *Ayers v. Ohio Dep't of Rehab. & Corr.*, No. 5:20-CV-1654, 2023 WL 4931928, at *1, 11 (N.D. Ohio Aug. 2, 2023), *rev'd and remanded sub nom. Ayers v. Ohio Dep't of Rehab. & Correction*, 113 F.4th 665 (6th Cir. 2024), *cert. denied sub nom. Chambers-Smith v. Ayers*, 145 S. Ct. 1632 (2025). The District Court adopted the undersigned's report and recommendation, dismissed Ayers' petition, and declined to grant her a certificate of appealability. *Id.* at *11.

### F.  Appeal to Sixth Circuit

On September 1, 2023, Petitioner filed her notice of appeal from the District Court's judgment, seeking a certificate of appealability from the United States Court of Appeals for the Sixth Circuit. (ECF No. 23).

The Sixth Circuit granted Petitioner a certificate of appealability on her ineffective assistance claim only. *Ayers v. Ohio Dep't of Rehab. & Correction*, 113 F.4th 665, 669 (6th Cir. 2024), *cert. denied sub nom. Chambers-Smith v. Ayers*, 145 S. Ct. 1632 (2025). The Court held that Ayers' petition was not untimely, finding that she filed her petition within one year of the date on which the factual predicate of her ineffective assistance claim could have been discovered through the exercise of due diligence. *Id.* at 670–74. Specifically, the Court found that a report, written by John Lentini, a renowned fire investigation expert, that was critical of the State's arson expert's testimony, provided the factual predicate underlying Ayers' ineffective assistance claim, and it

11

found that Ayers could not have, through the exercise of due diligence, uncovered the Lentini report or another expert's report, until the Ohio Innocence Project took her case and retained Lentini as an expert. *Id.* at 671–74. Finally, the Court found that Ayers filed her petition within one year of the date on which she could have discovered the factual predicate underlying her claim, as Lentini produced his report on July 29, 2019 and Ayers filed her petition on July 27, 2020. *Id.* at 674. The Sixth Circuit Court thus reversed the District Court's judgment and remanded the matter for further proceedings. *Id.*

Upon remand, the District Court referred this matter to the undersigned, pursuant to Local Rule 72.2, for a report and recommendation on Ayers' habeas petition.

### G. Petition for Writ of Certiorari

On November 25, 2024, Respondent filed a petition for a writ of certiorari in the Supreme Court of the United States challenging the Sixth Circuit's decision. (ECF No. 29). Pending the Supreme Court's decision regarding the petition for a writ of certiorari, the District Court stayed the matter.[4] On June 6, 2025, the Supreme Court denied certiorari. Justice Alito, joined by Justice Thomas, wrote regarding the denial and explained that the Sixth Circuit "erred by treating newly discovered support for a previously available claim as sufficient to restart the 1-year limitations period" and that Ayers "had everything she needed to make [the argument that trial counsel should have hired an expert and challenged the fire inspector] back in 2013 when her trial counsel failed to take those steps." *Chambers-Smith v. Ayers*, 145 S. Ct. 1632, 1632 (2025). Justice Alito continued, writing,

---

[4] Respondent additionally moved the Supreme Court to recall and stay the mandate of the Sixth Circuit pending the resolution of the petition for certiorari. The Supreme Court denied the motion. *See* Order Denying Application to Recall and Stay the Mandate, *Chambers-Smith v. Ayers*, 145 S. Ct. 1632 (2025) (No. 24-584).

> The 2019 expert report certainly bolstered Ayers's argument that her trial counsel's decisions harmed her defense, but "[§]2244(d)(1)(D) does not restart the time when corroborating evidence becomes available; if it did, then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for any prisoner could reopen the judgment by locating any additional fact." *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (CA7 2005), *abrogated on other grounds*, *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

*Id.* But, despite expressing that the Sixth Circuit had erred, the Court was unwilling to grant certiorari or summarily reverse the Sixth Circuit's decision, as Ayers had already completed her sentence. *Id.* at 1633.  Nevertheless, Justices Alito and Thomas urge lower courts to "not construe the denial of review as approval of the decision below" and warn that "litigants should not hesitate to seek certiorari if the Sixth Circuit repeats this error." *Id.*

Because the Court did not grant certiorari or reverse the Sixth Circuit's decision in this matter, the undersigned considers Ayers' petition as directed in the Sixth Circuit's mandate and the District Court's subsequent referral. *See Ayers*, 113 F.4th at 674.

## IV. Legal Standards

### A.  Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst* v. *Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th

Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732–33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . .") (internal citations omitted).

14

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or by demonstrating that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'").

## B. Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12 (N.D. Ohio Feb. 12, 2007) (citing 28 U.S.C. § 2254(b), (c)). "A petitioner satisfies the exhaustion requirement once the state supreme

court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*, 336 F. Supp. 2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id.* (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### C. AEDPA Standard of Review

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks

through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290,

301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's ... determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet ... because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

### D.  Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A reviewing court's scrutiny of counsel's performance must be highly deferential. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

18

under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

## V. Discussion

As the Sixth Circuit granted a certificate of appealability on only Petitioner's ineffective assistance of trial counsel claim, the undersigned analyzes the viability of only that claim below, finding Petitioner's three remaining claims dismissed as time barred. *Ayers v. Ohio Dep't of Rehab. & Correction*, 113 F.4th 665, 669 (6th Cir. 2024), *cert. denied sub nom. Chambers-Smith v. Ayers*, 145 S. Ct. 1632 (2025).

Petitioner contends that she is entitled to habeas relief because her trial counsel was ineffective for failing to consult an independent arson expert and for failing to object to inadmissible expert testimony.  (ECF No. 14-1, PageID #: 116). Respondent argues that Petitioner failed to exhaust and procedurally defaulted her ineffective assistance claim and that the claim lacks merit. Thus, Respondent urges the Court to dismiss the claim with prejudice. (ECF No 15, PageID #: 172–73).

### A. Exhaustion & Procedural Default

Respondent asserts that Petitioner both failed to exhaust and procedurally defaulted her ineffective assistance of trial counsel claim. (ECF No. 15, PageID #: 173). Specifically, Respondent argues that Ayers' claim is not properly exhausted because she failed to raise an identical ineffective assistance of trial counsel claim on direct appeal and did not timely appeal the judgment on her direct appeal to the Ohio Supreme Court. (ECF No. 15, PageID #: 173). Respondent argues that Ayers procedurally defaulted the ineffective assistance of trial counsel claim she raised in her post-conviction relief proceedings as the Ohio trial court denied, and the appellate court affirmed the denial of, her ineffective assistance claim as untimely and barred by *res judicata*—both well-established procedural defaults. (ECF No. 15, PageID #: 173–74, ECF No. 17, PageID #: 1475–76). Finally, Respondent asserts that Ayers has not established cause and

19

actual prejudice or a fundamental miscarriage of justice and actual innocence to excuse her procedural default. (ECF No. 15, PageID #: 174).

Petitioner argues instead that her ineffective assistance claim is exhausted and is not procedurally defaulted. (ECF No. 16, PageID #: 1444). She asserts that Respondent's arguments relating to her failure to raise an identical claim on direct appeal and failure to timely file an appeal in the Ohio Supreme Court are "incorrect for several reasons," including that it was impossible for her to raise her ineffective assistance of trial counsel claim on direct appeal, as it relies on evidence outside the record. (ECF No. 16, PageID #: 1446–47). Additionally, Ayers contends that "for the purposes of federal habeas review, a claim is exhausted when state remedies 'are no longer available, regardless of the reason for their unavailability.'" (ECF No. 16, PageID #: 1447) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Petitioner further claims that the Ohio intermediate appellate court erred in its decision denying her motion for post-conviction relief and for leave to file a motion for a new trial—the last reasoned state court decision to be used to determine whether her claim was procedurally defaulted. (ECF No. 16, PageID #: 1448). Petitioner argues that when the Ohio appellate court upheld the denial of her motion for leave to present her ineffective assistance claim through a delayed motion for new trial, it improperly refused to reach the "only issue properly before it pursuant to [Ohio Criminal Rule 33(B)]: i.e., whether or not Ms. Ayers was 'unavoidably prevented' from discovering the Lentini affidavit within 120 days of her conviction" and instead held:

> [I]n light of the evidence produced at Ayers's jury trial that did not depend upon expert testimony, and the entire record in this case, Ayers has not shown a constitutional error occurred during her jury trial and **that no reasonable fact-finder would have found her guilty but for the constitutional error at trial. R.C. 2953.23(A)(1)(b). Because Ayers's failed to meet her burden under R.C. 2953.23(A)(1)(b), Ayers's motion for a new trial**

20

> **would be without merit, therefore rendering moot a hearing on her motion for leave to file a motion for a new trial.**

(ECF No. 16, PageID #: 1448–49) (emphasis in original) (quoting *State v. Ayers*, No. 2021CA00134, 2022 WL 1946586, * 18–19 (Ohio Ct. App. June 6, 2022)). Ayers argues that this holding—using O.R.C. 2953.23(A)(1)(b), which is normally applied as a jurisdictional threshold for post-conviction petitions, not to determine a court's jurisdiction to entertain a motion for new trial—was inconsistent with well-established Ohio law and prejudicial to her. (ECF No. 16, PageID #: 1449). She asserts that O.R.C. 2953.23 requires a prisoner to show "by clear and convincing evidence" that, but-for the constitutional error at trial, "no reasonable factfinder" would have convicted her, which is an extremely demanding standard that would preclude "many, if not most, claims of ineffective assistance of counsel that would otherwise be granted pursuant to Ohio Crim. R. 33." (ECF No. 16, PageID #: 1449). Ayers quotes Sixth Circuit precedent in asserting that "[w]hile federal courts are typically barred from hearing a claim that was procedurally defaulted in state court, when a state erroneously relies upon its own rule of procedural default, the claim is not barred." (ECF No. 16, PageID #: 1449) (quoting *Post v. Bradshaw*, 621 F.3d 406, 423 (6th Cir. 2010) (quoting *Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005))). She argues that but-for the Ohio appellate court's erroneous procedural holding, she would have been able to present her ineffective assistance claim for resolution in the state courts, and because the appellate court erroneously relied on O.R.C. 2953.23(A)(1)(b) to deny her leave to file a motion for new trial, it erroneously relied upon its own rule of procedural default, and, therefore, the claim is not barred and should be considered de novo. (ECF No. 16, PageID #: 1450).

Alternatively, Petitioner argues that even if her ineffective assistance claim were procedurally defaulted, cause to excuse the default exists under *Martinez v. Ryan*, 566 U.S. 1 (2012), *Trevino v. Thaler*, 569 U.S. 413 (2013), and *White v. Warden, Ross Correctional Institution*, 940 F.3d 270

21

(6th Cir. 2019) and that she was prejudiced by the constitutional error. (ECF No, 16, PageID #: 1450–53). Finally, Ayers argues that she is actually innocent of aggravated arson and that it would be a miscarriage of justice for the Court to refuse to consider her ineffective assistance claim on procedural grounds. (ECF No. 16, PageID #: 1453).

In its reply to Petitioner's traverse, Respondent asserts that Petitioner's argument that her ineffective assistance claim is not procedurally barred due to the Ohio appellate court's allegedly erroneous application of its own procedural rules fails, as the federal habeas court is "generally forbidden from determining whether state courts misapplied state procedural rules." (ECF No. 17, PageID#: 1477) (citing *Israfil v. Russell*, 276 F.3d 768, 771–72 (6th Cir. 2001); *Oveido v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Additionally, Respondent argues that Ayers has not established cause to excuse her procedural default under *Martinez-Trevino-White*, as she has not shown she could not adequately litigate her ineffective assistance of trial counsel claim without the Lentini report, nor has she established that her ineffective assistance claim was substantial. (ECF No. 17, PageID #: 1478). Respondent further argues that Ayers has not shown actual prejudice. (ECF No. 17, PageID #: 1480). Finally, Respondent asserts that Petitioner's "purported evidence is not sufficient to meet the demanding *Schlup v. Delo*, 513 U.S. 298 (1995) actual innocence standard," that she "has not shown that no reasonable juror would have convicted her due to her purported evidence, and the Court should reject her actual innocence argument." (ECF No. 17, PageID #: 1480).

As an initial matter, the undersigned does not find that Ayers failed to exhaust her ineffective assistance of trial counsel claim. In its opinion finding that Ayers' ineffective assistance claim was not time barred, the Sixth Circuit held that the Lentini report established the factual predicate— the vital facts underlying a claim—of Ayers' ineffective assistance of trial counsel claim. *Ayers v.*

*Ohio Dep't of Rehab. & Correction*, 113 F.4th 665, 670–71 (6th Cir. 2024), *cert. denied sub nom.*

*Chambers-Smith v. Ayers*, 145 S. Ct. 1632 (2025). The Sixth Circuit Court further held that Ayers

could not have discovered this factual predicate, through the exercise of due diligence, prior to her

being represented by the Ohio Innocence Project, and their retaining Mr. Lentini to produce the

report. *Id.* at 673. The Court additionally explained that "Ayers could not have known the basis for

her ineffective-assistance claim until an expert explained that Winters was unqualified to testify

against her" and it did not find that Ayers had notice of the facts underlying her ineffective

assistance claim before such report was produced, writing, "She could not have known that the

substance of Winters's testimony was unreliable and unscientific unless a qualified expert revealed

it to her, and that did not happen until Lentini produced his report." *Id.* at 674. Thus, based on the

Sixth Circuit's findings regarding Ayers' inability to learn of the factual predicate underlying her

claim until Mr. Lentini produced his report, years after the trial court entered judgment against her,

and, therefore, years after her direct appeal was due, the undersigned does not find that Ayers failed

to exhaust her ineffective assistance of trial counsel claim for failing to raise this identical claim

on direct appeal or by failing to appeal the negative disposition of the claim of ineffective

assistance of counsel she did raise on direct appeal.

The undersigned now turns to whether Petitioner's claim was procedurally defaulted. When

reviewing Petitioner's motion for post-conviction relief and motion for leave to file a motion for

new trial, the Ohio appellate court applied O.R.C. 2953.23(A)(1) to determine whether the court

could consider Ayers' untimely post-conviction motion. The appellate court upheld the trial court's

denial of Ayers' motion for post-conviction relief after reviewing the merits of her ineffective

assistance claim and finding Ayers failed to prove "by clear and convincing evidence that a

constitutional error occurred during her jury trial, and that no reasonable factfinder would have

found her guilty but for the constitutional error at trial" as required under O.R.C. 2953.23(A)(1)(b). *Ayers*, 2022 WL 1946586, at *17. The appellate court then considered Ayers' motion for leave to file a motion for a new trial. Ohio Criminal Rule 33(B) explains that if a defendant fails to file a motion for a new trial within 120 days of the jury's verdict, he or she must seek leave from the trial court to file a delayed motion. Ohio Crim. R. 33(B). The appellate court explained that "[t]o obtain leave, the defendant must show by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days." *Id.* The Ohio trial court found Ayers was not "unavoidably prevented" from discovering the new evidence, but the appellate court found it "unnecessary to reach [the] issue" of whether Ayers was unavoidably prevented from discovering the facts on which she relied. (ECF No. 15-1, PageID #: 727–28); *Ayers*, 2022 WL 1946586, at *18. Rather, the court appeared to return to the merits review it completed in assessing the post-conviction relief motion and seemingly applied O.R.C. 2953.23 again, finding "Ayers has not shown a constitutional error occurred during her jury trial and that no reasonable fact-finder would have found her guilty but for the constitutional error at trial." *Ayers*, 2022 WL 1946586, at *17 (citing O.R.C. § 2953.23(A)(1)(b)). The court continued, explaining that "[b]ecause Ayers's [sic] failed to meet her burden under R.C. 2953.23(A)(1)(b), Ayers's motion for a new trial would be without merit, therefore rendering moot a hearing on her motion for leave to file a motion for a new trial" and upholding the trial court's denial of Ayers' motion for leave to file a motion for a new trial. *Id.* at *19.

Petitioner and Respondent disagree on whether the Ohio appellate court's upholding the trial court's decision denying Ayers' motion for leave to file a motion for new trial, based on Ayers' inability to meet the second prong of 2953.23(A)(1) procedurally bars her ineffective assistance of counsel claim. Petitioner argues that the Ohio appellate court erred in applying O.R.C. 2953.23 to

deny her motion and procedurally bar her claim, and, thus, under Sixth Circuit precedent, the claim is not barred. (ECF No. 16, PageID #: 1449–50). Respondent, rather, asserts that this Court, sitting in habeas review, cannot question the state court's application of state procedural law. (ECF No. 17, PageID #: 1477).

The undersigned finds that in holding that "[b]ecause Ayers's [sic] failed to meet her burden under R.C. 2953.23(A)(1)(b), Ayers's motion for a new trial would be without merit, therefore rendering moot a hearing on her motion for leave to file a motion for a new trial," the Ohio appellate court did not find that Ayers' failure to comply with a state procedural rule prevented the it from reaching the merits of her claim. *Ayers*, 2022 WL 1946586, at *19; *see also Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Rather, the Ohio appellate court conducted a merits analysis of Petitioner's ineffective assistance of counsel claim to hold that it would be futile to grant a hearing on a motion for leave to file a motion for a new trial. *Ayers*, 2022 WL 1946586, at *18–19. Thus, Ayers' ineffective assistance of counsel claim was not procedurally defaulted.[5]

---

[5] However, the undersigned finds that Ayers' second basis for arguing that her trial counsel was ineffective—that he failed to object to Inspector Winters' testimony related to the two-points-of-origin theory even though the theory was not disclosed in Winters' expert report—is procedurally defaulted, and Petitioner cannot show cause and prejudice under the *Martinez/Trevino/White* trilogy to excuse the default. The undersigned does not find that Ohio law makes it "'virtually impossible' for [Ayers] to meaningfully raise an ineffective-assistance-of-trial-counsel claim on direct appeal," on this basis, or that Ohio law effectively forced this claim to be brought through post-conviction relief proceedings, as is required to prove cause under *Martinez/Trevino/White*, because this claim of ineffective assistance, unlike the claim of ineffective assistance based on counsel's failure to consult an expert, does not rely on information outside the record. *See White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 276–78 (6th Cir. 2019) (citing *Martinez v. Ryan*, 566 U.S. 1, 9, 17 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013)) (discussing the requirements petitioners with underlying ineffective assistance of trial counsel claims must meet to overcome procedural default at the post-conviction stage). Regardless of whether this new two-points-of-origin testimony was accurate or inaccurate, it was not contained in Winters' expert report that was delivered to defense counsel (or in the draft report obtained by Ayers' trial counsel). Thus, under Ohio Criminal Rule 16(K), testimony related to the two-points-of origin theory should have been precluded at trial. Ohio Crim. R. 16(K). Therefore, Petitioner

Because the undersigned finds that Ayers' ineffective assistance of counsel claim was not procedurally defaulted, it need not consider whether she demonstrated cause and prejudice to excuse the default or whether she is actually innocent and whether it would be a miscarriage of justice to refuse to consider her ineffective assistance claim on procedural grounds.

## B.  AEDPA Deference

Petitioner argues that the Fifth District Ohio Court of Appeals lacked jurisdiction, under its own procedural holdings and Ohio law, to consider the merits of her ineffective assistance of trial counsel claim and, thus, that its "purported findings on the merits are void and not entitled to deference pursuant to 28 U.S.C. 2254(d)." (ECF No. 16, PageID #: 1456–58). "Instead," Petitioner argues, "the Court should proceed to do a de novo review of the merits." (ECF No. 16, PageID #: 1458).

Generally, "if a state court decides a claim on the merits, that decision is subject to significant deference" under 28 U.S.C. § 2254(d). *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 592–93 (6th Cir. 2012)). *See also* 28 U.S.C. § 2254(d).

When reviewing a petitioner's claim on habeas review, the court looks to the last reasoned state court decision. *Reign v. Gidley*, 929 F.3d 777, 780 (6th Cir. 2019) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803–05 (1991)). Here, the last reasoned state court decision is the Ohio Fifth District Court of Appeals' decision upholding the trial court's denial of Petitioner's motion for post-

---

was not required to wait until she uncovered evidence of the inaccuracy of Inspector Winters' two-points-of-origin theory, which the Sixth Circuit Court of Appeals found could only be discovered by obtaining an expert, to raise this basis for finding counsel ineffective. Rather, trial counsel's failure to object to the two-points-of-origin testimony should have been, and could have been, raised on direct appeal and, therefore, is barred by *res judicata*, as the Ohio appellate court found, and such procedural default is not excused.

conviction relief and motion for leave to file a motion for a new trial. *See State v. Ayers*, No. 2021CA00134, 2022 WL 1946586 (Ohio Ct. App. June 6, 2022). In its decision, the Fifth District Court of Appeals held that the trial court "correctly concluded that it lacked jurisdiction to consider Ayers's untimely petition for post-conviction relief." *Id.* at *17. But in making this finding, the appellate court conducted a merits review of Petitioner's ineffective assistance of trial counsel claim. *Id.* at *13. When later considering whether the trial court erred in denying Petitioner's motion for leave to file a motion for a new trial, the appellate court again relied on this merits review to determine that "Ayers's motion for a new trial would be without merit, therefore rendering moot a hearing on her motion for leave to file a motion for a new trial" and upholding the trial court's denial of her motion for leave to file a motion for a new trial. *Id.* at *18–19.

The undersigned does not find the Ohio appellate court acted inappropriately in considering the merits when determining whether it had jurisdiction to consider Petitioner's motion for post-conviction relief. For the state court to have jurisdiction to consider an untimely post-conviction relief petition, "petitioner [must] show[] by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted." O.R.C. 2953.23(A)(1)(b). Thus, the petitioner must necessarily show that a constitutional error indeed occurred at trial, which therefore would require the court to perform a merits analysis on the claim of the underlying constitutional error. Thus, the undersigned finds the merits review the Ohio appellate court conducted, before determining the trial court was correct in determining it lacked jurisdiction due to Ayers' failure to meet the requirements of Section 2953.23(A)(1)(b), was appropriate.

At the same time, the undersigned is also aware of Sixth Circuit precedent that finds that "Ohio courts have interpreted their own law to conclude that where a court lacks jurisdiction, any

judgment on the merits is rendered *void ab initio*." *Gumm v. Mitchell*, 775 F.3d 345, 362 (6th Cir. 2014) (citing *Gumm v. Mitchell*, No. 1:98-CV-838, 2009 WL 7785750 (S.D. Ohio Sept. 28, 2009), *report and recommendation adopted in part, rejected in part*, No. 1:98-CV-838, 2011 WL 1237572 (S.D. Ohio Mar. 29, 2011), *aff'd*, 775 F.3d 345 (6th Cir. 2014) (quoting *Patton v. Diemer*, 35 Ohio St. 3d 68, 70, 518 N.E.2d 941 (1988))). Here, when the Ohio appellate court found that the trial court was correct in concluding it lacked jurisdiction to consider Petitioner's motion for post-conviction relief, it rendered any merits decision it made on the ineffective assistance of counsel claim underlying the petition for post-conviction relief *void ab initio*, as it was without jurisdiction to reach the merits. *See id.* Thus, while the undersigned finds that it was proper for the Ohio appellate court to review the merits of Petitioner's ineffective assistance of trial counsel claim to determine if it had jurisdiction to consider Petitioner's untimely motion for post-conviction relief, which relied on that ineffective assistance of counsel claim, it does not find, based on Sixth Circuit precedent, that the Court should give AEDPA deference to the merits decision the Ohio appellate court made when considering the post-conviction relief motion, for any merits decision made when lacking jurisdiction is *void ab initio*. *See id*.

However, the undersigned does find the merits decision the Ohio appellate court made when considering whether the trial court erred in denying Petitioner's motion for leave to file a motion for new trial is entitled to AEDPA deference. Petitioner argues that the Ohio appellate court erred when it considered the merits of the ineffective assistance of trial counsel claim to find that "[b]ecause Ayers's [sic] failed to meet her burden under R.C. 2953.23(A)(1)(b), Ayers's motion for a new trial would be without merit, therefore rendering moot a hearing on her motion for leave to file a motion for a new trial" and, therefore, that the trial court did not err in denying Ayers' motion for leave to file a motion for a new trial. (*See* ECF No. 16, PageID #: 1458). Specifically,

Petitioner argues that by the Ohio appellate court lacked jurisdiction to consider the merits of the claim underlying her motion for new trial because it did not yet grant Petitioner's motion for leave to file a motion for new trial, thus, under Ohio law, the motion for a new trial was not yet before the court. (ECF No. 16, PageID #: 1458).

The undersigned recognizes that the Ohio Supreme Court has found that "[w]hen a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave." *State v. Hatton,* 169 Ohio St. 3d 446, 454, 205 N.E.3d 513 (2022). However, the Ohio Supreme Court has also held that under procedural circumstances where, as here, a defendant simultaneously files a motion for post-conviction relief and a motion for leave to file a motion for a new trial, and those motions advance the same underlying arguments, the court considering the motion for leave to file a motion for a new trial may utilize the merits review it conducted while analyzing the defendant's post-conviction relief motion to find that the claim underlying the defendant's motion for new trial lacks merit and, thus, that a hearing on the motion for new trial would be futile, and the court need not remand to a lower court merely  to comply with the technical requirements of Ohio Criminal Rule 33(B). *State v. Bethel*, 167 Ohio St. 3d 362, 369–72, 377, 192 N.E.3d 470. It is not for the undersigned to determine whether these state law holdings conflict with one another, or "reexamine state-court determinations on state-law questions." *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). As it appears that *Bethel* is still good law, it appears to the undersigned that the Ohio appellate court properly considered the merits of Petitioner's ineffective assistance of trial counsel claim when it reviewed Petitioner's motion for leave to file a motion for new trial alongside her motion for post-conviction relief that raised the same arguments. Thus, the

undersigned will apply AEDPA deference when reviewing the Ohio appellate court's merits decision.

## C. Merits Review

Petitioner claims that her trial counsel performed deficiently by failing to consult with an arson expert and failing to object to Inspector Winters' undisclosed conclusion that the fire had two points of origin. (ECF No. 14-1, PageID #: 117, 121). She further asserts that she was prejudiced by the "individual and cumulative impact" of these failures. (ECF No. 14-1, PageID #: 125). Respondent argues that Ayers' trial attorney did not perform deficiently or actually prejudice Ayers by strategically deciding not to retain an arson expert or failing to object to Winters' two-points-of-origin testimony. (ECF No. 15, PageID #: 210). As discussed in footnote five above, the undersigned finds, as did the Ohio appellate court, that Ayers procedurally defaulted the basis of her claim asserting that her trial counsel was ineffective for failing to object to Winters' two-points-of-origin theory, and, therefore, the undersigned reviews only Petitioner's claim that her trial counsel was ineffective for failing to consult an independent arson expert.

### 1. Review with AEDPA Deference

Because the Ohio appellate court made a merits decision regarding the ineffective assistance of trial counsel claim underlying Ayers' motion for leave to file a motion for a new trial, this Court must give AEDPA deference to that decision. *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011). In considering the merits of Petitioner's claim that her trial counsel was ineffective for failing to consult an arson expert, the court wrote:

> {¶63} In support of her contention that she was denied effective assistance of counsel because her trial attorney did not consult with an expert witness, Ayers submitted the affidavit of John J. Lentini, a renowned forensic arson expert. Lentini concludes "unequivocally and to a reasonable degree of professional certainty" that:

30

1). "The proposition that this fire had two points of origin is unsupportable by any generally accepted methodology,"

2). "Mr. Winters used circular logic to conclude that the fire could not have been set by Ms. Ayers's son Brennan,"

3). "Despite claiming to follow NFPA 921, Mr. Winters disregarded its guidance in several important ways," and

4). "Mr. Winters demonstrated by his testimony that he is not qualified to investigate fires per NFPA 1033, the generally accepted industry standard."

Lentini Affidavit at ¶ 9. Mr. Lentini is highly critical of the state's expert Fire Inspector Reginal Winters.

. . .

{¶ 66} In the case at bar, the undisputed facts at trial were that a fire occurred on a mattress located in the basement that caused damage to the residence. The disputed facts at trial were whether Ayers stared the fire intentionally or accidentally, or, whether the 3-year-old child started the fire.

{¶67} Mr. Lentini's affidavit does not exonerate Ayers or reduce her culpability. In other words, Mr. Lentini does not opine that 1). the fire was of accidental origin; 2). a person could not have intentionally started the fire; or 3). having only one ignition point rules out that the fire was started intentionally. To answer those questions the jury must necessarily look to the other evidence present by the state during Ayers's jury trial.

{¶ 68} Ayers's father testified he had previously discussed finances with her, and the fact she had not been contributing to the household financial situation. Mr. Ayers told Ayers that he was planning to move to West Virginia. Jeff Ayers testified that Ayers became more aggressive toward him and began to make threats to the point that he feared for the safety of his family. 1 T. at 309-310. Jeff Ayers testified that Ayers threatened to burn the house down. *Id.* He became so concerned that he called his sister, aunt and the landlord and told them that Ayers was threatening to burn the house

31

down. 1 T. at 310. The fire occurred on the day that he left the home for West Virginia. 1T. at 312.

{¶69} Additionally, a neighbor of Ayers, Jason Pandrea, testified he heard Ayers threaten her father with burning the house down if he ever left. 1 T. at 339. Pandrea testified that Ayers "meant it." 1T. at 341.

{¶70} The jury viewed the video of Ayers's statement to Fire Inspector Winters and Patrolman Curtis Rucker from the Massilon Police Department. 1 T. at 195; 201. State's Exhibit 1. The jury was shown pictures of the scene after the fire had occurred.

{¶ 71} Inspector Reginald Winters was the state's expert. 1T. at 225. Winters did not find evidence of a cigarette as the cause of the fire. 1 T. at 240. Winters identified the State's Photograph Exhibits that he took of the scene of the fire. 1 T. at 243; 2T. at 273, 275. Winters was able to exclude cigarettes, natural gas, accelerants, and an electrical cause for the fire. 1 T. at 248- 249. Winters testified the cause of the fire was incendiary (open flame) and a person or persons started the fire. 1T. at 250.

{¶ 72} The jury heard Ayers's statement to Massillon Paramedic Richard Annen that she was running upstairs to get her son when the fire started in the basement. 1 T. at 186. Ayers initially told Annen that the child started the fire; however, she later claimed that she might have fallen asleep. 1T. at 206-207. Annen looked in the child's mouth and on his face and found no evidence of soot, which would indicate that the child had been near the fire. *Id.* at 185. He found evidence of soot on Ayers. 1 T. at 186-187.

{¶ 73} At the hospital, Ayers claimed to be in the basement folding clothes when she noticed her son playing with a lighter on the mattress. 2T. at 261. When asked how she could see a small fire on the bed with the chimney, hot water tank and furnace blocking her view from her position near the clothes dryer she was unable to answer. 2T. at 263.

{¶ 74} The jury also had audio recordings of calls made by Ayers while she was in jail. Exhibit 2. This Court notes that State's Exhibit 2 is a disk containing 34 phone calls that Ayers made from the jail while she was awaiting trial. However, only "snippets" from two calls were played for the jury and admitted into evidence. 2T. at 397-398. The state never identified the specific portion of the calls that were played for the jury and admitted into evidence.

{¶ 75} It is not unusual in a case in which highly technical, medical or other specialized evidence is presented for the experts presented by each party to criticize the other's training, methodology, and/or conclusions. When a so-called "battle of experts" takes place during a jury trial such criticisms go to the weight not the admissibility of each expert's opinion. An expert witness is not required to be the best witness on the subject. *Alexander v. Mt. Carmel Med. Ctr.,* 56 Ohio St.2d 155, 159, 383 N.E.2d 564(1978). (Citations omitted.)

{¶ 76} The majority of Lentini's opinion centers on his belief that Winters is not qualified, or did not use the techniques that Lentini believes are the best practice. When viewed in this light, Lentini's affidavit has only limited probative value. His opinion does not exonerate Ayers or reduce her culpability. He opines only that Fire Inspector Winters's expert testimony was "unreliable, unscientific, and at odds with generally accepted fire investigation methodology." Lentini Affidavit at 1J32. Lentini's opinion does not affect the other testimony and evidence that was presented during Ayers's jury trial.

{¶ 77} In light of the evidence produced that did not depend upon expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373(1989). The testimony of Lentini could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Ayers was not denied her right to due process and fair trial by counsel's failure to consult an expert witness.

*State v. Ayers*, No. 2021CA00134, 2022 WL 1946586, at *10, 11–13 (Ohio Ct. App. June 6, 2022).

Petitioner argues that while the state appellate court "acknowledged the standard set forth in *Strickland*, it steadfastly ignored the explicit importance of Winters's 'two points of origin' conclusion to the State's case, and it repeatedly returned to a 'sufficiency of evidence' analysis, finding the Lentini affidavit would not have 'exonerated' Ms. Ayers." (ECF No. 16, PageID #: 1458, n.8) (quoting ECF No. 15-1, PageID #: 851).  Petitioner argues that while this "may make

sense under the higher jurisdictional threshold of R.C. 2953.23, it contradicts Supreme Court precedent as set forth by *Strickland* and its progeny." (ECF No. 16, PageID #: 1458, n.8) (quoting *Strickland*, 466 U.S. 668, 694 (1984)).

The undersigned disagrees with Petitioner's categorization of the Ohio appellate court's merits determination. The Ohio appellate court acknowledged and applied the prejudice standard outlined in *Strickland*. *Ayers*, 2022 WL 1946586, at \*9, 13; *Strickland*, 466 U.S. at 694. Further, the appellate court did not revert to a sufficiency analysis but rather identified the other evidence the State produced against Ayers and held that the Lentini report, which merely questions Winters' qualifications and whether his methods were best practices, was of limited probative value. *Ayers*, 2022 WL 1946586, at \*12. For, as competing expert testimony does in many cases, this criticism merely creates a battle of the experts. It does not change, affect, or negate the other evidence produced by State. The decisions of which expert to believe, whether to believe the State's other evidence of guilt, and, ultimately, whether to determine that the fire was the result of arson committed by Ayers, were left to the jury.

This is not the case where there is no possibility that fair-minded jurists could disagree that the state court's decision was an unreasonable application of *Strickland* or other Supreme Court precedent. Thus, the Court has no authority to issue Petitioner's writ of habeas corpus. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Because Ayers has not proven that the Ohio appellate court's decision was an unreasonable application of Supreme Court precedent or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, the undersigned recommends that the Court deny and dismiss Ayers' petition for habeas relief.

## 2. De Novo Review

As it has found that the Ohio appellate court's merits determination is entitled to AEDPA deference and that the appellate court's merits decision was not an unreasonable application of Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, the undersigned need not go any further. In an abundance of caution, however, the undersigned reviews de novo the merits of Petitioner's ineffective assistance of counsel claim below and recommends that even if the Court finds that the Ohio appellate court's decision is not entitled to AEDPA deference, and therefore that de novo review is appropriate, the Court should still deny and dismiss Ayers' habeas petition.

Petitioner argues that her trial counsel was deficient for failing to consult with an independent arson expert. She asserts that the "United States Supreme Court has recognized that the failure to consult with an expert can be ineffective assistance of counsel." (ECF No. 14-1, PageID #: 117) (citing *Harrington*, 562 U.S. at 106).  Ayers further argues that there is "rarely strategic justification for failing to learn what an independent expert would say regarding a centrally important forensic issue." (ECF No. 14-1, PageID #: 117).  She then heavily relies on *Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007), to argue that "[o]n similar facts," the Sixth Circuit "has found that failure to consult with an independent arson expert can amount to ineffective assistance of counsel." (ECF No. 14-1, PageID #: 118). Further, Petitioner explains, this case presents an "even more extreme version of ineffectiveness," as counsel in *Richey* consulted with someone regarding the State's arson conclusions, but her trial counsel committed what the *Richey* Court deemed the "most egregious type" of ineffectiveness by failing altogether to hire or consult with an expert. (ECF No. 14-1, PageID #: 120) (quoting *Richey*, 498 F.3d at 362).

Respondent asserts that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (ECF No. 15, PageID #: 207) (quoting *Strickland*, 466 U.S. at 690). Respondent continues, explaining that "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (ECF No. 15, PageID #: 207) (quoting *Strickland*, 466 U.S. at 691) and that "[i]n assessing the reasonableness of an attorney's investigation … a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." (ECF No 15, PageID #: 207–08) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). Respondent argues that Ayers' trial counsel made strategic decisions "to not retain an arson expert and not present an arson expert as a defense witness" and that the Court cannot second guess those decisions. (ECF No. 15, PageID #: 209).

Respondent further argues that Ohio federal district courts have found that defense counsel is not required to hire an expert to combat the State's witness' testimony and may instead rely on cross examination and closing argument to impeach the testimony. (*See* ECF No. 15, PageID #: 208) (citing *Jackson v. Bradshaw*, No. 2:03-cv-983, 2007 WL 2890388, at *18 (S.D. Ohio Sept. 28, 2007); *affirmed* 681 F.3d 753 (6th Cir. 2012) (citing *Madrigal v. Bagley*, 276 F.Supp.2d 744, 791 (N.D. Ohio 2003))).

Finally, Respondent argues that Ayers' case is materially distinguishable from *Richey*—the case on which Ayers so heavily relies to argue that her counsel was ineffective for failing to retain an expert—asserting that in *Richey*, trial counsel "affirmatively recognized the need for an expert

and retained one, but counsel then unreasonably failed to consult the expert to help with the defense." (ECF No. 17, PageID #: 1481) (quoting *Kendrick v. Parris*, 989 F.3d 459, 471 (6th Cir. 2021) (citing *Richey*, 498 F.3d at 362)). Respondent further argues that the "Sixth Circuit has distinguished *Richey*'s holding from situations like Ayers' where 'a fairminded jurist could conclude that counsel had reasonably decided that no expert was necessary given [the State's witness'] anticipated testimony.'" (ECF No. 17, PageID #: 1481) (quoting *Kendrick*, 989 F.3d at 471).

Petitioner argues in return that her trial counsel did not make a "'strategic decision' to remain ignorant about the key forensic issue in the trial" and explains instead that her trial counsel was "simply unprepared to challenge the basic errors in [Inspector] Winters' arson conclusions." (ECF No. 16, PageID #: 1460). Petitioner also recognizes that it is true that "defense counsel is not required to present an expert witness when the attorney can 'instead rely on cross examination and closing arguments to impeach [expert] testimony'" and explains that if her trial counsel "had sufficient knowledge and expertise regarding arson investigations, he might have been able to effectively impeach Inspector Winters himself, without calling an expert to testify." (ECF No. 16, PageID #: 1461). But, Petitioner argues, that is not what happened in her case. Rather, her counsel failed to impeach the inspector on "any of the critical flaws uncovered in the Lentini Report"—he "did not challenge Winters' misuse of basic terminology or inadequate qualifications and "[m]ost importantly, . . . failed to impeach Winters on his unsupported conclusion that the fire had 'two points of origin,'" which the State heavily relied on when proving its case. (ECF No. 16, PageID #: 1461).

In *Richey v. Bradshaw*, Kenneth Richey was convicted and sentenced to death in Ohio state court for aggravated felony murder after he allegedly intentionally set fire to an apartment building,

and that fire resulted in the death of a young child. 498 F.3d at 346. At trial, the State argued that Richey used accelerants to start the fire, specifically gasoline and paint thinner that he had stolen from a nearby greenhouse, and to corroborate its theory, the State presented two experts—one from the state fire marshal's office and another from the state arson lab—who explained that scientific evidence supported the State's assertion that accelerants were used. *Id.* at 347. Richey's trial counsel retained an expert,[6] Gregory DuBois, "to investigate the cause of the fire and test the conclusions of the State's experts." *Id.* DuBois met with one of the State's experts, "for the purpose of having him review the forensic evidence and explain his conclusions," then informed Richey's counsel that he agreed with the State's arson conclusions. *Id.* at 348. Richey's counsel "did not question DuBois about the nature of his investigation or ask him to explain why he concurred with the State" and "didn't challenge [DuBois] on what [he] thought . . . [or] what [he] did or anything." *Id.* (internal quotations and citations omitted). At trial, defense counsel did not introduce any scientific evidence to rebut the State's conclusions, rather, he limited his cross examinations of the State's experts to the lack of accelerants on Richey's clothing and shoes and the chain of custody of the living room carpet from the apartment where the fire occurred, as the carpet had been to the county dump before being tested for accelerants. *Id.* Thus, "the State's assertions that the fire was caused by arson went entirely unchallenged." *Id.*

During the post-conviction proceedings stage, Richey retained two fire experts who "opined that the State used flawed scientific methods not accepted in the fire-investigation community to determine that arson caused the fire and that the samples of carpeting and wood from [the]

---

[6] The undersigned uses the term "expert" when referring to Mr. Dubois, the person with whom Richey's counsel consulted, because the *Richey* Court referred to him as an expert. However, the undersigned notes that the *Richey* Court also explains that Mr. DuBois did not have special expertise in arson investigations and had little arson-related training. *Richey*, 498 F.3d at 347.

apartment did not contain evidence of accelerants." *Id.* Finally, one expert found that the State ignored facts that make it just as likely that the fire was caused by careless discard of smoking materials than by arson. *Id.* The state post-conviction court denied Richey's request for an evidentiary hearing, the appellate court affirmed, and the Supreme Court of Ohio declined jurisdiction. *Id.* Richey filed for federal habeas relief. *Id.*

The Sixth Circuit court found that "the state courts unreasonably applied *Strickland* in holding that Richey had received constitutionally effective assistance of counsel." *Id.* at 361. The Court found Richey's trial counsel was constitutionally ineffective, explaining that the State's scientific evidence of arson was "fundamental" to its case, but defense counsel did "next to nothing" to determine if the arson conclusion was "impervious to attack." *Id.* at 362. The Court further explained that "the record shows that Richey's counsel did not conduct the investigation that a reasonably competent lawyer would have conducted into an available defense—that the fire was not caused by arson—before deciding not to mount that defense." *Id.* The Court noted that Richey's counsel appeared unconcerned about the State's arson conclusions from the beginning—explaining that he learned of the State's arson theory approximately six months before trial but did not authorize his retained expert to meet with the State's expert until two months before trial. *Id.* The Court found that it was:

> inconceivable that a reasonably competent attorney would have failed to know what his expert was doing to test the State's arson conclusion, . . . failed to work with the expert to understand the basics of the science involved, at least for the purposes of cross examining the State's experts, and would have failed to inquire about why his expert agreed with the State.

*Id.* Finally, the Court concluded "[a] lawyer cannot be deemed effective where he hires an expert consultant and then either willfully or negligently keeps himself in the dark about what that

expert is doing, and what the basis for the expert's opinion is." *Id.* at 363. The Court held that defense counsel had a duty to know enough to make a reasoned determination about whether he should abandon a possible defense based on his retained expert opinion, and he did not take steps to make such a reasoned determination. *Id.* The Court further explained that it could discern no possible strategic reason why Richey's counsel would readily concede the existence of arson to the State. *Id.*

While the undersigned sees how the instant case and *Richey* are factually similar—in both cases the defendants were found to have committed arson, the State relied heavily on scientific testimony to prove arson, defense counsel presented no rebuttal expert witness testimony, and at the post-conviction-proceedings stage, defendants retained experts who opined that the State's experts' conclusions were unsupported by generally accepted fire-investigation methodology— and thus understands Petitioner's reliance on *Richey* to argue that this Court, like the Sixth Circuit Court of Appeals did in *Richey*, should find her trial counsel ineffective. However, the undersigned agrees with Respondent that this case is distinguishable from *Richey*. As Respondent points out in its reply to Petitioner's traverse, Richey's trial counsel *knew of* the State's arson theory—the State's theory that Richey stole and used accelerants to start the fire—well in advance of trial and recognized the need for an expert, retaining DuBois six months prior to trial. *Id.* at 362. Here, nothing in the record before this Court suggests that, during the time leading to trial, Ayers' counsel knew of information that made him believe consulting an expert was necessary for Ayers' defense, unlike Richey's counsel.

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). And when assessing the

reasonableness of counsel's investigation, "a court must consider not only the quantum of evidence *already known* to counsel, but also whether the *known* evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003) (emphasis added).

Based on the record, it appears to the undersigned that prior to trial, when choosing to forgo consulting an expert, Ayers' trial counsel had obtained a draft copy[7] of Inspector Winters' report related to the fire at Ayers' residence. (ECF No. 15-1, PageID #: 632, 633; ECF No. 15-2, PageID #: 1220–25). Based on this report, he knew of the State's position that the fire was started due to the "deliberate act of a person," was ignited by some sort of open flame, occurred on a bed, and was a result of arson. (ECF No 15-1, PageID #: 497–98). However, the report also contained several errors—claiming in one place that the fire occurred on the first floor of the home and that ignitable liquid vapors (gasoline) were used. (ECF No 15-1, PageID #: 498). In addition to this information, the record reflects that Ayers' counsel also knew that Ayers' three-year-old son, present at the time of the fire, was able to use a lighter and that Ayers had suggested to the police and fire inspector that she may have fallen asleep prior to the fire. (ECF No. 15-1, PageID #: 451, 480). Based on this information, defense counsel proceeded to trial with the strategy to present two alternatives to Ms. Ayers' committing arson: first, that Ayers' three-year-old son, Bubba,

---

[7] The undersigned understands that this draft report was later updated and replaced by a final report that did not contain the errors contained in the draft report—mention of the fire occurring on the first floor and the use of ignitable liquid vapors or gasoline were both removed from the final copy—which was delivered to and signed for by Petitioner's counsel during discovery. (ECF No. 15-2, PageID #: 1220–25). Petitioner raised the issue of ineffective assistance of counsel on direct appeal based on her trial counsel's failure to prepare for trial using the correct, updated report. Her ineffective assistance claim was denied, and she did not properly appeal it in the state court. *State v. Ayers*, No. 2013CA00034, 2013 WL 6506473, * 3–4 (Ohio Ct. App. Dec. 9, 2013). Ayers does not attempt to re-raise this claim here on habeas review, and if she did, the claim would be procedurally defaulted. The fact that this report was a "draft" or incorrect copy does not change the information that was *known* to Ayers' trial counsel during the time before trial.

started the fire with a cigarette lighter and second, that Ayers fell asleep while smoking and accidentally dropped a cigarette, catching the bedsheets on fire. (*See* ECF No. 15-2, PageID #: 1205–06, 1371) Additionally, Ayers' trial counsel attempted to exploit the errors contained in Inspector Winters' draft report to sow doubt in the jurors mind relating to the accuracy or credibility of Winters' testimony. Counsel questioned several witnesses on cross examination about the lack of gasoline or other chemicals in the basement and about the location of the fire and questioned Winters directly about the errors in his report. (ECF No. 15-2, PageID #: 1116, 1129, 1144–45, 1207–09, 1217–18). The undersigned finds that this was a reasonable trial strategy based on the information known to counsel.[8] Counsel had a strategy to undermine the jury's confidence in the State's expert witness and had a plan to produce two reasonable alternatives to how the fire began, rather than through the deliberate actions of Ms. Ayers.

At trial, however, the State's expert witness gave unforeseen testimony, opining that the fire had two points of origin. (ECF No. 15-2, PageID #: 1167–68). Petitioner herself explains that this theory was not included in either the draft or final copy of Inspector Winters' report related to the fire. (ECF No. 14-1, PageID #: 129). Petitioner essentially argues that had her trial counsel consulted with an expert, he would have been able to challenge this two-points-of-origin theory, either through cross examination or rebuttal testimony, as Lentini challenged the two-points-of-origin theory in the affidavit he produced for Petitioner during her post-conviction proceedings, and, thus, Petitioner argues, counsel was ineffective for not consulting an expert and for allowing Winters' theory to go unchallenged. (ECF No. 16, PageID #: 1460–61). The undersigned takes

---

[8]  Again, the undersigned understands from reviewing the record that the inaccurate report relied on by Ayers' trial counsel was merely a draft report and not Inspector Winters' final report. While this may have been an error on Ayers' trial counsel's part, as noted above, this issue was not raised on habeas review and had it been, it would have been procedurally defaulted. Thus, this Court is not tasked with determining whether to use that report was constitutionally ineffective.

issue with this argument for two reasons. First, Mr. Lentini writes in his report that the two-points-of-origin theory raised by Mr. Winters for the first time on the witness stand was "unsupportable by any generally accepted methodology." (ECF No. 15-1, PageID #: 504). Thus, if Ayers' trial counsel had consulted with an arson expert prior to trial, there is no guarantee that such a theory would have been discussed and no guarantee that counsel would have been prepared to cross examine on such an "unsupportable" theory, even had he consulted with an expert. Second, counsel "may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

Here, Ayers' trial counsel had no reason to foresee that that Inspector Winters would introduce, for the first time, while on the witnesses stand, an entirely new theory related to the fire's origination. Based on the information *known* to counsel during the time leading up to trial—including Winters' anticipated testimony, that the fire occurred on a bed in the basement, that Ayers' three-year-old son was with her in the home and knows how to work a lighter, that Ayers reported that she may have fallen asleep before the fire, and that Winters' report appeared to have some inaccuracies—Ayers counsel formed the reasonable trial strategy to present two alternatives to Ayers' knowingly starting the fire and to undermine Winters' credibility by attacking the errors in his report on cross examination. Based on the information known to counsel at the time, and the anticipated testimony of Inspector Winters, the undersigned sees no reason that reasonable counsel would have felt the need to investigate the cause of the fire further or necessarily consult an expert. *See Kendrick v. Parris*, 989 F.3d 459, 476 (6th Cir. 2021) (distinguishing *Kendrick* from *Richey* by finding that it was reasonable for Kendrick's counsel to build his case around the State's witness' anticipated testimony, and that "a fairminded jurist could conclude that counsel had reasonably decided that no expert was necessary given [the witness'] anticipated testimony").

The undersigned finds that based on the information *known* by Ayers' counsel prior to trial and Winters' anticipated testimony, Ayers' trial counsel made a reasonable decision to forgo consulting with an expert and to not investigate further. Counsel had formed a reasonable trial strategy based on the information known by him, and the fact that the strategy ended up not working in the defense's favor, or as well as counsel had hoped—due to Winters' introducing a completely new and unforeseen two-points-of-origin theory—does not make Ayers' trial counsel ineffective. *See Harrington*, 562 U.S. at 110 ("*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney'" and "there is no expectation that competent counsel will be a flawless strategist or tactician . . . .") (internal citations omitted). Thus, the undersigned finds that counsel's performance did not fall below an objective standard of reasonableness due to his not consulting an arson expert in this case.

Because the undersigned does not find that Ayers' trial counsel was deficient in this case, it need not address whether counsel's performance prejudiced Petitioner.

As Petitioner has not shown that her trial counsel was constitutionally ineffective for failing to consult an arson expert, the undersigned recommends that Ayers' petition be denied and dismissed.

## VI. Certificate of Appealability

### A.  Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v.*

44

*McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B. Analysis

In this case, Petitioner makes a substantial showing of the denial of a constitutional right. The undersigned finds that the Ohio appellate court's merits determination is entitled to AEDPA deference, and Petitioner has not demonstrated that the determination involved an unreasonable application of Supreme Court precedent, nor that it is based on an unreasonable determination of the facts in light of the evidence presented during the state court proceedings. Alternatively, the undersigned finds, on de novo review, that Petitioner has not ultimately shown that her trial counsel performed so deficiently—by failing to consult an arson expert—as to be considered constitutionally ineffective. But the undersigned also finds that if the Court accepts the foregoing recommendation, reasonable jurists could find the District Court's holding that the Ohio appellate court's decision is entitled to AEDPA deference debatable. Reasonable jurists could also likely find the Court's de novo assessment of Petitioner's ineffective assistance of trial counsel claim debatable, especially if the jurists disagree with the undersigned's distinguishing this case from *Richey v. Bradshaw*.

For these reasons, the undersigned recommends that the District Court grant a certificate of appealability for Ms. Ayers to appeal her ineffective assistance of trial counsel claim.

### VII.  Recommendation

For the reasons discussed above, the undersigned recommends that the Court DENY and DISMISS Ayers' petition for a writ of habeas corpus but GRANT a certificate of appealability on Ayers' ineffective assistance of counsel claim.

Dated: August 22, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).