UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KAYLA JEAN AYERS, | CASE NO. 5:20-cv-1654 |
| Petitioner, | CHIEF JUDGE SARA LIOI |
| vs. | |
| | MEMORANDUM OPINION AND ORDER |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS, DIRECTOR, | |
| Respondent. | |

By means of a federal habeas petition (Doc. No. 1), as amended (Doc. No. 14), filed pursuant to 28 U.S.C. § 2254, Petitioner Kayla Jean Ayers ("Petitioner" or "Ayers") challenges her 2013 state court convictions for aggravated arson and child endangerment. Following remand from the Sixth Circuit, this Court directed Magistrate Judge Carmen E. Henderson to prepare a Report and Recommendation ("R&R") addressing Petitioner's ineffective assistance of counsel claim. The R&R was issued on August 22, 2025.

Now before the Court is the R&R recommending the denial and dismissal of the amended petition. (Doc. No. 35.) Petitioner has filed objections (Doc. No. 36), and Respondent Director of the Ohio Department of Rehabilitation and Corrections ("Respondent") has filed a response. (Doc. No. 37.) For the reasons stated below, the objections are overruled, and the petition is denied.

**I.   BACKGROUND**

The background surrounding the 2012 fire that gave rise to the state court criminal proceedings and the eventual filing of the federal habeas petition, have been discussed in numerous

opinions—including a thorough recitation in the present R&R. (*See, e.g.*, Doc. Nos. 18, 21, 24.) Familiarity with these prior filings is assumed. For context, Ayers was convicted of crimes associated with a fire that started in the basement of her father's house in Massillon, Ohio. At the time of the fire, Ayers and the youngest of her three children, a three-year-old boy, were the only persons in the house and both managed to escape. The defense proceeded under alternative theories that the fire was accidently started by Ayers when she fell asleep smoking a cigarette or by Ayers's young son while he was playing with a cigarette lighter.

The jury heard from several non-expert witnesses, including Ayers's father, who testified that his relationship with his daughter soured when he asked Ayers to move herself and her children out of his house because she was not contributing to the household's finances. Ayers told her father that she was not leaving and that she would burn down the house if he ever moved out. *See State v. Ayers*, 2021CA00134, 2022 WL 1946586, at *1 (Ohio Ct. App. June 6, 2022). The fire started the day the father moved his own family out of the house. A neighbor at the scene testified that Ayers repeatedly expressed concern that she was going to lose her children as a result of the fire. *Id*.

The prosecution called Inspector Reginald Winters ("Winters") of the Massillon Fire Department, who had investigated the fire at the scene and provided expert testimony on the origins of the fire. He determined that the fire was intentionally set, and he opined that if Ayers's son had started the fire, he would have had to light the fire at one end of the mattress and then crawl across the burning mattress to light it at the second ignition point. He further testified that there were no visible signs of soot on the boy, but that he observed soot on Ayers. *See Ayers*, 2022 WL 1946586, at *1–4. There is no dispute that the "two-points-of-origin" theory espoused by Winters at trial was not disclosed in his expert report and defense counsel did not object to its introduction. As

2

explained below, however, this issue was not properly preserved for federal habeas review.

Following the jury trial, Ayers was sentenced to an aggregate custody term of seven years.[1] She worked her way through the state appellate process and ultimately filed her federal habeas petition on August 27, 2020. She raised a variety of grounds for relief, including ineffective assistance of counsel. Her petition relied heavily on the July 29, 2019 expert report of John J. Lentini (the "Lentini Report") habeas counsel procured years after the trial that challenged several of the conclusions reached by Winters, including Winters's "two-points-of-origin" theory. (Doc. No. 15-1 (State Court Record).) Because Ayers was still pursuing relief in state court, this Court temporarily stayed these habeas proceedings to afford Ayers an opportunity to exhaust her state remedies. (Order [non-document], 12/3/2020.) On June 6, 2022, the state court of appeals issued an opinion affirming the trial court's decision overruling Ayers motion for leave to file a motion for a new trial and petition for post-conviction relief. *See Ayers*, 2022 WL 1946586.

On August 2, 2023, this Court issued a decision adopting the magistrate judge's recommendation that the federal habeas petition be dismissed as time-barred. (Doc. No. 21.) The Sixth Circuit reversed as to Ayers' ineffective assistance of counsel claim and remanded with instructions to consider whether Ayers received ineffective assistance from her trial counsel for: (1) his failure to consult an independent arson expert and adequately challenge the State's expert's testimony, and (2) his failure to object to the introduction of a previously undisclosed expert opinion. *Ayers v. Ohio Dep't of Rehab. & Corr.*, 113 F.4th 665, 667, 669, 674 (6th Cir. 2024), *cert denied sub nom. Chambers-Smith v. Ayers*, 145 S. Ct. 1632 (2025).

---

[1] Ayers was released from prison on August 22, 2019.

## II. The R&R[2]

In her R&R, the magistrate judge recommended finding that the first basis for ineffective assistance of counsel—failure to consult an arson expert and failure to challenge false and unsupported expert testimony—was neither unexhausted nor procedurally defaulted. With respect to exhaustion, the magistrate judge relied on the Sixth Circuit's determination that the Lentini Report—which supplied the factual predicate for this ineffective assistance of counsel claim—was not available until years after Ayers's convictions were final, thus excusing her failure to raise the factual predicate on direct appeal or on state post-conviction review. (Doc. No. 35, at 22–23 (citing *Ayers*, 113 F.4th at 670–71).) As to procedural default, the magistrate judge found that the "Ohio appellate court conducted a merits analysis of Petitioner's ineffective assistance of counsel claim to hold that it would be futile to grant a hearing on a motion for leave to file a motion for a new trial." (*Id*. at 25 (citing *Ayers*, 2022 WL 1946586, at *18–19).)

The second basis for ineffectiveness—trial counsel's failure to object to the introduction of the new expert theory—the magistrate determined, was procedurally defaulted, and Ayers failed to demonstrate cause and prejudice to excuse the default. Because the failure to disclose this new theory was a clear violation of Ohio R. Crim. P. 16(K), it was not "virtually impossible" for Ayers to meaningfully raise this ineffective assistance of counsel claim in a timely fashion on direct appeal or state post-conviction review. (*Id*. at 25 n.5 (citing Ohio Crim. R. 16(K)).)

Additionally, the magistrate judge found that the state appellate court's 2022 decision was

---

[2] Because the Sixth Circuit's grant of a certificate of appealability was limited to Ayers's ineffective assistance of counsel claim, the magistrate judge limited her analysis to the viability of that claim, "finding Petitioner's three remaining claims dismissed as time-barred." (Doc. No. 35, at 19 (citing *Ayers*, 113 F.4th at 669 (All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system)).) Petitioner does not object to this determination, and the Court agrees that her claims of prosecutorial misconduct, fundamentally unreliable evidence, and actual innocence are time-barred.

entitled to deference under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). In reaching this conclusion, the magistrate judge rejected Ayers's argument that the state appellate court lacked jurisdiction, under its own procedural holdings, to consider the merits of her claims. (*Id*. at 26–30.) And applying AEDPA deference to the remaining ineffectiveness claim, the magistrate judge concluded that "[t]his is not the case where there is no possibility that fair-minded jurists could disagree that the state court's decision was an unreasonable application of *Strickland* [*v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], or other Supreme Court precedent." (*Id*. at 34.) The magistrate judge also rejected Ayers's suggestion that the state appellate court reverted to a sufficiency analysis when it considered the other evidence produced by the State at trial and held that the introduction of a competing expert report—namely, the Lentini Report—would not have changed the outcome. (*Id*.)

The R&R, however, did not conclude with the AEDPA deference analysis. Because much of Ayers's briefing was devoted to her belief that the state appellate court's decision was not entitled to deference, the magistrate judge proceeded to conduct a *de novo* review of the remaining ineffectiveness claim. (*See id*. at 35–44.) The magistrate judge found that trial counsel's decision to forego an independent expert and exploit the errors that were contained in Winters's report on cross-examination was reasonable, given the information available to counsel at trial. (*Id*. at 35.) In reaching this conclusion, the magistrate judge acknowledged Ayers's heavy reliance on *Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007), which found defense counsel ineffective for failing to consult with the independent expert he hired for his client. *See id*. at 362–63 ("A lawyer cannot be deemed effective where he hires an expert consultant and then either willfully or negligently keeps himself in the dark about what that expert is doing, and what the basis for the expert's opinion

5

is."). The magistrate judge distinguished *Richey* on the grounds that, based on the information *known* to counsel at the time of trial, including the anticipated testimony of Inspector Winters that did not include the undiscovered "two-points-of-origin" theory, there was no reason to investigate the cause of the fire further or necessarily consult an expert. (*Id*. at 43 (citing *Kendrick v. Parris*, 989 F.3d 459, 476 (6th Cir. 2021) (distinguishing *Richey* on similar grounds and finding no ineffective assistance of counsel for failing to hire an expert)).)

### III. OBJECTIONS

Petitioner raises three objections to the R&R. Specifically, Petitioner indicates that she is challenging various recommended analyses and conclusions in the R&R, including: "(1) the finding that this Court owes deference to the purported merits analyses in the 2002 Ohio appellate court opinion, (2) the R&R's analysis of Ms. Ayers's IAC claim under the standard set forth by 28 U.S.C. [§] 2254(d), and (3) [] the R&R's de novo analysis of the merits of her IAC claim, and the recommended denial of her petition without a hearing." (Doc. No. 36, at 1.[3]) She supports these general objections by repeating many of the same arguments offered in her traverse. (*See* Doc. No. 16.)

#### A. Standard of Review

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is

---

[3] The Court does not understand Ayers to be objecting to the R&R's conclusion that her second ineffective assistance of counsel claim—based on counsel's failure to object to the introduction of a new expert theory—was procedurally defaulted. Moreover, the Court finds that the magistrate judge applied the governing law to the facts of the case to determine that the claim was defaulted. (*See* Doc. No. 35, at 25 n.5.)

6

dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party." (citations omitted)); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.") After review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

The United States Supreme Court has observed that absent such requirements, the district court would be forced to review "every issue in every case, no matter how thorough the magistrate's analysis[.]" *Thomas v. Arn*, 474 U.S. 140, 147–48, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). The Sixth Circuit has similarly observed that where a party files an objection that is not sufficiently specific, "[t]he functions of the district court are effectively duplicated as both the magistrate [judge] and the district court perform identical tasks." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("[O]bjections [must] be specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious.").

For the most part, Ayers does little more than register her general disagreement with the magistrate judge's resolution of the disputed issues. Such "objections" are not properly before the Court. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (objections that dispute only the general correctness of the R&R are insufficient to trigger *de novo* review by the district court (citing *Howard*, 932 F.2d at 509)). To the extent her dissatisfaction with the R&R's conclusions

7

is supported by a rehashing of the arguments she presented to the magistrate judge in the hopes that they will receive a more favorable reception in the district court, they are also improper. *Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (objections that simply restate arguments already presented to the magistrate judge are generally improper (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)). Accordingly, the Court will limit its review to any specific portions of the R&R to which Ayers claims the magistrate judge failed to identify or apply governing habeas, constitutional, or state law.

**B. Discussion**

　　*1. Appropriateness of Applying AEDPA Deference*

Ayers first objects to the deference the R&R gave to the state appellate court's 2022 decision affirming the denial of her motion for leave to file a motion for a new trial and petition for post-conviction relief. Ayers argues that the state court (and now the magistrate judge) erred in relying on *State v. Bethel*, 192 N.E.3d 470 (Ohio 2022) to find that the merits analysis in the state appellate court opinion was not void, and, therefore, entitled to AEDPA deference under *Gumm v. Mitchell*, 775 F.3d 345 (6th Cir. 2014). (Doc. No. 36, at 5–7); *cf. Gumm*, 775 F.3d at 362 (finding that because the state appellate court determined that it lacked jurisdiction to consider petitioner's *Brady* claim, any ruling on the merits was not entitled to AEDPA deference).

In *Bethel*, the Ohio Supreme Court reviewed the trial court's denial of a motion for leave to file a motion for a new trial and motion for post-conviction relief. The court determined that the trial court lacked jurisdiction to consider the merits of the petitioner's untimely post-conviction motion unless the petitioner demonstrated he was unavoidably prevented from discovering the facts for his *Brady* claim, and that no reasonable trier of fact would have found him eligible for the death sentence but-for the constitutional error at trial. *Bethel*, 192 N.E.3d at 476. The court

8

found the petitioner had failed to establish either. In so ruling, the court considered the merits of the underlying *Brady* claim to determine whether the petitioner could demonstrate by clear and convincing evidence that no reasonable fact-finder would have imposed the death penalty. *See id.* at 478–80. The court also found that the trial court lacked jurisdiction to consider the motion for leave to file a motion for a new trial because "until a trial court grants leave to file a motion for a new trial, the motion for a new trial is not properly before the court." *Id.* at 480 (citation omitted). It concluded, however, that it could borrow from the trial court's merits analysis from the post-conviction motion to determine whether it would be futile to remand the matter to the trial court for a hearing on the motion for a new trial. *Id*. at 484.

The state appellate court followed *Bethel*'s approach. The court found that the trial court concluded that it lacked jurisdiction to consider the untimely post-conviction motion, but in making that determination it properly considered the merits of Ayers's ineffective assistance of counsel claim. *Ayers*, 2022 WL 1946586, at *13. It then relied on this merits analysis to determine that Ayers's "motion for a new trial would be without merit, therefore rendering moot a hearing on her motion for leave to file a motion for a new trial" and upholding the trial court's denial of her motion for leave to file a motion for a new trial. *Id*. at *19 (citing *Bethel*). In deciding to give AEDPA deference to the Ohio appellate court's decision, the magistrate judge concluded that the merits review it conducted in determining that it lacked jurisdiction to consider Ayers's untimely post-conviction motion was appropriate, and that the court could use that analysis to consider whether to remand for the purposes of having the trial court conduct a hearing on the motion for leave to file a motion for a new trial. (Doc. No. 35, at 27.)

Ayers takes the magistrate judge to task for relying on *Bethel*. She argues that, "[i]n the years since *Bethel* . . . the Ohio Supreme Court appears to have firmly and squarely concluded that

9

Ohio courts do not have authority to analyze the merits of a claim without first reaching the threshold determinations under" Ohio R. Crim. P. 33(B). (Doc. No. 36, at 5–6 (citing *State v. Hatton*, 205 N.E.3d 513 (Ohio 2022); *State v. Grad*, 254 N.E.3d 51 (Ohio 2024).) It is true that *Hatton*, *Grad*, and indeed *Bethel* hold that "[w]hen a defendant seeks leave to file a motion for a new trial under [Ohio R. Crim. P. 33(B)], the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave." *Hatton*, 205 N.E.3d at 521 (citing *Bethel*, 192 N.E.3d at 372 (further citation omitted)); *see Grad*, 254 N.E.3d at 68 (citing *Bethel*, 192 N.E.3d at 372; *Hatton*, 205 N.E.3d at 521). But beyond correctly stating this general proposition, Ayers's objection goes no further.

First, as the magistrate judge observed and Petitioner continues to overlook, neither *Hatton* nor *Grad* involved the consideration of both a post-conviction motion and a motion for leave to file a motion for a new trial. (*See* Doc. No. 35, at 29.) Here, as in *Bethel*, the state appellate court was permitted to consider the merits review from the post-conviction motion to determine whether it would be futile to remand to the trial court to comply with the technical requirements of Ohio R. Crim. P. 33(B). The state appellate court did not, as Petitioner suggests, issue a merits determination after concluding that it lacked jurisdiction to do so.

Second, neither *Hatton* nor *Grad*—which both cited *Bethel* and had the opportunity but did not qualify their reliance on it—overruled *Bethel*. Moreover, the state appellate court's decision was authored after *Bethel* but before *Hatton* and *Grad*. But even after *Hatton*, courts have continued to rely on *Bethel*. *See, e.g., State v. Miller*, 227 N.E.3d 1189, 1193 (Ohio 2023) ("Even assuming that a defendant's motion for leave should have been granted, we will nonetheless uphold the denial of a motion for leave if the defendant's underlying new-trial motion would be without merit." (citing *Bethel*, 192 N.E.3d at 484) (Kennedy, J. concurring)). To the extent that Petitioner

10

believes *Bethel* is in conflict with *Hatton* and *Grad* (which this Court does not believe to be the case), the magistrate judge correctly concluded that it is not for this federal habeas court to wade into the controversy. *See Brown v. Rapelje*, No. 1:09-cv-639, 2012 WL 4490774, at *10 (W.D. Mich. Aug. 3, 2002) ("Federal habeas courts do not act as 'super-appellate state courts' in determining issues of state law." (quoting *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002))), *report and recommendation adopted*, 2012 WL 4490769 (W.D. Mich. Sept. 28, 2012). Because the state appellate court's merits review did not follow a determination that it lacked jurisdiction, the decision to afford the state opinion AEDPA deference does not run afoul of *Gumm*, *supra*.

Ayers also criticizes the R&R for its treatment of the state appellate court's review as a "straightforward analysis on the merits of Ms. Ayers's IAC claim." (Doc. No. 36, at 8.) According to Ayers, this was error because the state appellate court, while acknowledging the *Strickland* standard, imposed on Ayers a higher burden under Ohio Rev. Code § 2953.23(A)(1)(B). (*Id*. at 8–9.) Ayers is mistaken.

After citing *Strickland, supra*—as amplified by *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)—the state appellate court reviewed the non-expert evidence offered at trial and concluded that "[i]n light of the evidence produced that did not depend on expert testimony and the entire record in this case, we hold that Ayers has not shown a reasonable probability that but for counsel's unprofessional errors, the result of her trial would have been different." *Ayers*, 2022 WL 1946586, at *16 (citing, among authority, *Strickland, supra*.) Based on this conclusion under *Strickland*'s second prong, the state appellate court turned to the

requirements of Ohio Rev. Code § 2953.23(A)(1)(b)[4] and found that Ayers had "not shown by clear and convincing evidence that a constitutional error occurred during her jury trial, and that no reasonable fact-finder would have found her guilty but for the constitutional error at trial." *Ayers*, 2022 WL 1946586, at *17 (citing Ohio Rev. Code § 2953.23(A)(1)(b)). Because the state appellate court found that Ayers failed to meet her burden under *Strickland*, her ineffective assistance of counsel claim could not support her petition for post-conviction relief. The state appellate court's analysis of the motion for post-conviction relief was thus, at bottom, based on a *Strickland* analysis. The state appellate court's incorporation of this *Strickland* analysis into its determination of the motion for new trial did not, as Ayers argues, apply the incorrect standard. The *Strickland* standard was the proper standard, and that was the standard the state appellate court applied.

Ayers's first objection is overruled.

2. *AEDPA Deference Analysis*

Ayers indicates that her second objection addresses her concerns regarding the "R&R's analysis of Ms. Ayers's IAC claim under the standard set forth by 28 U.S.C. § 2254(d)." (Doc. No. 36, at 1.) Yet, much of her discussion of this objection is limited to a repeat of her attack upon the underlying state appellate court decision. (*See, e.g.* at 11 ("If the state appellate court did reach a non-void determination of the merits of the IAC claim, and if [§] 2254(d) does apply, relief is nevertheless appropriate because the state appellate court's decision unreasonably applied clearly established Federal law and was based on an unreasonable determination of the facts in light of

---

[4] Ohio Rev. Code § 2953.23(A)(1)(b) provides that a court may not entertain an untimely petition for post-conviction relief unless certain requirements are met, including that "the petitioner [has shown] by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted[.]" Because the state appellate court determined that Petitioner had not demonstrated that she received ineffective assistance from trial counsel, Ayers could not meet the requirement of establishing that *but-for a constitutional error*, she would not have been convicted.

12

the evidence presented in the State court proceedings.")); *id.* at 18 ("The state court's analysis considered only a one-sided presentation of state favorable facts, and it misconstrued or misunderstood the impact of the Lentini Report and the defense's failure to conduct any independent research on the scientific plausibility of its theory.") To the extent that this "objection" merely rehashes the arguments Ayers raised in her traverse (*see* Doc. No. 16, at 36–37 & n.8), the objection is not properly before the Court. See *Aldrich*, 327 F. Supp. 2d at 747.

For example, Ayers argues once again that the state appellate court failed to "evaluate or even acknowledge facts in Ms. Ayers's favor or inconsistencies in the State's case, but instead simply recited a laundry list of evidence and testimony favorable to the State." (Doc. No. 36, at 13.) Because Ayers merely revisits an argument raised in her initial briefing and does not pinpoint where she believes the R&R erred in addressing it, the objection is not appropriate. *Bouchard*, 287 F. App'x at 422. But even if this "objection" were properly before the Court, it would be overruled. After citing the proper standard under *Strickland*, the state appellate court engaged in a thorough review of the trial evidence before ultimately concluding that but for the failure to call an arson expert, the result would not have been different. *See generally Ayers*, 2022 WL 1946586. Much of the evidence identified by Petitioner—including the fact that Winters determined that Ayers's son could manipulate a lighter, that Ayers did not flee after the fire but remained at the scene, and the location of the fire on a mattress where her child played—was discussed in the opinion. *See id*. Her argument appears to be that this evidence should have been presented in the opinion in a light more favorable to her. But the fact remains that the state appellate court's conclusion that the introduction of a competing expert arson report, such as the Lentini Report, would not have exonerated Ayers or reduced her culpability was not unreasonable or contrary to the law. *See id*. at *12–13.

Ayers's second objection is overruled.

3. *De Novo Analysis*

Before delving into Ayers's objection to the magistrate judge's *de novo* analysis of her remaining ineffective assistance of counsel claim, it is important to emphasize that even without AEDPA deference, a review under *Strickland* requires counsel's performance be afforded considerable deference. *Harrington*, 562 U.S. at 105; *see Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").[5] "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) (citation omitted). A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Id*. To prevail, a petitioner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Id.* at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987); *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("Counsel is constitutionally ineffective only if

---

[5] "To prevail on an ineffective-assistance-of-counsel claim, [a petitioner] must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Specifically, the petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *see Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The Court may address the *Strickland* prongs in any order and need not address both prongs if the petitioner "makes an insufficient showing on one." *See Wingate*, 969 F.3d at 255 (quotation marks and citation omitted).

14

performance below professional standards caused the defendant to lose what he otherwise would probably have won." (citing *Strickland, supra*)).

In her attempt to clear *Strickland*'s "high bar," Ayers once again leans heavily upon the Sixth Circuit's decision in *Richey*, which found that trial counsel "did not function as counsel guaranteed by the Sixth and Fourteenth Amendments[]" when he "hire[d] an expert consultant and then either willfully or negligently [kept] himself in the dark about what that expert [was] doing, and what the basis for the expert's opinion [was]." *Richey*, 498 F.3d at 346, 362–63. She also takes issue with the magistrate judge's attempt to distinguish *Richey* on the grounds that the defense counsel in *Richey* knew of the State's arson theory and recognized the need to hire an expert well in advance of trial. (Doc. No. 36, at 19 (citing Doc. No. 35, at 38–43).) In contrast, here, the magistrate judge noted that the State's expert witness gave unforeseen testimony regarding the "two-points-of-origin" theory. (Doc. No. 35, at 42.) "Based on the information known to counsel at the time, and the anticipated testimony of Inspector Winters, [the magistrate judge saw] no reason that reasonable counsel would have felt the need to investigate the cause of the fire further or necessarily consult an expert."[6] (*Id*. at 43 (citing *Kendrick*, 989 F.3d at 476 (distinguishing *Richey* by finding that it was reasonable for counsel to build his case around the State's witness's anticipated testimony, and that "a fair minded jurist could conclude that counsel had reasonably decided that no expert was necessary given [the witness's] anticipated testimony")).)

---

[6] As the R&R observes, from Winters's report, counsel knew that the fire was deliberately started, was ignited by an open flame, occurred on a mattress, and was the result of arson. (*Id*. at 41 (citing record).) Counsel also knew that the draft report disclosed during discovery contained numerous errors, including identification of the first floor as the location of the origin of the fire and the suggestion that ignitable liquid vapors or gasoline were used, as well as various typographical errors. (*Id*. at 41 & n.7 (citing record).) Moreover, counsel knew that Winters had determined at the scene that Ayers's son knew how to manipulate a cigarette lighter. (*Id*. at 41 (citing record).) Based on all this information, the R&R concluded that it was reasonable trial strategy to focus on the alternative defense theories and attempt to cast doubt on the State's expert on cross-examination. (*Id*. at 41–42.)

15

To this, Ayers suggests that her trial counsel knew that the State's expert would offer *some* opinion on the origin of the fire, and that he, himself, planned to offer alternative defense theories. While she concedes that defense counsel was not required to consult with Mr. Lentini, she suggests that he should have consulted with some expert. (Doc. No. 36, at 17–18.) She also disagrees with the magistrate judge's conclusion that consulting with an arson expert would not necessarily have led to the discovery of the two-points-of-origin theory. Quoting from the Lentini Report, she notes that the fire damage on the mattress was "contiguous" and that "the damage is indistinguishable from damage caused by a normal fire spread from a single point of origin." (*Id*. at 21 (citing Doc. No. 15-1 ¶ 11).) She argues that, had counsel been armed with this information, he would have had "ammunition to cross-examine Winters' 'surprise' conclusions, especially since those conclusions directly attacked the plausibility of the defense's theory of the fire." (*Id*. at 21–22.)

Ayers's position is steeped in speculation and hindsight and highlights the pitfalls of relying on pre-*Harrington* case law like *Richey*.[7] In *Harrington*, the Supreme Court reversed the Eleventh Circuit's determination that trial counsel was ineffective for failing to "consult blood evidence experts in developing the basic strategy for Richter's defense or offer their testimony as part of the principal case for the defense." *Harrington*, 562 U.S. at 106. The Court explained that

---

[7] Subsequent Sixth Circuit decisions have recognized the limitations of the decision in *Richey* because it predates *Harrington. See, e.g., Kendrick*, 989 F.3d at 476 (noting that "*Richey* predates the Supreme Court's guidance in *Harrington*"). And while *Harrington* distinguished between the *de novo* standard of review and the double deference afforded under AEDPA review, it underscored the deference that is inherent in any *Strickland* analysis:

> Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence. [] The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

*Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689–90 (further citations omitted)).

16

*Strickland* "permits counsel to 'make a reasonable decision that makes particular investigations unnecessary.'" *Id*. (quoting *Strickland*, 466 U.S. at 691). It further underscored that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Id*. at 111.

Like the present case, trial counsel in *Harrington* had no advance notice of the State's theory. *Id*. at 94. Prior to trial, the State in *Harrington* did not intend to offer any evidence involving its analysis of the blood at the scene. It was only after the defense made its opening statement and offered a self-defense theory that the State decided to "alter its approach." *Id*. In finding counsel effective, despite his failure to consult with blood evidence experts, the Court found that "[c]ounsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id*. at 107 (citations omitted). The Supreme Court further rejected the Eleventh Circuit's suggestion that counsel should have anticipated the importance of the blood evidence, noting that it was not until post-trial "forensic evidence [had] emerged concerning the source of the blood pool that the issue could with any plausibility be said to stand apart." *Id*. In so ruling, the Court refused to review counsel's performance under the "harsh light of hindsight[.]" *Id*.; *see Strickland*, 466 U.S. at 689 (Given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]" "every effort [should] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Similarly here, this Court cannot shine the "harsh light of hindsight" on counsel's pre-trial strategic decisions. As the Sixth Circuit recently observed: "When reviewing the adequacy of counsel's performance, the Supreme Court has 'often explained that strategic decisions—

including whether to hire an expert—are entitled to a 'strong presumption of reasonableness." *Clardy v. Pounds*, 126 F.4th 1201, 1209 (6th Cir. 2025) (quoting *Dunn v. Reeves*, 594 U.S. 731, 739, 141 S. Ct. 2405, 210 L. Ed. 2d 812 (2021)). Counsel properly relied on the information known to him at the time to determine that it was unnecessary to employ an expert and was more prudent to rely on vigorous cross-examination of the State's expert. *See Harrington*, 562 U.S. at 107. Counsel's performance cannot be deemed ineffective because, in hindsight and with the benefit of an expert report procured years after the trial, Ayers now believes that another approach would have more effectively countered the State's undisclosed theory. *See Esparza v. Sheldon*, 765 F.3d 615, 624 (6th Cir. 2014) (rejecting the petitioner's argument that his attorney could have "impeached [an adverse witness] more effectively by calling an expert" because the decision to rely on cross-examination rather than an expert witness is "precisely the sort of tactical judgment *Strickland* counsels against second-guessing" (citing *Strickland*, 466 U.S. at 689)).

Given the level of deference *Strickland* demands, the Court finds that Ayers has not demonstrated that her counsel's failure to hire an arson expert and rely, instead, on vigorous cross-examination, was constitutionally ineffective, especially in light of the information known to counsel prior to trial. *See Harrington*, 562 U.S. at 111 ("In many instances cross-examination will be sufficient to expose defects in an expert's presentation. When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict."); *see also id*. at 106 ("There are . . . countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.").

Ayers's third objection is overruled.[8]

---

[8] Petitioner also requests an evidentiary hearing. Despite citing the fact that the R&R did not recommend holding an evidentiary hearing, however, Ayers offers no argument as to why the magistrate judge erred in concluding that no hearing was necessary. (*See* Doc. No. 36, at 22.) Such a bare bones objection is not properly before the Court. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones." (quotation marks and citations omitted)). But even if the Court considers the arguments raised in her traverse, it would find that a hearing is unnecessary. For example, Ayers suggested that if her trial counsel's strategy was to "remain[] ignorant about what a competent independent expert would say as to the origin of the fire, Ms. Ayers should be able to inquire of that strategy at an evidentiary hearing." (Doc. No. 16, at 38.) But the Court has independently concluded it was reasonable given the information *known by counsel* prior to trial, to develop a defense strategy around alternative negligence theories and through cross-examination of the State's expert witness. Because the state court record and Petitioner's pleadings were sufficient to determine the merits of Ayers's ineffective assistance of counsel claim, no evidentiary hearing is necessary. *See Sawyer v. Hofbauer*, 299 F.3d 605, 609–10 (6th Cir. 2002) (recognizing that a district court has discretion to determine whether to hold an evidentiary hearing in a habeas case (citation omitted)).

## IV. CONCLUSION

Upon *de novo* review and for the reasons stated above, all matters raised in Ayers's objections (Doc. No. 36) are overruled, the R&R (Doc. No. 35) is adopted, and the Court denies the amended petition. (Doc. No. 14.) Further, while the R&R recommends finding that reasonable jurists could debate the decision to afford AEDPA deference to the Ohio appellate court's decision (*see* Doc. No. 35, at 45), the Court concludes that the issuance of a certificate of appealability on this issue is unnecessary, due to the Court's rejection of Ayers's ineffective assistance of counsel claim under a *de novo* standard. *See Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020) (dismissing an appeal and expressly cautioning district courts against issuing a certificate of appealability in cases where alternate grounds for denying relief exist, finding "a claim does not merit a certificate unless *every independent reason to deny the claim is reasonably debatable*" (emphasis in original)). Here, an independent ground exists to dismiss Ayers's non-defaulted ineffective assistance of counsel claim, and this Court cannot conclude that reasonable jurists would find the Court's resolution to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. §§ 1915(a)(3), 2253(a); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: December 29, 2025

                                            **HONORABLE SARA LIOI**
                                            **CHIEF JUDGE**
                                            **UNITED STATES DISTRICT COURT**